UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 17-201-1 (ABJ) |
| v. : | |
| PAUL J. MANAFORT, JR., : | |
| Defendant. : | |



Leave to File granted
Amy B.
11/13/18

RECEIVED
Mail Room
NOV - 7 2018
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

File in Related Misc. Case
18-mc-0167

PETITION OF WILLIAM CLAYTON BATCHELOR TO ADJUDICATE INTEREST
IN PROPERTY PURSUANT TO 21 U.S.C § 853(n)

Pursuant to 21 U.S.C. § 853(n), the undersigned William Clayton Batchelor hereby petitions the Court to allow fiduciary compensation to be paid from the Manafort Family 2008 Irrevocable Trust, in the amount of $73,853.44, as further detailed herein. Petitioner makes the following statements in support of this request:

A.  BACKGROUND FACTS

1. Petitioner is the owner of the Northwestern Mutual Universal Life Insurance Policy #18268327, identified in Notice of Forfeiture dated October 11, 2018.

2. On June 16, 2008, Defendant Paul Manafort and his wife Kathleen executed an irrevocable trust titled the "Manafort Family 2008 Irrevocable Trust" (hereinafter the "Trust"), and named Petitioner as Trustee of that Trust. The beneficiaries of the Trust are the Manaforts' daughters and some other family members.[1]

---

[1] The Trust was a typical irrevocable life insurance trust, the purpose of which is to hold life insurance on the Grantor's life, outside of the Grantor's taxable estate for estate tax purposes. Upon the death of the Grantor (or Grantors), the proceeds of the life insurance are paid to the beneficiaries to "make up" for the estate tax liability paid from other assets, or in some cases to pay the tax directly. A key component of this type of trust is that the Grantor retains no right, title, or interest in the trust assets.

1

3. The Trust is governed by the laws of the Commonwealth of Virginia.

4. As Trustee, Petitioner applied to purchase a joint life insurance policy (the "Policy") on Paul and Kathleen Manafort through Northwestern Mutual.

5. Around August 1, 2008, the Policy application was approved.

6. Between August of 2008 and June of 2013, the Manaforts made a series of gifts to the Trust totaling $2,752,000.00.

7. Pursuant to the Trust document, whenever a gift was made to the Trust, Petitioner was required to give notice to the "Powerholders," designated persons who had a limited right to withdraw a portion of the gift. If a right of withdrawal was exercised, Petitioner was obligated to pay over the amount subject to withdrawal. None of the withdrawal rights were ever exercised.

8. Between August of 2008 and June of 2013, Petitioner paid from the Trust assets life insurance premiums of $2,744,000.00 to Northwestern Mutual.

9. After June of 2013, the Manaforts made no further gifts to the Trust, and Petitioner made no further premium payments. A summary of cash in and cash out of the Trust account is attached as Exhibit A.

10. By the terms of the Trust, Petitioner is entitled to reasonable compensation for fulfillment of his administrative and fiduciary duties as Trustee. To date, Petitioner has not been paid for serving as fiduciary.

B. LEGAL STANDING

1. In order to claim an interest in forfeited property, Petitioner must have standing pursuant to 21 U.S.C § 853(n)(6), Subparagraph (A) *or* (B). Standing under Subparagraph (A) exists when "the petitioner has a legal right, title, or interest in

the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." Standing under Subparagraph (B) exists when "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture."

2. In the current case, Petitioner fulfills both standing requirements. Mr. Manafort never had any right, title, or interest in the insurance policy, so Petitioner's title to the insurance policy and claim for compensation was always superior to Mr. Manafort's. When Mr. Manafort made a gift to the Trust, he gave up all right, title, or interest in the money he gifted. The subsequent purchase of the life insurance policy and payment of the premiums by Petitioner were wholly independent of any "right, title, or interest" of Mr. Manafort. Indeed, the Trust was designed so that Mr. Manafort would not have any right, title, or interest in the Trust assets, including the life insurance policy. Title to the life insurance policy was originally and has remained at all times in the name of Petitioner, in satisfaction of the requirements of Subparagraph (A). The availability of the life insurance policy for forfeiture is subject to the provisions of the Trust, including the provisions for compensation to the Trustee.

3. Petitioner was also a bona fide purchaser of the life insurance policy. Petitioner purchased the life insurance policy directly from Northwestern Mutual, not from

3

Mr. Manafort, and did so without any knowledge of the criminal activity underlying Mr. Manafort's funding of the Trust.[2] The fact that the Trust was funded with gifts of money that was subsequently determined to have originated from criminal activity does not alter Petitioner's standing as a bona fide purchaser of the life insurance policy in satisfaction of the requirements of Subparagraph (B).

C.     BASIS FOR PETITIONER'S CLAIM

1. Article VII(C) (4) of the Trust provides that, "unless waived, individual Trustees will be entitled to reasonable compensation, based on the duties and responsibilities assumed and the time and effort expended. An individual Trustee's fee that does not exceed the published fee schedule of a bank or trust institution licensed to do business in Virginia shall be conclusively deemed reasonable." See attached Exhibit B.

2. The duties and responsibilities of the Trustee are two-fold. First, there are the administrative duties of the Trust: receiving assets when gifted to the Trust, giving notice to Powerholders of their withdrawal rights, acting on the withdrawal rights if exercised, paying the insurance premiums, and maintaining bank and insurance records. Second, there is the fiduciary duty – the duty to protect and preserve the Trust assets for the beneficiaries, and the responsibility of faithfully receiving and making payments, and maintaining an asset valued in the millions of dollars. Petitioner performed these duties in good faith, without any reason to believe the Trust was being funded with criminally-derived funds.

---

[2] At the time the Trust was established and until details of this investigation became public, Petitioner knew only that Mr. Manafort was an established lobbyist, and that he had amassed a sizable fortune. Mr. Manafort never discussed with Petitioner his actual business dealings or the source of the money he gifted to the Trust.

4

3. To date, Petitioner has not been paid any compensation for services as Trustee.[3] The Manaforts did not fund the Trust with sufficient assets to pay the life insurance premium AND the fiduciary fee in any given year.[4]

4. The attached Exhibit C shows the value of the Trust assets each year, along with the fiduciary fee for each year based on (a) the Virginia Fiduciary Guidelines, and (b) the published fee schedule of Trust Company of Virginia, as an example of an amount that would be "conclusively deemed reasonable" by the Trust document. In each case, the fee is calculated and earned on an annual basis. Column C on Exhibit C shows Petitioner's calculated fee in the amount of $73,853.44.[5]

D. OTHER RELEVANT FACTS

1. Petitioner's obligation to safeguard the Trust assets for the benefit of the Trust beneficiaries also effectively protected the availability of those assets for forfeiture. In 2017, Mr. Manafort attempted to borrow from the Trust and use the Trust assets to secure his bond, putting Petitioner in the awkward position of having to protect the Trust from the person who originally funded the Trust and named Petitioner as Trustee. See attached Exhibit D as an example of Petitioner's email response to Mr. Manafort's verbal demand/request to borrow from the Policy. Petitioner dutifully refused those requests by Mr. Manafort. In all likelihood if the Policy was NOT

---

[3] The Trust did pay legal fees to Petitioner's firm, Wright & Batchelor LLP, for various legal issues including analyzing the effect of non-payment of insurance premiums, actuarial projections for the insurance policy, and options for terminating the Trust. Those fees amounted to $5,254.66 over ten years, and are subtracted from the amount of Petitioner's fee.

[4] If the Manaforts did not provide additional funding for the Trust, Petitioner would eventually have borrowed against the policy to pay the fiduciary fees, or waited until the Trust terminated to collect the fees.

[5] Petitioner's general practice is to charge a fiduciary fee based on the facts, circumstances, and responsibility involved in a given case, even if a higher fee would be allowed by the terms of the governing document. In this case, Petitioner adjusted the fee to reflect various considerations specific to this Trust, and the amount charged is substantially less than the "conclusively deemed reasonable" amount that would be allowed based on the published fee schedule of the Virginia Trust Company.

5

held in the Trust by Petitioner - as a bona fide purchaser and owner of the Policy - Mr. Manafort would have liquidated or leveraged the Policy long before it was identified as an asset subject to forfeiture. The Government should not benefit from the protections the Trust provided without also allowing for the cost of that protection.[6]

2. As of October 17, 2018, the policy had a surrender value of $2,784,012.40, which would result in taxable income to the Trust in the amount of $40,012.40.[7] See attached Exhibit E. If the Policy is surrendered in order to fulfill the forfeiture order, the Trust will need to file an income tax return and pay any tax on the income triggered by the surrender. Petitioner's fee, if approved, should offset any taxable income. Petitioner estimates the net amount to the Government would be approximately $2,710,158.96.

E. REQUEST FOR RELIEF

Given the foregoing Petitioner's claim, the current illiquidity of the Trust assets, the tax reporting in connection with the surrender of the Policy, and the fact that the life insurance policy remains titled in Petitioner's name, Petitioner requests that the Court modify the preliminary order of forfeiture to:

---

[6] It seems that the appropriate target of the forfeiture should be the Trust itself rather than the life insurance policy. Once Mr. Manafort made gifts to the Trust, he gave up all right, title, and interest in that money. His connection ended with the gifts. He never had any interest in the life insurance policy; the policy was purchased in good faith by Petitioner. In that light, the government would be entitled to forfeiture of the Trust assets, subject to the terms of the Trust including fiduciary compensation.

[7] These amounts change slightly over time, so the final amounts will be close to but not exactly as stated herein.

1. State that the forfeiture is subject to Petitioner's claim for compensation in the amount of $73,853.44 and any income tax liability triggered by the surrender of the life insurance policy;

2. Direct Petitioner to surrender the life insurance policy for its cash surrender value, pay Petitioner's fee as stated herein, and file the necessary tax returns;

3. Direct Petitioner to turn over the remaining balance with all related documentation in whatever manner the Court requests after the expiration of the claim period and receipt by Petitioner of the proceeds of the life insurance policy.

The foregoing Petition is signed by William Clayton Batchelor, Trustee, under penalty of perjury, this 31st day of October, 2018.

*William C Batchelor*
William Clayton Batchelor, Trustee
1601 18th Street NW Suite 2
Washington, DC 20009
202-462-7799
wcb@wrightandbatchelor.com