## EXHIBIT C

**Manafort Family 2008 Irrevocable Trust fee calculation**
William Clayton Batchelor, Trustee

| year | value | surrender cost | net value | COLUMN A<br>fiduciary fee<br>per guidelines | COLUMN B<br>fiduciary fee<br>per VTC<br>fee schedule | COLUMN C<br>fee charged<br>by<br>Petitioner |
|---|---|---|---|---|---|---|
| 2009 | $ 1,228,963.00 | $ 787,802.00 | $ 441,161.00 | $ 4,412.00 | $ 5,293.93 | $ 4,412.00 |
| 2010 | $ 1,522,250.00 | $ 743,831.00 | $ 778,419.00 | $ 7,088.14 | $ 9,341.00 | $ 7,088.14 |
| 2011 | $ 1,825,307.00 | $ 699,861.00 | $ 1,125,446.00 | $ 9,377.23 | $ 13,191.73 | $ 9,377.23 |
| 2012 | $ 2,416,465.00 | $ 655,891.00 | $ 1,760,574.00 | $ 12,552.87 | $ 19,225.00 | $ 12,552.87 |
| 2013 | $ 2,474,554.00 | $ 611,920.00 | $ 1,862,634.00 | $ 13,063.17 | $ 20,195.00 | $ 13,063.17 |
| 2014 | $ 2,840,268.00 | $ 567,950.00 | $ 2,272,318.00 | $ 15,111.59 | $ 24,087.00 | $ 15,111.59 |
| 2015 | $ 2,919,152.00 | $ 523,980.00 | $ 2,395,172.00 | $ 15,725.86 | $ 25,254.00 | |
| 2016 | $ 2,999,910.00 | $ 480,009.00 | $ 2,519,901.00 | $ 16,349.51 | $ 26,439.00 | |
| 2017 | $ 3,074,555.00 | $ 436,039.00 | $ 2,638,516.00 | $ 16,942.58 | $ 27,566.00 | |
| 2018 | $ 3,142,688.00 | $ 392,069.00 | $ 2,750,619.00 | $ 17,503.10 | $ 28,631.00 | $ 17,503.10 |
| | | gross fee calculation | | $ 128,126.04 | $ 199,223.66 | $ 79,108.10 |
| | | less legal fees billed | | $ (5,254.66) | $ (5,254.66) | $ (5,254.66) |
| | | | | $ 122,871.38 | $ 193,969.00 | $ 73,853.44 |


RECEIVED
Mail Room
NOV - 7 2018
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

 

## TRUST MANAGEMENT FEE

| MARKET VALUE OF ASSETS | ANNUAL FEE |
|---|---|
| First $1 Million | 1.20% |
| Next $4 Million | .95% |
| Over $5 Million | .65% |

- A minimum annual fee of $4,000 will apply.
- Quotes available for accounts over $10 million.
- The Trust Fee Schedule applies for managed IRA accounts.

## SERVICES PROVIDED

- Active management of client assets in accordance with established objectives
- Collection and distribution of income
- Daily cash investments and safekeeping of assets
- Periodic statements of account transactions and review of assets

Fees charged by outside investment managers are separate and apart from the fees payable under this schedule. Services are intended to be all-inclusive. However, if non-routine or extraordinary services are required, additional separate charges will be imposed. Examples include: estate settlement services, litigation, real estate management/sales, insurance policy management, court accountings, asset distribution and tax preparation services.

The Trust Company of Virginia is a division of TCV Trust & Wealth Management.

See p. 211 →

# APPENDIX

# GUIDELINES FOR FIDUCIARY COMPENSATION

## INTRODUCTION

The Judicial Council of Virginia, in establishing the Standing Committee on Commissioners of Accounts in 1993, charged the Standing Committee with promoting uniformity of practice among commissioners of accounts. Mindful of the Supreme Court's consistent holdings that the circumstances in each case determine the allowance of fiduciary compensation, the Standing Committee recommended to the Council for approval the following Guidelines for Fiduciary Compensation in order to promote a degree of uniformity among the Commissioners of Accounts in Virginia in their task of determining compensation to be allowed fiduciaries. The Guidelines are not intended as a substitute for the analysis the Commissioner must do to determine the statutory "reasonable compensation" in each case. The Judicial Council approved the Guidelines in December 2004.

## A. DECEDENTS' ESTATES

1. Where the will clearly sets out compensation in a specific dollar amount or a specific percentage that the Executor is to receive, the will controls, and the Executor is entitled to the amount set out.

2. Where the will states that the Executor shall receive for services the compensation set out in a referenced published fee schedule in effect at the time such services are rendered, fees as set out in the fee schedule shall be presumed to be reasonable, as that term is used in § 26-30. The burden of persuading the Commissioner that fiduciary compensation taken according to such a fee schedule is not reasonable would be on an objecting party. The ultimate responsibility of determining the reasonableness of the compensation rests with the Commissioner.

3. Paragraph 2. above does not apply in the case where the will is silent as to the Executor's compensation. In such a case, if the Executor (corporate or otherwise) uses a published fee schedule to determine compensation, the other guidelines set out herein apply. There is, however, no presumption that such a published fee schedule is not reasonable.

4. Where all parties affected by the amount of the compensation are (i) competent to contract (ii) understand the issues involved (i.e., can give "informed consent") and (iii) agree in writing as to the amount of the compensation to be paid, then the agreement should be honored by the Commissioner.

5. Unless determined as set out in paragraphs 1., 2. or 4. above, the fee to be allowed the Executor on all property in the decedent's probate estate (calculated on the inventory value, including amended inventories) is as follows:

10/09

210

    (a)  5% of first $400,000.
          4% of next $300,000.
          3% of next $300,000.
          2% over $1,000,000.
          Over $10,000,000 – by agreement with the Commissioner
          (prior consultation is required).

AND

    (b)  5% of income receipts (not including capital gains).

6. The value of real estate will be included as property in the decedent's probate estate for fee purposes only if the Executor is given the power to sell real estate and (i) is instructed to sell real estate in the will, or (ii) is requested to sell real estate by all affected beneficiaries or devisees, or (iii) is required to sell real estate to pay taxes or other charges against the estate, or (iv) the Commissioner determines that such sale is clearly in the best interest of the estate and the devisees or beneficiaries as a whole.

7. If the Executor employs an attorney or accountant to perform duties that should be performed by the Executor, the fees of those persons should be deducted from the compensation due the Executor. Note that this does not apply to reasonable fees paid to attorneys or accountants for tax work or litigation or other legal services reasonably necessary for the orderly administration of the estate.

8. If the Executor employs an investment advisor, the advisor's fees, if reasonable, should generally not be deducted from the Executor's compensation.

9. The Commissioner may also increase or decrease the otherwise allowable compensation in exceptional circumstances. Factors to be considered in determining the compensation include the nature of the assets, the character of the work, the difficulties encountered, the time and expertise required, the responsibilities assumed, the risks incurred and the results obtained. A consideration of these factors could result in a decrease or an increase of the compensation that would otherwise be determined using the standards set out elsewhere in these guidelines.

10. As a general rule, an Executor is not allowed compensation based on the value of assets not includable in the probate estate. The Commissioner may allow such compensation in circumstances where it is necessary for the Executor to assume some responsibility for the asset. The Executor is advised to make separate fee arrangements with the beneficial owners of non-probate assets.

11. If, after examining these "Guidelines," the Executor has any questions about the fee to be taken in a specific estate he or she should be encouraged to consult with the Commissioner in advance of taking any fee.

NOTE: The use of the word Executor above includes all fiduciaries charged with administering decedent's estates. The words "fee" and "compensation" are used interchangeably.

B. TRUSTS

With respect to Trusts, the specific guidelines for compensation are:

1. Compensation should be taken on an annual basis, based on the fair market value of the trust assets (i.e, principal and undistributed income) at the beginning of the accounting period. Previously distributed income, of course, is not to be counted in determining compensation. Where the required accounting is for a period of less than one full year (see, for example, § 26-17.6.A.), the compensation should be pro-rated.

2. Paragraphs A. 1. through A. 4. apply as well to trusts.

3. Undistributed income and principal should be treated alike in determining the fair market value of the trust assets at the beginning of the accounting period. The fee schedule set out below applies to undistributed income and principal combined, with no compensation to be calculated on income received and distributed during the year.

4. The schedule of fees is as follows:

1% of the first $500,000. (.01)
3/4 of 1% of the next $500,000. (.0075)
1/2 of 1% over $1,000,000. (.005)
$10,000,000 or more – by agreement with the Commissioner (prior consultation is required).

5. The guidelines set out in A. 7., 8., 9. and 11. above also apply to Trustees. In addition, the Commissioner may reduce the allowable compensation in certain circumstances, such as where the Trustee has delegated total investment responsibility to professionals or is not making any discretionary distributions.

C. CONSERVATORS AND GUARDIANS

1. The same schedule of fees as set out for Trustees in B. 4. above should apply to both Conservators, Guardians of infants and Trustees of veterans under § 37.1-134.20 [now § 37.2-1016]. The percentages should be applied annually to the principal amount as shown on the inventory (initial account) and on the beginning balance of accountings (subsequent accounts). However, an additional fee of 5% should be allowed on non-investment income received during the account period (for example, periodic payments such as retirement payments). Compensation should be pro-rated when the required accounting is for a period of less than one full year (see § 26-17.4.A.). In situations where the ward or incapacitated person dies within a short time after the qualification, the Commissioner could consider additional compensation, understanding that much of the fiduciary's work occurs at the beginning of the estate.

2. The guidelines set out in paragraphs A. 7., 8., 9. and 11., and B. 1. above shall apply where appropriate.

10/09