Keith Berglund, Esq. (State Bar No.207649)
Steven D Wegner, Esq. (State Bar. No. 58585)
The Berglund Group
149 S. Barrington Avenue, Ste. 181
Los Angeles, Ca. 90049
Telephone: 310-567-6070
Facsimile: 310-564-0327

Attorneys for Petitioner

Leave to file GRANTED in 18-mc-167
_____ 11/30/18
Amy B. Jackson                Date
United States District Judge

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

11/28/2018 6:38:30 AM PST

| UNITED STATES OF AMERICA, | ) CRIMINAL NO. 17-cr– 201-1 (ABJ) |
|---|---|
| Plaintiff, | ) PETITION OF WOODLAWN, LCC FOR HEARING AND DETERMINATION THAT PETITIONER'S INTEREST IN PROPERTY SHOULD NOT BE FORFEITED PURSUANT TO 21 USC § 853(n) |
| vs. | |
| PAUL J. MANAFORT, JR,. | |
| Defendant. | |

Petitioner Woodlawn, LLC., a Nevada limited liability company ("Woodlawn"), through its managing member Joseph Rappa ("Rappa"), in response to this Court's Consent Order filed on October 10, 2018 (Doc. No. 443) (the "Consent Order") by which various items of property were sought to be forfeited, hereby submits facts <u>under oath</u> under the paragraphs set forth below in support of its right, title and interest in and to a first priority security lien (the "Lien") in and to a property known as 123 Baxter Street, #5D, New York, New York 10016 (the "Property") which secures a loan from Woodlawn to the Manaforts (as hereafter defined) in the principal amount of $1,025,000.00 (the "Obligation") as referenced by that certain Secured Promissory Note dated August 7, 2017 (the "Note") executed in favor of Woodlawn by Jesand, LLC. ("Jesand"), a Delaware limited liability company, through its sole and managing member,

Kathleen B. Manafort ("KBM"). The Obligation was further secured by that certain Guaranty of Payment dated August 8, 2017, by Paul J. Manafort, Jr. ("PJM") (the "Guaranty")[1]. True and correct copies of the Note and Guaranty are attached hereto and incorporated herein by reference as Exhibits "1" and "2," respectively.

### I. Background Information and Petitioner's Title and Interest in the Property

1. Woodlawn was established in 2017 as an investment/lending vehicle.

2. The Loan was one of the first clients to be considered by Woodlawn. Specifically, Woodlawn became aware that the Manaforts needed a loan to help with professional expenses (the "Loan"). The Loan was to be secured by a first priority secured lien on the Property.

3. The terms of the Loan were negotiated by and between Keith Berglund ("Berglund") – counsel for Woodlawn – and Bruce Baldinger ("Baldinger") – counsel for the Manaforts.

4. The Loan was evidenced by the Note which set forth the Obligation, the maturity date – initially, December 31, 2017 – the per annum interest rate of 7.25%, and the collateral – the Lien and the Guaranty.

5. The Manaforts were requested to and provided Woodlawn with standard documentation consistent with a loan secured by real estate. The loan documents included, without limitation: a) a good standing certificate for Jesand (the "Certificate"), b) borrower's counsel opinion from Baldinger (the "Opinion"), c) consent of Jesand (the "Jesand Consent"), d) affidavit of title from Jesand ("Jesand Affidavit"), and e) affidavit from AM ("AM Affidavit"). True and correct copies of the Certificate, Opinion, Jesand Consent, Jesand Affidavit, and AM Affidavit are attached hereto and incorporated herein by reference as Exhibits "3," "4," "5," "6," and "7," respectively.

6. The primary collateral for the Note was the Lien on the Project which is memorialized by that certain Mortgage dated August 7, 2017 executed by each of Jesand and Am together with a condominium rider pertaining to the Property (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto and incorporated herein by reference as Exhibit "8."

---

[1] PJM, KBM, and their daughter Andrea Manafort ("AM") shall hereafter be collectively referred to as the "Manaforts."

7. To further secure the Mortgage, Woodlawn requested and was provided title insurance with respect to the Mortgage from First Nationwide Title Agency, LLC. ("Nationwide") on or about August 10, 2017 (the "Title Policy"). A true and correct copy of the Title Policy is attached hereto and incorporated herein by reference as Exhibit "9."

8. Nationwide also agreed to act as the escrow agent for the Loan closing pursuant to that certain letter dated August 10, 2017 (the Escrow Agent Letter"). A true and correct copy of the Escrow Agent Letter is attached hereto and incorporated herein by reference as Exhibit "10."

9. In its capacity as escrow agent, Nationwide provided Woodlawn with evidence that the Mortgage was duly recorded in accordance with the terms of the Loan including that certain letter dated September 19, 2017 (the "Recording Letter"). A true and correct copy of the Recording Letter is attached hereto and incorporated herein by reference as Exhibit "11."

10. The Loan was disbursed by Woodlawn to the Manaforts in two segments: the first wiring took place on August 10, 2017 in the amount of $512,500.00 from the attorney client trust account of Berglund to Nationwide and the second wire took place on August 21, 2017 in the amount of $506,841.00 (net of first month interest due under the Note and attorney fees due in respect of the closing) from the attorney client trust account of Berglund to the attorney trust account of Baldinger (the Manaforts' attorney).

11. Thereafter, payments by the Manaforts to Woodlawn on the Note were made on a sporadic basis. The monthly interest due under the Note was $6,192.70. Payments under the Note were made by KM or the Manaforts' business manager.

12. At some point after the Loan was made, PJM was charged with the criminal complaint that resulted in the Consent Order. The Manaforts, through Baldinger, formally requested an extension of the Note via letter dated February 12, 2018 (the "Extension Request"). The forbearance negotiations took place by and between Baldinger and Berglund. A true and correct copy of the Extension Request is attached hereto and incorporated herein by reference as Exhibit "12."

13. Woodlawn did agree to forbear from declaring the Note in default post initial maturity date and was negotiating the terms of a forbearance agreement. Unfortunately, the

Manaforts further defaulted under the terms of the forbearance agreement and via that certain default letter dated June 19, 2018 (the Default Letter"), the Manaforts were given until June 29, 2018 to pay the Obligation in full. The amount due under the Note as of June 19, 2018 was $1,043,337.39 (the "Default Obligation"). A true and correct copy of the Default Letter is attached hereto and incorporated herein by reference as Exhibit "13."

14. The Manaforts, through Baldinger, continued to request a further short term extension of the Loan from Woodlawn through Berglund post receiving the Default Letter. Specifically, Baldinger indicated that the Property was going to be either sold or refinanced as there was significant equity in the Property to consummate a refinance.

15. During the course of the forbearance negotiations, the Consent Order was entered and the Forfeiture Petition was filed. The amount due Woodlawn under the Note exceeds the Default Obligation with interest and attorneys' fees continuing to accrue pursuant to the terms of the Note and related Loan documents.

### III. Additional Facts Supporting Petitioner's Claim to Relief

16. Relief in the form of the return of the property or its monetary equivalent has been granted in other cases with similar fact patterns. These include In re Anchorage Nautical Tours, Inc., 102 B.R.741 (9th Cir. BAP 1989), (pre-petition oral assignment of proceeds effective against subsequent lien holders and bankruptcy trustee); In re Torrez, 63 B.R 751 (9th Cir.BAP 1986) and In re Mississippi Valley Livestock, Inc., 745 F.3d 301 (7th Cir. 2014) (constructive trust arises from the unauthorized or invalid transfer of property.)

17. Further, Petitioner owns a legal interest in the subject property that renders the preliminary order of forfeiture invalid in whole or in part because that interest was vested in Petitioner rather than the Defendant, pursuant to 21 U.S. C. §853(n)(6)(A).

18. Petitioner also owns an interest in the subject property that is superior to any interest of the Defendant at the time of the commission of the acts which gave rise to the forfeiture of the subject property in this action, pursuant to 21 U.S. C. §853(n)(6)(A).

19. Lastly, the relief requested is adequate because Petitioner is a bonafide purchaser for value of its interest in the subject property and was at the time of purchase reasonably without

cause to believe that the property was subject to forfeiture, pursuant to 21 U.S. C. §853(n)(6)(B).

20. Should the court request or require any further information before ruling on this Petition, I would be happy to provide it to the best of my ability.

### IV. Verification

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 22nd day of November, 2018 at Los Angeles, California.

_____
J̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲_̲