EXHIBIT "9"

**LOAN POLICY OF TITLE INSURANCE**

**Issued by**

Policy Number:
M-NY0817-7603171173

Agent File Number:
FN-13390-NY



# AmTrust Title Insurance Company
An AmTrust Financial Company

COVERAGE STATEMENT

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, AMTRUST TITLE INSURANCE COMPANY, a New York corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

       (ii) failure of any person or Entity to have authorized a transfer or conveyance;

       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;

       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

       (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

By: _____
President

Attest: _____
Secretary

ALTA Loan Policy

*AmTrust Title Insurance Company*

## AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (6-17-2006) WITH NEW YORK COVERAGE ENDORSEMENT APPENDED (A.L.T.A.)

### SCHEDULE A

**Policy No.** M-NY0817-7603171173

| **Title Number** | **Effective Date** | **Amount of Insurance** |
| --- | --- | --- |
| FN-13390-NY | August 11, 2017 | $1,025,000.00 |

1. **Name of Insured:** Woodlawn, LLC and/or his successors or assigns as their interest may appear

2. **The fee simple to said land is at the date hereof vested in:**

   Jesand, LLC and Andrea L. Manafort

3. **The mortgage or deed of trust and assignments, if any, covered by this Policy are described as follows:**

   Mortgage made by Jesand, LLC and Andrea L. Manafort to Woodlawn, LLC to secure the principal amount of $1,025,000.00 dated 8/7/2017, and to be duly recorded ibn the Office of the City Register of the City of New York.

4. **The land referred to in this Policy is described herein on Schedule A Description of Premises. Known as tax map designation: Block 206 Lot 1122.**

   For Information Only:
   Premises:   123 Baxter Street, Unit 5D, New York, NY
                     Baxter Street Condominium
   County:     New York
   City:            New York

   AmTrust Title Insurance Company
   By: First Nationwide Title Agency LLC, its Agent

   *[signature]*
   **Authorized Signatory**

**SCHEDULE A**
**A.L.T.A 2006 LOAN POLICY**

## *AmTrust Title Insurance Company*

### SCHEDULE A
### DESCRIPTION OF PREMISES

**Title No.**   FN-13390-NY
**Policy No.**  M-NY0817-7603171173

The Condominium Unit known as Unit No. 5D (hereinafter called the "Unit") in the Building known collectively as Baxter Street Condominium and 123 Baxter Street, Borough of Manhattan, City, County and State of New York, (the "Building") designated and described in the Declaration establishing a plan for condominium ownership of the Building and the land upon which the Building is situated (said Building and land referred to collectively herein as the "Property" or the "Condominium"), dated September 21, 2007, under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), recorded in the Office of the Register of the City of New York, in the County of New York, on the 28th day of September, 2007, with a CRFN 2007000498520 (the "Declaration"). The Unit is also designated as Tax Lot No. 1122 in Block 206 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor plans of the Buildings, certified by Hal Dorfman Architects, licensed professional architects, on September 24, 2007, filed in the Register's Office of New York County on September 28, 2007.

Together with a 4.65% interest in the Common Elements (as defined in said Declaration).

The land upon which the Building containing the Unit is situated is more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the southerly side of Hester Street and the easterly side of Baxter Street;

THENCE southerly along said easterly side of Baxter Street at an interior angle of 90 degrees 59 minutes 40 seconds a distance of 125 feet 4½ inches (125 feet 4 inches - Tax Map);

THENCE easterly from said point on the easterly side of Baxter Street at an interior angle of 88 degrees 53 minutes 20 seconds a distance of 100 feet 4½ inches to a point (100 feet 8 inches - Tax Map);

THENCE northerly from said point at an interior angle of 91 degrees 00 minutes 10 seconds a distance of 25 feet 2 inches (25 feet 0 inches - Tax Map);

THENCE westerly at an interior angle of 89 degrees 06 minutes 20 seconds a distance of 25 feet 4 inches (25 feet 0 inches - Tax Map);

THENCE northerly at an interior angle of 91 degrees 02 minutes 30 seconds a distance of 100 feet 0 inches to the southerly side of Hester Street;

THENCE westerly along the southerly side of Hester Street at an interior angle of 88 degrees 57 minutes 30 seconds a distance of 75 feet 1 inch (75 feet 0 inches - Tax Map) to the easterly side of Baxter Street, the point or place of BEGINNING.

*AmTrust Title Insurance Company*

## PARCEL A

ALL that certain plot, piece or parcel of land lying and being in the Borough of Manhattan, City, County and State of New York, being distinguished on a Map of Bayard East Farm filed in the Office of the Secretary of State by the Lot number 494 and by the same number on a Map of Lands of the City of New York, belonging to the Estate of Stephen Van Renselaer, deceased, filed in the Office of the Register of the County of New York, which said plot is bounded and described as follows:

BEGINNING at a point on the easterly side of Baxter Street, distant 100 feet southerly from Hester Street;

RUNNING THENCE easterly 100 feet 8 inches;

THENCE southerly in the rear 25 feet;

THENCE westerly 100 feet 8 inches to Baxter Street;

THENCE northerly along the easterly side of Baxter Street 25 feet 2 inches to the point or place of BEGINNING.

## PARCEL B

ALL the certain plot, piece or parcel of land, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Baxter Street and the southerly side of Hester Street;

THENCE southerly along the easterly side of Baxter Street, one hundred feet;

THENCE easterly parallel, or nearly so, with the southerly side of Hester Street, 75 feet;

THENCE northerly parallel, or nearly so, with Baxter Street, one hundred feet more or less to the southerly side of Hester Street;

THENCE westerly along the same 75 feet 1 inch, more or less, to the point or place of BEGINNING.

**SCHEDULE A**
**A.L.T.A 2006 LOAN POLICY**

*AmTrust Title Insurance Company*

## SCHEDULE B – Part I

**Policy No. M-NY0817-7603171173**
**Title No. FN-13390-NY**

Showing defects, liens, encumbrances and other matters against which the Company does not, by this Policy, insure:

1. Taxes, a lien not yet due and payable.

2. AS TO THE UNIT:
   With respect to Condominium Unit No. 5D, the title to which is to be insured herein, policy excepts any state of facts which an accurate survey would disclose. Policy insures, however, that any encroachment of the Unit onto other Units or onto any part of the common elements may remain undisturbed as long as the Unit insured hereunder exists.

3. Covenants and Restrictions recited in deed recorded on 9/27/2007 in CRFN 2007000494960.

4. Covenants and Restrictions recited in deed recorded on 11/15/2007 in CRFN 2007000570480.

5. Terms, restrictions, conditions, and easements set forth in the Declaration of Condominium and By - Laws of the Baxter Street Condominium dated 9/21/2007, recorded on 9/28/2007 in (as) CRFN 2007000498520; but the Policy insures against loss or damage occasioned by the premises not being a part of a Condominium validly created pursuant to Article 9-B of the Real Property Law, as amended.

**SCHEDULE B**
**A.L.T.A 2006 LOAN POLICY**

## *AmTrust Title Insurance Company*

### SCHEDULE B – PART II

**Policy No. M-NY0817-7603171173**
**Title No. FN-13390-NY**

In addition to the matters set forth in Schedule B, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien of charge of the insured mortgage upon the estate or interest:

1. NONE.

**SCHEDULE B**
**A.L.T.A 2006 LOAN POLICY**

*AmTrust Title Insurance Company*

## STANDARD NEW YORK ENDORSEMENT
### (Loan Policy)

**Title No FN-13390-NY**

**Attached to and made a part of Policy No. M-NY0817-7603171173**

1. Covered Risk Number 11 is deleted and the following is substituted:

    11. The lack of priority of the lien of the Insured Mortgage upon the Title

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien arising under Article 2 of the New York Lien Law for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

        (i) contracted for or commenced on or before Date of Policy; or

        (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

2. Exclusion Number 7 is deleted, and the following is substituted:

    7. Any lien on the Title for real estate taxes, assessments, water charges or sewer rents imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

3. Exclusion From Coverage is amended by adding a new Exclusion Number 8:

    8. Any consumer protection law including, without limitation, New York Banking Law Sections 6-1 ("High-Cost Home Loans) and 6-m ("Subprime Home Loans"), relating to a mortgage on Land improved or to be improved by a structure or structures intended principally for occupancy by one-to four families.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers.

**DATED: 8/11/2017**
**AmTrust Title Insurance Company**
**By: First Nationwide Title Agency LLC, its Agent**

By _Michael P. Sass_
    Authorized Officer or Agent

STANDARD NEW YORK ENDORSEMENT (12/1/2008)
FOR USE WITH ALTA LOAN POLICY (6/17/2006)
Amended (7/1/2012)

*AmTrust Title Insurance Company*

# ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT
# (NEW YORK CITY ONLY)

Title No. **FN-13390-NY**

Attached to and made a part of Policy No. **M-NY0817-7603171173**

The Policy insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B, or

(b) any environmental protection lien provided for by any state statute, New York City Code and/or Ordinance in effect at Date of Policy, except environmental protection liens provided for by the following statutes:

(1) Administrative Code, City of New York, Title 17 (Health) Section 17-151.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the amount of insurance.

**IN WITNESS WHEREOF**, the Company has caused this Endorsement to be signed by an authorized officer of the Company on its date of issue set forth below.

**DATED: 8/11/2017**
**AmTrust Title Insurance Company**
**By: First Nationwide Title Agency LLC, its Agent**

By _/s/ Michael P. Saras_
Authorized Signatory

TP-SENY-016.01
TIRSA 8.1 EPL (New York City Only) (2/11/2002)

*AmTrust Title Insurance Company*

**WAIVER OF ARBITRATION ENDORSEMENT
(OWNER'S OR LOAN POLICY)**

Title No. **FN-13390-NY**

Attached to and made a part of Policy No. **M-NY0817-7603171173**

The policy is amended by deleting therefrom:

(A) If this endorsement is attached to an ALTA Loan Policy: Condition Section 13.

(B) If this endorsement is attached to an ALTA Owner's Policy: Condition Section 14.

(C) If this endorsement is attached to a TIRSA Owner's Extended Protection Policy: Condition 12.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**IN WITNESS WHEREOF**, the Company has caused this Endorsement to be signed by an authorized officer of the Company on its date of issue set forth below.

**DATED:** 8/11/2017
**AmTrust Title Insurance Company**
**By: First Nationwide Title Agency LLC, its Agent**

By _/s/ Michael P. Sanes_
Authorized Signatory

TP-SENY-052.01
TIRSA Waiver of Arbitration Endorsement [Owner's or Loan Policy] (11/01/2008)

*AmTrust Title Insurance Company*

## CONDOMINIUM ENDORSEMENT

Title No. **FN-13390-NY**

Attached to and made a part of Policy No. **M-NY0817-7603171173**

The Company insures the insured against loss or damage sustained by reason of:

1. The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the State of New York.

2. The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the title to the unit and its common elements.

3. Present violations of any restrictive covenants which restrict the use of the unit and its common elements and which are created by the condominium documents, except violations relating to environmental protection unless a notice of a violation thereof has been recorded or filed in the Public Records and is not excepted in Schedule B. The restrictive covenants do not contain any provisions which will cause a forfeiture or reversion of title.

4. The priority of any lien for charges and assessments at Date of Policy provided for in the condominium statutes and condominium documents over the lien of any insured first mortgage identified in Schedule A.

5. The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6. Any obligation to remove any improvements which exist at Date of Policy because of any present encroachments or because of any future unintentional encroachments of the common elements upon any unit or of any unit upon the common elements or another unit.

7. The failure of title by reason of a right of first refusal to purchase the unit and its common elements which was exercised or could have been exercised at Date of Policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the amount of insurance.

**IN WITNESS WHEREOF**, the Company has caused this Endorsement to be signed by an authorized officer of the Company on its date of issue set forth below.

DATED: 8/11/2017
AmTrust Title Insurance Company
By: First Nationwide Title Agency LLC, its Agent

By _/s/ Michael F. Saxor_
Authorized Signatory

TP-SENY-007.01
TIRSA Endorsement 4 (Condominium) (5/1/07)

ALTA Policy - Loan

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (a) the occupancy, use, or enjoyment of the Land;

   (b) the character, dimensions, or location of any improvement erected on the Land;

   (c) the subdivision of land; or

   (d) environmental protection

   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage

   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

   (b) failure of any person or Entity to have authorized a transfer or conveyance;

   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;

   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;

   (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

   (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage upon the Title

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

       (i) contracted for or commenced on or before Date of Policy; or

       (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN LAND TITLE ASSOCIATION

13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

        (i) to be timely, or

        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

ALTA Policy - Loan

or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a) a fraudulent conveyance or fraudulent transfer, or

   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

   (i) the amount of the principal disbursed as of Date of Policy;

   (ii) the amount of the principal disbursed subsequent to Date of Policy;

   (iii) the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

   (iv) interest on the loan;

   (v) the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

   (vi) the expenses of foreclosure and any other costs of enforcement;

   (vii) the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

   (viii) the amounts to pay taxes and insurance; and

   (ix) the reasonable amounts expended to prevent deterioration of improvements;

but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

   (i) The term "Insured" also includes

      (A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

      (B) the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN LAND TITLE ASSOCIATION

Page 4

      (C) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

      (D) successors to an Insured by its conversion to another kind of Entity;

      (E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
          (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

          (2) if the grantee wholly owns the named Insured, or

          (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

      (F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

   (ii) With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f) "Insured Claimant": An Insured claiming loss or damage.

(g) "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": The estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Page 5


AMERICAN LAND TITLE ASSOCIATION

Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

### 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose.

Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN LAND TITLE ASSOCIATION

matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

   In case of a claim under this policy, the Company shall have the following additional options:

   (a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

   (i) To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

   (ii) To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay. When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

   Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

   (b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

   (i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

   (ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

   Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

### 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

  (i) the Amount of Insurance,

  (ii) the Indebtedness,

  (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

  (iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

  (i) the Amount of Insurance shall be increased by 10%, and

  (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

### 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

### 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

### 11. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Page 8



AMERICAN LAND TITLE ASSOCIATION

Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies. If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

## 13. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.


AMERICAN LAND TITLE ASSOCIATION

### 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

### 15. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

### 16. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) **Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.**

### 17. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at:

AMTRUST TITLE INSURANCE COMPANY

59 Maiden Lane—43rd Floor

New York, NY 10038

Copyright 2006-2013 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN LAND TITLE ASSOCIATION