## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL J. MANAFORT, JR., | : | |
| | : | |
| *Defendant* | : | |
| | : | |
| | : | |
| IN RE: | : | Case No. 1:18-mc-00167-ABJ |
| PETITIONS FOR RELIEF CONCERNING | : | |
| CONSENT ORDER OF FORFEITURE | : | Judge Amy Berman Jackson |
| | : | |
| | : | |
| WOODLAWN, LLC, | : | |
| | : | |
| *Petitioner* | : | |
| | : | |

## SECOND AMENDED PETITION
## OF WOODLAWN, LLC UNDER 21 U.S.C. § 853(n)(6)(B)

Petitioner Woodlawn, LLC, a Nevada limited liability company ("Woodlawn"), through

its present managing member, Keith Berglund ("Berglund"), in further response to this Court's

Consent Order of Forfeiture filed on October 10, 2018 (Doc. 3) (the "Consent Order") by which

various items of property were sought to be forfeited, files this Second Amended Petition (the

"Second Petition"). Petitioner hereby submits the following facts under oath in support of its right,

title and interest in and to a first priority security lien (the "Lien") in and to property known as 123

Baxter Street, #5D, New York, New York 10016 (the "Property") which secures a loan from

Woodlawn to the Manaforts (as hereinafter defined) in the principal amount of $1,025,000.00 (the

"Obligation") as referenced by a Secured Promissory Note dated August 7, 2017 (the "Note")

executed in favor of Woodlawn by Jesand, LLC ("Jesand"), a Delaware limited liability company,

through its sole and managing member, Kathleen B. Manafort ("KMB"). The Obligation was

further secured by a Guaranty of Payment dated August 8, 2017 (the "Guaranty") executed by Paul

J. Manafort, Jr. ("PJM").[1] True and correct copies of the Note and Guaranty are attached to the

Initial Petition (Doc. 15 filed 11/30/18) and incorporated herein by reference as Exhibits 1 and 2,

respectively.

## I.      Background Information and Petitioner's Title and Interest in the Property

1.      Woodlawn was established in 2017 as an investment/lending vehicle.

2.      This loan was one of the first to be considered by Woodlawn. Specifically,

Woodlawn became aware that the Manaforts needed a loan to help with professional expenses (the

"Loan"). The Loan was to be secured by a first priority secured lien on the Property.

3.      The terms of the Loan were negotiated by and between Berglund, counsel for

Woodlawn, and Bruce Baldinger ("Baldinger"), counsel for the Manaforts. Joseph Rappa served

for a period of time as Manager of Woodlawn. He did not have an interest in Woodlawn at the

time the Loan was made.

4.      The Loan was evidenced by the Note which set forth the Obligation: an initial

maturity date of December 31, 2017; a per annum interest rate of 7.25%; and collateral consisting

of the Lien and Guaranty.

5.      The Manaforts, as requested, provided Woodlawn with standard documentation

consistent with a loan secured by real estate. The loan documents included, without limitation: (a)

a good standing certificate for Jesand ("the Certificate"); (b) borrower's counsel opinion from

Baldinger (the "Opinion"); (c) consent of Jesand ("the Jesand Consent"); (d) affidavit of title from

---

[1] PJM, KBM and their daughter, Andrea Manafort ("AM"), shall hereafter be collectively referred to as the "Manaforts."

Jesand ("the Jesand Affidavit"); and (e) affidavit from AM ("the AM Affidavit"). True and correct copies of these documents are attached to the Initial Petition and incorporated herein by reference as Exhibits 3, 4, 5, 6 and 7, respectively.

6.      The primary collateral for the Note was the Lien on the property which is memorialized by a Mortgage dated August 7, 2017, executed by Jesand and AM together with a condominium rider pertaining to the Property (the "Mortgage"). A true and correct copy of the Mortgage is attached to the Initial Petition and incorporated herein by reference as Exhibit 8.

7.      To further secure the Mortgage, Woodlawn requested and was provided title insurance from First Nationwide Title Agency, LLC ("Nationwide") on or about August 10, 2017 (the "Title Policy"). A true and correct copy of the Title Policy is attached to the Initial Petition and incorporated herein by reference as Exhibit 9.

8.      Nationwide also agreed to act as the escrow agent for the Loan closing pursuant to a letter dated August 10, 2017 (the "Escrow Agent Letter"). A true and correct copy of the Escrow Agent Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 10.

9.      In its capacity as escrow agent, Nationwide provided Woodlawn with evidence that the Mortgage was duly recorded in accordance with the terms of the Loan, including a letter dated September 19, 2017 (the "Recording Letter"). A true and correct copy of the Recording Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 11.

10.      The Loan was disbursed by Woodlawn to the Manaforts in two segments:  the first wire transfer took place on August 10, 2017 in the amount of $512,500.00 from the attorney client trust account of Berglund to Nationwide; and the second wire transfer took place on August 21, 2017 in the amount of $506,841.00 (net of first month interest due under the Note and attorney

fees due in respect of the closing) from the attorney client trust account of Berglund to the attorney trust account of Baldinger (the Manaforts' attorney).

11.     Thereafter, payments by the Manaforts to Woodlawn on the Note were made on a sporadic basis. The monthly interest due under the Note was $6,192.70. Payments under the Note were made by KM or the Manaforts' business manager.

12.     At some point after the Loan was made, PJM was charged in a criminal complaint that resulted in the Consent Order of Forfeiture. The Manaforts, through Baldinger, formally requested an extension of the Note via letter dated February 12, 2018 (the "Extension Request"). The forbearance negotiations took place by and between Baldinger and Berglund. A true and correct copy of the Extension Request is attached to the Initial Petition and incorporated herein by reference as Exhibit 12.

13.     Woodlawn agreed to forbear from declaring the Note in default post initial maturity date and was negotiating the terms of a forbearance agreement. Unfortunately, the Manaforts further defaulted under the terms of the forbearance agreement and, via a default letter dated June 19, 2018 (the "Default Letter"), the Manaforts were given until June 29, 2018 to pay the Obligation in full. The amount due under the Note as of June 19, 2018 was $1,043,337.39 (the "Default Obligation"). A true and correct copy of the Default Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 13.

14.     Baldinger, on behalf of the Manaforts, requested a further short term extension of the Loan from Woodlawn through Berglund after receiving the Default Letter. Specifically, Baldinger indicated that the Property was going to be either sold or refinanced, as there was significant equity in the Property.

15.     During the course of the forbearance negotiations, the Consent Order of Forfeiture was entered by the Court. The amount due Woodlawn under the Note exceeds the Default Obligation, with interest and attorney's fees continuing to accrue pursuant to the terms of the Note and related Loan documents.

**II.     Petitioner's Claim Under 21 U.S.C. § 853(n)(6)(B)**

16.     Petitioner is a bona fide purchaser for value within the meaning of § 853(n)(6)(B). Petitioner was "reasonably without cause" to believe that the Baxter Street residence was subject to forfeiture at the time it entered into the Note on August 7, 2017 and thereafter. At no relevant time had the Baxter Street property been seized; nor had Mr. Manafort been charged with any offense. How was Petitioner to know that the government would later forfeit that property?

The Note (Exh. 1 to the Petition), in ¶5, states that the Note "shall be governed and enforced in accordance with the laws of the State of New York…" Many cases hold that whether a person is a bona fide purchaser is determined by state law. *Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004); *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001); *United States v. Suarez*, 716 Fed. Appx. 937, 938 (11th Cir. Mar. 30, 2018). Under New York state law, Petitioner is a bona fide purchaser for value. *See United States v. Dreier*, 2013 U.S. Dist. LEXIS 92863, at *20-21 (S.D.N.Y. July 2, 2013).

"The whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired through the operation of the relation-back doctrine—in the forfeited property." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012).[2] The statutory language imposes no duty on the

---

[2] At this time, Petitioner does not know whether the Baxter Street residence is even traceable to criminal proceeds, and thus subject to the relation-back doctrine. Petitioner reserves the right to challenge the validity of the preliminary order of forfeiture with respect to the Baxter Street

purchaser to investigate. "[A]fter all, the principal function of the bona-fide-purchaser doctrine is to protect buyers that did *not* investigate, and reading § 853(n)(6)(B) to require investigation as a condition of being an innocent purchaser would all but vitiate the statute's goal of protecting persons who meet state-law definitions of bona fide purchasers for value." *United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004). *Accord United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991); *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, at *21 (D. Minn. 2013).

"The bona fide purchaser defense turns on knowledge that *specified property* is subject to forfeiture; generalized knowledge of fraud is not enough." *Petters, supra*, at *18. *Accord United States v. Reckmeyer*, 836 F.2d 200, 2004-05 (4th Cir. 1987); *United States v. 392 Lexington Parkway S.*, 386 F. Supp. 2d 1062, 1065 (D. Minn. 2005) (bank qualified as innocent owner despite fact that the defendant executed mortgage on property *after being indicted for drug trafficking*; home had been searched by police for illegal narcotics, and drugs had been found there).

## III.   Verification

I hereby declare, under penalty of perjury and under the laws of the United States of America, that the foregoing is true and correct.

Executed this ___4ch___ day of January, 2019, in Los Angeles, California.

KEITH BERGLUND
Managing Member, Woodlawn, LLC

---

residence. The fact that Mr. Manafort consented the entry of the POF is not binding on Petitioner. *See United States v. Emor*, 785 F.3d 671, 672, 677 (D.C. Cir. 2015).

Respectfully submitted,


　　　　　*/s/ David B. Smith*
David B. Smith
D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st Floor
Alexandria, Virginia 22314
(703) 548-8911
Facsimile (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel for Woodlawn, LLC*

**Certificate of Service**

I hereby certify that on the 4th day of January, 2019, I electronically filed the foregoing

petition with the Clerk of Court using the CM/ECF system, which will send a notification of such

filing (NEF) to the following CM/ECF user(s):

Andrew Weissmann
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
aaw@usdoj.gov

Daniel H. Claman
U.S. Department of Justice, Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue, N.W.
Suite 10200
Washington, D.C. 20530
daniel.claman@usdoj.gov

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ David B. Smith*
David B. Smith
D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st Floor
Alexandria, Virginia 22314
(703) 548-8911
Facsimile (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel for Woodlawn, LLC*
