# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
      :
    **v.**      :
      :
PAUL J. MANAFORT, JR.,      :
      :
    *Defendant*      :
      :

IN RE:      :      **Case No. 1:18-mc-00167**
  **PETITIONS FOR RELIEF CONCERNING**  :
  **CONSENT ORDER OF FORFEITURE**  :      **Judge Amy B. Jackson**
      :

WOODLAWN, LLC,      :
      :
    *Petitioner*      :
      :

## SECOND AMENDED PETITION (CORRECTED)
## OF WOODLAWN, LLC UNDER 21 U.S.C. §§ 853(n)(6)(A) and (B)

Petitioner Woodlawn, LLC, a Nevada limited liability company ("Woodlawn"), through its present managing member, Keith Berglund ("Berglund"), in further response to this Court's Consent Order of Forfeiture filed on October 10, 2018 (Doc. 3) (the "Consent Order") by which various items of property were sought to be forfeited, files this corrected Second Amended Petition (the "Second Petition").[1] Petitioner hereby submits the following facts under oath in support of its right, title and interest in and to a first priority security lien (the "Lien") in and to property

---

[1] On January 4, 2019 (last Friday), Petitioner's new counsel filed Doc. 20, which omitted to assert a claim under § 853(n)(6)(A). Today's filing corrects that error. Counsel labored under the misunderstanding that the Baxter Street residence was forfeited as tainted property when he filed Doc. 20. In fact, the property was forfeited as "substitute property" and thereby supports a claim for relief under § 853(n)(6)(A). The Court should disregard the earlier filing (Doc. 20).

known as 123 Baxter Street, #5D, New York, New York 10016 (the "Property") which secures a loan from Woodlawn to the Manaforts (as hereinafter defined) in the principal amount of $1,025,000.00 (the "Obligation") as referenced by a Secured Promissory Note dated August 7, 2017 (the "Note") executed in favor of Woodlawn by Jesand, LLC ("Jesand"), a Delaware limited liability company, through its sole and managing member, Kathleen B. Manafort ("KMB"). The Obligation was further secured by a Guaranty of Payment dated August 8, 2017 (the "Guaranty") executed by Paul J. Manafort, Jr. ("PJM").[2] True and correct copies of the Note and Guaranty are attached to the Initial Petition (Doc. 15 filed 11/30/18) and incorporated herein by reference as Exhibits 1 and 2, respectively.

I.      **Background Information and Petitioner's Title and Interest in the Property**

1.      Woodlawn was established in 2017 as an investment/lending vehicle.

2.      This loan was one of the first to be considered by Woodlawn. Specifically, Woodlawn became aware that the Manaforts needed a loan to help with professional expenses (the "Loan"). The Loan was to be secured by a first priority secured lien on the Property.

3.      The terms of the Loan were negotiated by and between Berglund, counsel for Woodlawn, and Bruce Baldinger ("Baldinger"), counsel for the Manaforts.

4.      The Loan was evidenced by the Note which set forth the Obligation: an initial maturity date of December 31, 2017; a per annum interest rate of 7.25%; and collateral consisting of the Lien and Guaranty.

5.      The Manaforts, as requested, provided Woodlawn with standard documentation consistent with a loan secured by real estate. The loan documents included, without limitation: (a)

---

[2] PJM, KBM and their daughter, Andrea Manafort ("AM"), shall hereafter be collectively referred to as the "Manaforts."

a good standing certificate for Jesand ("the Certificate"); (b) borrower's counsel opinion from Baldinger (the "Opinion"); (c) consent of Jesand ("the Jesand Consent"); (d) affidavit of title from Jesand ("the Jesand Affidavit"); and (e) affidavit from AM ("the AM Affidavit"). True and correct copies of these documents are attached to the Initial Petition and incorporated herein by reference as Exhibits 3, 4, 5, 6 and 7, respectively.

6.      The primary collateral for the Note was the Lien on the project which is memorialized by a Mortgage dated August 7, 2017, executed by Jesand and AM together with a condominium rider pertaining to the Property (the "Mortgage"). A true and correct copy of the Mortgage is attached to the Initial Petition and incorporated herein by reference as Exhibit 8.

7.      To further secure the Mortgage, Woodlawn requested and was provided title insurance from First Nationwide Title Agency, LLC ("Nationwide") on or about August 10, 2017 (the "Title Policy"). A true and correct copy of the Title Policy is attached to the Initial Petition and incorporated herein by reference as Exhibit 9.

8.      Nationwide also agreed to act as the escrow agent for the Loan closing pursuant to a letter dated August 10, 2017 (the "Escrow Agent Letter"). A true and correct copy of the Escrow Agent Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 10.

9.      In its capacity as escrow agent, Nationwide provided Woodlawn with evidence that the Mortgage was duly recorded in accordance with the terms of the Loan, including a letter dated September 19, 2017 (the "Recording Letter"). A true and correct copy of the Recording Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 11.

10.     The Loan was disbursed by Woodlawn to the Manaforts in two segments:  the first wire transfer took place on August 10, 2017 in the amount of $512,500.00 from the attorney client trust account of Berglund to Nationwide; and the second wire transfer took place on August 21,

2017 in the amount of $506,841.00 (net of first month interest due under the Note and attorney fees due in respect of the closing) from the attorney client trust account of Berglund to the attorney trust account of Baldinger (the Manaforts' attorney).

11.     Thereafter, payments by the Manaforts to Woodlawn on the Note were made on a sporadic basis. The monthly interest due under the Note was $6,192.70. Payments under the Note were made by KM or the Manaforts' business manager.

12.     At some point after the Loan was made, PJM was charged in a criminal complaint that resulted in the Consent Order of Forfeiture. The Manaforts, through Baldinger, formally requested an extension of the Note via letter dated February 12, 2018 (the "Extension Request"). The forbearance negotiations took place by and between Baldinger and Berglund. A true and correct copy of the Extension Request is attached to the Initial Petition and incorporated herein by reference as Exhibit 12.

13.     Woodlawn agreed to forbear from declaring the Note in default post initial maturity date and was negotiating the terms of a forbearance agreement. Unfortunately, the Manaforts further defaulted under the terms of the forbearance agreement and, via a default letter dated June 19, 2018 (the "Default Letter"), the Manaforts were given until June 29, 2018 to pay the Obligation in full. The amount due under the Note as of June 19, 2018 was $1,043,337.39 (the "Default Obligation"). A true and correct copy of the Default Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 13.

14.     Baldinger, on behalf of the Manaforts, requested a further short term extension of the Loan from Woodlawn through Berglund after receiving the Default Letter. Specifically, Baldinger indicated that the Property was going to be either sold or refinanced, as there was significant equity in the Property.

15.     During the course of the forbearance negotiations, the Consent Order of Forfeiture was entered by the Court. The amount due Woodlawn under the Note exceeds the Default Obligation, with interest and attorney's fees continuing to accrue pursuant to the terms of the Note and related Loan documents.

## II.     Petitioner's Claim Under 21 U.S.C. § 853(n)(6)(A)

16.     Woodlawn, LLC has a vested or superior interest in the Baxter Street property under § 853(n)(6)(A). Woodlawn's interest "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant" (Mr. Manafort) prior to the time when the Baxter Street property became subject to forfeiture as a substitute asset.

17.     According to the government's Motion for Consent Order of Forfeiture (Doc. 2, p.3), the Baxter Street residence is only subject to forfeiture as a substitute asset. Likewise, the Consent Order of Forfeiture (Doc. 3, p.3), lists the Baxter Street residence as "substitute property" under § 853(p). Unlike "tainted" property, the relation-back doctrine, codified in § 853(c), does not apply to substitute assets. *Luis v. United States*, 136 S. Ct. 1083, 1091-92 (2016) (§ 853 is limited to "tainted" property with the sole, limited exception of § 853(p)); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017) (same); *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017) (*en banc*). Although the courts are still divided on when the government's interest in substitute property vests, there is broad agreement that the *earliest* time when the government's interest may vest in substitute property is when an indictment or information alleging forfeiture is returned. *E.g., United States v. Erpenbeck*, 682 F.3d 472, 477-78 (6th Cir. 2012) (Sutton, J.) ("The relation-back clause [of § 853(c)] extends only to tainted property—'property described in subsection (a)." Court holds that government does not have a "ripened interest" in substitute property until "(1) after the defendant's conviction and (2) the court determines the [tainted] property is out of the

government's reach for a reason enumerated in [§ 853(p)(1)]"); *United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007) (same); *United States v. Espada*, 128 F. Supp. 3d 555, 561-65 (E.D.N.Y. 2015) (same, collecting cases). Accordingly, Woodlawn's secured interest in the Baxter Street residence was not only superior to any right of the defendant at the time of the Note agreement but also superior to any later vesting forfeiture interest of the government in the same property. *See United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) ("a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the government's interest vested.").

## III.    Petitioner's Claim Under 21 U.S.C. § 853(n)(6)(B)

18.    Petitioner *also* qualifies for relief as a bona fide purchaser for value within the meaning of § 853(n)(6)(B). (The Court need not reach this claim if it recognizes Woodlawn's claim under § 853(n)(6)(A).) Petitioner was "reasonably without cause" to believe that the Baxter Street residence was subject to forfeiture at the time it entered into the Note on August 7, 2017 and thereafter. At no relevant time had the Baxter Street property been seized; nor had Mr. Manafort been charged with any offense. How was Petitioner supposed to know that the government would, much later, forfeit that untainted property as a substitute asset? *See United States v. Kramer*, 2006 U.S. Dist. LEXIS 89034, at *26-29 (E.D.N.Y. Dec. 8, 2006) (application of relation back doctrine to substitute property "would burden those whom the law presumes to be innocent by casting a cloud upon their title to property, which in the case of substitute assets, is not alleged to be involved in any way, shape, or form with the crimes alleged.").

The Note (Exh. 1 to the Petition), in ¶5, states that the Note "shall be governed and enforced in accordance with the laws of the State of New York…" Many cases hold that whether a person is a bona fide purchaser is determined by state law. *Pacheco v. Serendensky*, 393 F.3d 348, 353

6

(2d Cir. 2004); *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001); *United States v. Suarez*, 716 Fed. Appx. 937, 938 (11th Cir. Mar. 30, 2018). Under New York state law, Petitioner is a bona fide purchaser for value. *See United States v. Dreier*, 2013 U.S. Dist. LEXIS 92863, at *20-21 (S.D.N.Y. July 2, 2013).

"The whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired through the operation of the relation-back doctrine—in the forfeited property." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012). Thus, assuming that the Court somehow concludes that Woodlawn does not prevail under § 853(n)(6)(A), Woodlawn's interest is still protected from forfeiture as a BFP for value. The statutory language imposes no duty on the purchaser to investigate. "[A]fter all, the principal function of the bona-fide-purchaser doctrine is to protect buyers that did *not* investigate, and reading § 853(n)(6)(B) to require investigation as a condition of being an innocent purchaser would all but vitiate the statute's goal of protecting persons who meet state-law definitions of bona fide purchasers for value." *United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004). *Accord United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991); *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, at *21 (D. Minn. 2013).

"The bona fide purchaser defense turns on knowledge that *specified property* is subject to forfeiture; generalized knowledge of fraud is not enough." *Petters*, *supra*, at *18. *Accord United States v. Reckmeyer*, 836 F.2d 200, 2004-05 (4th Cir. 1987); *United States v. 392 Lexington Parkway S.,* 386 F. Supp. 2d 1062, 1065 (D. Minn. 2005) (bank qualified as innocent owner despite fact that the defendant executed mortgage on property *after being indicted for drug trafficking*; home had been searched by police for illegal narcotics, and drugs had been found there).

19.     For the reasons stated above, Petitioner Woodlawn, LLC requests that the Court hold an ancillary hearing at which the parties may present evidence pursuant to § 853(n)(5). Woodlawn requests that the Court amend its preliminary order of forfeiture dated October 10, 2018 to fully recognize Woodlawn's interest in the Baxter Street property, as set forth herein.

## IV.     Verification

I hereby declare, under penalty of perjury and under the laws of the United States of America, that the foregoing is true and correct.

Executed this __7m__ day of January, 2019, in Los Angeles, California.


KEITH BERGLUND
Managing Member, Woodlawn, LLC

8

Dated January 7, 2019                               Respectfully submitted,


                                          _____ */s/ David B. Smith*_____
                                          David B. Smith
                                          D.C. Bar No. 403068
                                          David B. Smith, PLLC
                                          108 North Alfred Street, 1st Floor
                                          Alexandria, Virginia 22314
                                          (703) 548-8911
                                          Facsimile (703) 548-8935
                                          dbs@davidbsmithpllc.com
                                          *Counsel for Woodlawn, LLC*

**<u>Certificate of Service</u>**

I hereby certify that on the 7th day of January, 2019, I electronically filed the foregoing

corrected petition with the Clerk of Court using the CM/ECF system, which will send a notification

of such filing (NEF) to the following CM/ECF user(s):

> Andrew Weissmann
> U.S. Department of Justice
> Special Counsel's Office
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530
> aaw@usdoj.gov
>
> Daniel H. Claman
> U.S. Department of Justice, Criminal Division
> Money Laundering and Asset Recovery Section
> 1400 New York Avenue, N.W.
> Suite 10200
> Washington, D.C. 20530
> daniel.claman@usdoj.gov

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

> _/s/ David B. Smith_
> David B. Smith
> D.C. Bar No. 403068
> David B. Smith, PLLC
> 108 North Alfred Street, 1st Floor
> Alexandria, Virginia 22314
> (703) 548-8911
> Facsimile (703) 548-8935
> dbs@davidbsmithpllc.com
> _Counsel for Woodlawn, LLC_