# Exhibit B

| **NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER** |  |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

**2016032201175004001EC9CC**

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 51** |
|---|---|---|
| **Document ID: 2016032201175004** | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |
| Document Type: AGREEMENT | | |
| Document Page Count: 49 | | |

**PRESENTER:**

KENSINGTON VANGUARD NATIONAL LAND
39 WEST 37TH STREET, SEVENTH FLOOR
HOLD FOR PICKUP / SEARCH NY TITLE NO. 657009
NEW YORK, NY 10018
212-532-8686
mhunker@KVNATIONAL.COM

**RETURN TO:**

CITIZENS BANK, N.A.
P.O. BOX 4060
GLEN ALLEN, VA 23058

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 209 | 1104 | Entire Lot 29-4 | 27 HOWARD STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN: 2012000268595

**PARTIES**

**PARTY 1:**
PAUL MANAFORT

☒ Additional Parties Listed on Continuation Page

**PARTY 2:**
CITIZENS BANK, N.A.
ONE CITIZENS PLAZA
PROVIDENCE, RI 02903

**FEES AND TAXES**

| **Mortgage :** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 2,730,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 282.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    04-19-2016 14:55
City Register File No.(CRFN):
**2016000136306**

*Annette M. Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016032201175004001CCB4C

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | | PAGE 2 OF 51 |
|---|---|---|
| **Document ID: 2016032201175004** | Document Date: 03-04-2016 | Preparation Date: 03-22-2016 |
| Document  Type: AGREEMENT | | |

**PARTIES**

**PARTY 1:**
KATHLEEN MANAFORT

Return To:
Citizens Bank, N. A.
P. O. Box 4060
Glen Allen, VA 23058

Prepared By:
JANICE CURCURU
48 S SERVICE RD
MELVILLE, NY 11747

*657009*

——————————————— [Space Above This Line For Recording Data] ———————————————

Loan Number: ▮▮▮▮▮▮▮

# CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) **"Agreement."** This document, which is dated March 4, 2016 and exhibits and riders attached to this document will be called the "Agreement."

(B) **"Borrower."**
Paul Manafort
Kathleen Manafort

will be called "Borrower" and sometimes "I" or "me." Borrower's address is

▮▮▮▮▮▮▮▮▮▮▮▮

(C) **"Lender."** Citizens Bank, N. A.
National Banking Association
will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of THE UNITED STATES . Lender's address is
One Citizens Plaza
Providence, RI 02903

(D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

Section:      Block:      Lot:      Unit:

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP659R(NY) (1302).00
Page 1 of 7



(E) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(F) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(G) **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

29 HOWARD ST, 4D
[Street]

| | | |
|---|---|---|
| NEW YORK<br>[City] | , | NEW YORK<br>[County] |
| NY, 10013<br>[State and Zip Code] | | |

I promise and I agree with Lender as follows:

**I.       BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 2,730,000.00   of this amount, U.S. $ 1,362,156.27     was advanced to me (or for my account) immediately prior to this consolidation.

**II.      AGREEMENT TO COMBINE NOTES AND MORTGAGES**

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

**III.     AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

NEW YORK CONSOLIDATION,   EXTENSION,   AND   MODIFICATION   AGREEMENT
Single   Family - Fannie Mae/Freddie  Mac UNIFORM   INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)   (1302).00
Page 2 of 7



**IV.     AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V.     NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.     BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII.     WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII.     OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.     LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.     TYPE OF PROPERTY**

Check box(es) as applicable.

☒ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)  (1302).00
Page 3 of 7



By signing this Agreement, Lender and I agree to all of the above.

Citizens Bank, N. A.

- Lender

By: _____

Rosa Savage   Closing Manager

_____

Paul Manafort                                                              - Borrower

_____

Kathleen Manafort                                                       - Borrower

_____

- Borrower

_____

- Borrower

_____

- Borrower

_____

- Borrower

_____

- Borrower

_____

- Borrower

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)   (1302).00
Page 4 of 7



STATE OF _____FLORIDA____, ____PALM BEACH____ County ss:
On the 4 day of MARCH 2016 before me, the undersigned, a notary public in and for said state, personally appeared
Paul Manafort, Kathleen Manafort

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

_____
Notary Public    VINCENT DELCHICCO

SEAL

STATE OF NEW YORK,                                                County ss:
On the 9th day of March 2016 before me, the undersigned, a notary public in and for said state, personally appeared   Rosa   savage

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

SEAL

BHAGYALATA D. BHATIA
Notary Public State of New York
NO. 01BH6199851
Qualified In Nassau County
Commission Expires 01 / 26 / 20 1 1

Tax Map Information:

Loan origination organization  Citizens Bank, N. A.
NMLS ID 433960
Loan originator  David Fallarino
NMLS ID 673167

NEW YORK CONSOLIDATION,   EXTENSION,   AND MODIFICATION   AGREEMENT
Single  Family - Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)   (1302).00
Page 5 of 7



**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

[X] (1)  This Mortgage given by  Paul J Manafort, Husband  and Kathleen B Manafort,  Wife;

and dated                                in favor of Citizens Bank, N.A.

securing  the original principal amount of U.S. $ 2,730,000.00         .
This Mortgage is on a *Fannie Mae/Freddie  Mac Security Instrument* and
[X]  will be recorded together  with this Agreement.
[ ]  was recorded on                          , in the                                    of
                                   , State of New York, at
[X]  At this date, the unpaid principal balance secured  by this Mortgage  is U.S. $ 2,730,000.00
This Mortgage  secures  a Note dated
[ ]  This Mortgage was assigned  to
                                                                           by Assignment  of Mortgage  dated

[ ]  and recorded on                                 in the                                  of
                                   , State of New York, at

[X] (2)  This Mortgage  given by  Paul J Manafort, Husband  and Kathleen B Manafort,  Wife;

*See Attached*

and dated                                in favor of

securing  the original principal amount of U.S. $
This Mortgage was recorded on                                    , in the                           of
                                   , State of New York, at
[ ]  At this date, the unpaid principal balance secured  by this Mortgage  is U.S. $
This Mortgage  secures  a Note dated
[ ]  This Mortgage was assigned  to
                                                                           by Assignment  of Mortgage  dated

[ ]  and recorded on                                 in the                                  of
                                   , State of New York, at

---

NEW YORK CONSOLIDATION,  EXTENSION,  AND MODIFICATION  AGREEMENT
Single  Family-Fannie  Mae/Freddie Mac UNIFORM  INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP950R(NY)   (0909).00
Page 6 of 7



☐  (3)  This Mortgage  given by

and dated                                        in favor of

securing  the original principal amount of U.S. $
This Mortgage  was recorded on                                    , in the                              of
                                                    , State of New York, at
☐  At this date, the unpaid principal balance secured by this Mortgage  is U.S.                    $
This Mortgage  secures  a Note dated
☐  This Mortgage  was assigned  to
                                                                        by Assignment  of Mortgage  dated

☐  and recorded on                                    in the                              of
                                                    , State of New York, at

See Attached

NEW YORK CONSOLIDATION,  EXTENSION,  AND MODIFICATION   AGREEMENT
Single  Family-Fannie  Mae/Freddie  Mac UNIFORM   INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)   (0909).00
Page 7 of 7



# EXHIBIT - A

RIDER A

(1)   The Mortgage given by Paul Manafort and Kathleen Manafort and dated March 4, 2016 in favor of Citizens Bank, N.A securing the original principal amount of $1,362,156.27.  This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and will be recorded together with this Agreement.   This Mortgage secures a Note dated March 4, 2016.

(2)   The Mortgage given by MC Soho Holdings, LLC. dated April 26, 2012 in favor of First Republic Bank, securing the original principal amount of $1,500,000.00, recorded July 10, 2012 in CRFN 2012000268595 in the County of New York, State of New York.  This Mortgage secures a Note dated April 26, 2012.

This Mortgage is assigned by First Republic Bank to Citizens Bank, N.A, by assignment dated February 8, 2016, and intended to be recorded simultaneously herewith, in the County of New York, State of New York.

At this date, the unpaid principal balance secured by this Mortgage is $1,367,843.73.

Mortgages #1 and #2 are consolidated by this agreement between Paul Manafort and Kathleen Manafort and Citizens Bank, N.A to form a single lien in the amount of $2,730,000.00.

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)     All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (5) below), and (b) the "Gap" Note (i.e., new money note discussed in (5) below).

(2)     The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)     The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**
*the Notes described in Exhibit A of the New York Consolidation, Extension,*
**and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**
**the Notes described in Exhibit A of the New York Consolidation, Extension,**
**and Modification Agreement dated the same date as this Note.**

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)     The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)     If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

NEW YORK CONSOLIDATION,   EXTENSION,   AND MODIFICATION   AGREEMENT
Single Family-Fannie Mae/Freddie Mac UNIFORM   INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)

VMP850R(NY)   (0909).00



**EXHIBIT B**

(Property Description)

Address:
29 HOWARD ST, 4D
NEW YORK, NY 10013

Legal Description:

See Attached Exhibit A

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev. 5/01)
VMP850R(NY)   (0909).00



Stewart Title Insurance Company          **EXHIBIT B**

Title Number:  657009(S-NY-RR-ASH)

### SCHEDULE A
### DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit') in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860.

TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration).

The Land on which the Building containing said Unit is more particularly bounded and described as follows:

Parcel 1: Lot 10

Parcel A:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows:

Northerly in front by Howard Street, 25 feet;

Easterly by Lot No. 664 on said Map, 100 feet;

Westerly by Lot No. 662 on said map, and being 25 feet in width in the rear thereof and also certain strip of land;

ALSO

Parcel B:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street;

RUNNING THENCE southerly along the center line of said wall and the prolongation of said line to the rear of

**SCHEDULE A**
**DESCRIPTION**
(Continued)

Title Number:   657009(S-NY-RR-ASH)


said Lot 31 Howard Street;

THENCE easterly along the rear line of said Lot 31, 8 inches to the westerly line of said Lot 29, Howard Street;

THENCE northerly along said westerly line of said Lot 29 and the easterly side of said wall to the northerly lien of said Lot 29;

THENCE westerly along the northerly line of said Lot 31, 8 inches to the BEGINNING.

**EXHIBIT C**
(Consolidated Note and Addenda)

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev.5/01)

VMP850R (NY) (0909).00



# EXHIBI C

# CONSOLIDATED ADJUSTABLE RATE NOTE

This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.

Loan Number:

## FIXED/ADJUSTABLE    RATE  NOTE

(LIBOR One-Year Index (As Published In *The Wall Street Journal* )-Rate Caps)

**THIS NOTE PROVIDES  FOR A CHANGE  IN MY FIXED  INTEREST  RATE TO AN ADJUSTABLE
INTEREST  RATE. THIS NOTE  LIMITS  THE AMOUNT  MY ADJUSTABLE  INTEREST  RATE CAN
CHANGE  AT ANY ONE TIME  AND THE MAXIMUM   RATE I MUST PAY.**

March 4, 2016
[Date]                                            [City]                                         [State]

29 HOWARD ST,4D
NEW YORK, NY 10013

[Property    Address]

**1.   BORROWER'S  PROMISE  TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 2,730,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Citizens Bank, N. A.
A National Banking Association

I will make all payments  under this Note in the form of cash, check or money order.

I understand  that Lender may transfer  this Note. Lender or anyone  who takes this Note by transfer and who is entitled to receive payments  under this Note is called the "Note Holder."

**2.   INTEREST**

Interest  will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      2.500 %. The interest rate I will pay may change  in accordance  with Section 4 of this Note.

The interest  rate required  by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described  in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments  on the first day of each month beginning  on        May 1, 2016       . I will make these payments  every month until I have paid all of the principal and interest and any other charges described  below that I may owe under this Note. Each monthly  payment will be applied as of its scheduled  due date and will be applied to interest before Principal. If, on        April 1, 2046      , I still owe amounts  under this Note, I will pay those amounts  in full on that date, which is called the "Maturity  Date."

I will make my monthly payments  at 10561 Telegraph Road
Glen Allen, VA 23059-4577
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly  payments  will be in the amount of U.S. $ 10,786.81       . This amount may change.

**(C) Monthly Payment Changes**

Changes  in my monthly payment will reflect changes  in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed  amount of my monthly payment in accordance  with Section 4 of this Note.

---

MULTISTATE    FIXED/ADJUSTABLE    RATE  NOTE - WSJ One-Year    LIBOR - Single Family - Fannie  Mae Uniform  Instrument
Wolters  Kluwer  Financial  Services
VMP ® -168N (1302)
Page 1 of 5                          Form  3528  6/01



**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of     April, 2021     , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Quarter percentage points (     2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     4.500 % or less than     2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     7.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.



## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of principal and interest.


I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE   FIXED/ADJUSTABLE   RATE NOTE - WSJ One-Year   LIBOR - Single Family - Fannie Mae Uniform Instrument

Form 3528 6/01

VMP ® -168N (1302)                                                        Page 3 of 5



**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS  THE  HAND(S)  AND  SEAL(S)  OF  THE  UNDERSIGNED.

_____(Seal)
Paul J Manafort                                                                                    -Borrower

_____(Seal)
Kathleen B Manafort                                                                             -Borrower

_____(Seal)
                                                                                                       -Borrower

_____(Seal)
                                                                                                       -Borrower

_____(Seal)
                                                                                                       -Borrower

_____(Seal)
                                                                                                       -Borrower

_____(Seal)
                                                                                                       -Borrower

_____(Seal)
                                                                                                       -Borrower

[Sign Original Only]

Loan origination organization  Citizens Bank, N. A.
NMLS ID  433960
Loan originator  David Fallarino
NMLS ID  673167

MULTISTATE   FIXED/ADJUSTABLE   RATE  NOTE - WSJ  One-Year   LIBOR - Single Family - Fannie Mae Uniform  Instrument

Form  3528  6/01

VMP ® -168N  (1302)                                              Page 5 of 5




# ADDENDUM TO NOTE

THIS ADDENDUM TO NOTE is made this 3/4/2016 12:00:00 AM day of March, 2016 , and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of Citizens Bank, N.A., ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a Mortgage, Deed of Trust or Deed to Secure Debt, as modified or amended, in favor of Lender dated the same date as this Addendum to Note (the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1. **GOVERNING LAW.**
   This Note is governed by federal law, and to the extent not preempted by federal law, by the laws of the State of Rhode Island.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Note.

_____ (Seal)          _____ (Seal)
PAUL J MANAFORT                   -Borrower        KATHLEEN B MANAFORT             -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower

UADDNOTE-04/14



**EXHIBIT D**
(Consolidated Mortgage and Riders)

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01 (rev.5/01)

VMP850R (NY) (0909).00



Return To:
Citizens Bank, N. A.
P. O. Box 4060
Glen Allen, VA 23058


Prepared By:
JANICE CURCURU
48 S SERVICE RD
MELVILLE, NY 11747


———————————————— [Space  Above  This  Line  For  Recording   Data] ————————————————

# MORTGAGE
## CONSOLIDATED MORTGAGE        EXHIBIT - D

Loan Number: ▮▮▮▮▮▮▮
**WORDS  USED OFTEN  IN THIS DOCUMENT**
**(A) "Security  Instrument."** This document, which is dated      March 4, 2016      , together  with all Riders to this document,
will be called the "Security Instrument."
**(B) "Borrower."**
Paul  Manafort, Husband and Kathleen Manafort, Wife ;


whose  address  is

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "Lender."** Citizens Bank, N. A.
National Banking Association
will be called "Lender." Lender is a corporation  or association  which exists under the laws of THE UNITED STATES
Lender's address  is One Citizens Plaza
Providence, RI 02903
**(D) "Note."** The note signed by Borrower and dated      March 4, 2016      , will be called the "Note." The Note shows that I
owe Lender  Two Million Seven Hundred Thirty Thousand and 00/100                                             Dollars
(U.S. $ 2,730,000.00         ) plus interest and other amounts  that may be payable.  I have promised to pay this debt in Periodic
Payments and to pay the debt in full by April 1, 2046            .


Section:                Block:                  Lot:                   Unit:

**NEW YORK - Single Family - Fannie  Mae/Freddie   Mac UNIFORM  INSTRUMENT**                          Form  3033  1/01
Wolters  Kluwer  Financial Services
VMP ®-6(NY)  (1302).00
Page 1 of 15



(E) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [X] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | |
| [ ] Other(s) [specify] | | |

(I) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(M) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) amounts under Section 3 will be called "Periodic Payment."

(P) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

29 HOWARD ST,4D

[Street]

NEW YORK                                   [City, Town or Village] ,New York          10013      [Zip Code].

This Property is in                              NEW YORK                              County. It has the following legal
description:

Legal Description attached hereto and made part hereof as Exhibit'A'

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.



If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.



Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

NEW YORK - Single Family - Fannie Mae/Freddie   Mac UNIFORM INSTRUMENT
VMP ®-6(NY) (1302).00
Page 12 of 15
Form 3033  1/01



**24.  Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☐  This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐  This Security Instrument does not cover real property improved as described above.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGE FOLLOWS.**

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____        _____

VINCENT PELEGICO

_____        _____(Seal)
Paul Manafort                                                                                         -Borrower

_____        _____(Seal)
Kathleen BManafort                                                                               -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

                                                                              _____(Seal)
                                                                                                                      -Borrower

**NEW YORK** - Single Family - Fannie Mae/Freddie   Mac **UNIFORM  INSTRUMENT**                                Form  3033  1/01
VMP ® -6(NY)  (1302).00                                        Page 14 of 15



**STATE OF:**  *Florida*                                                                        County ss: Palm Beach

On the  4  day of MARCH 2016  before me, the undersigned,  a notary  public in and for said state,  personally  appeared
Paul  Manafort, Kathleen  Manafort

personally  known  to me or proved  to me on the basis  of satisfactory  evidence  to be the  individual(s)  whose  name(s)  is/are  subscribed  to the within instrument  and acknowledged  to me that he/she/they  executed  the same  in his/her/their  capacity(ies),  and  that by  his/her/their  signature(s)  on the instrument,  the individual(s),  or the  person  upon  behalf  of which  the individual(s)  acted,  executed  the instrument.



VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

Notary  Public        VINCENT  DELCHICCO

SEAL

Tax  Map  Information:

Loan  origination  organization  Citizens Bank, N. A.
NMLS ID 433960
Loan  originator  David Fallarino
NMLS ID 673167

NEW YORK - Single  Family - Fannie  Mae/Freddie   Mac  UNIFORM  INSTRUMENT
VMP ®-6(NY)  (1302).00
Page 15 of 15
Form  3033  1/01



# FIXED/ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In** *The Wall Street Journal)***- Rate Caps)**

Loan Number: ▓▓▓▓▓▓

THIS FIXED/ADJUSTABLE RATE RIDER is made this    4th  day of         March, 2016        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

Citizens Bank, N. A.

A National Banking Association

("Lender") of the same date and covering the property described in the Security Instrument and located at:

29 HOWARD ST,4D<br/>NEW YORK, NY 10013

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of    2.500 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of April, 2021              , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

**MULTISTATE FIXED/ADJUSTABLE   RATE RIDER - WSJ One-Year LIBOR** - Single Family -
**Fannie Mae Uniform Instrument**
**Form 3187 6/01**
Wolters Kluwer Financial Services
VMP ® -168R (0807)
Page 1 of 5



If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Quarter                                                  percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      4.500 % or less than      2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   7.500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

MULTISTATE FIXED/ADJUSTABLE  RATE RIDER - WSJ One-Year LIBOR - Single Family -
Fannie Mae Uniform Instrument
VMP ® -168R (0807)                           Page 2 of 5                          Form 3187 6/01



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE  FIXED/ADJUSTABLE   RATE RIDER - WSJ One-Year LIBOR - Single Family -
Fannie Mae Uniform Instrument
VMP ® -168R (0807)              Page 3 of 5                    Form 3187 6/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
Paul Manafort                                           -Borrower

_____ (Seal)
Kathleen Manafort                                       -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

### ADDITIONAL  BORROWER  SIGNATURES  ON NEXT PAGE.

**MULTISTATE  FIXED/ADJUSTABLE   RATE RIDER - WSJ One-Year  LIBOR - Single Family -
Fannie Mae Uniform Instrument**
VMP ® -168R (0807)                 Page 4 of 5                   Form 3187 6/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family -
Fannie Mae Uniform Instrument**
VMP ® -168R (0807)                    Page 5 of 5                    Form 3187 6/01



# CONDOMINIUM RIDER

Loan Number: ▮▮▮▮▮▮▮

THIS CONDOMINIUM RIDER is made this  4th  day of     March, 2016     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Citizens Bank, N. A.
A National Banking Association
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

29 HOWARD ST,4D
NEW YORK, NY 10013

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

29 HOWARD ST CONDO
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM   COVENANTS.**   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium   Obligations.**   Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE   CONDOMINIUM   RIDER - Single  Family - Fannie  Mae/Freddie   Mac  UNIFORM INSTRUMENT
Form  3140  1/01
Wolters  Kluwer  Financial  Services
VMP ® -8R (0810)
Page 1 of 3



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE   CONDOMINIUM   RIDER - Single   Family - Fannie   Mae/Freddie   Mac UNIFORM INSTRUMENT

VMP ® -8R (0810)                    Page 2 of 3                         Form 3140 1/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
Paul Manafort                                                                           -Borrower

_____ (Seal)
Kathleen Manafort                                                                   -Borrower

_____ (Seal)
                                                                                            -Borrower

_____ (Seal)
                                                                                            -Borrower

**MULTISTATE   CONDOMINIUM   RIDER** - Single  Family  -  **Fannie   Mae/Freddie   Mac UNIFORM INSTRUMENT**
VMP ® -8R (0810)                          Page 3 of 3                          Form 3140 1/01

# SECOND HOME RIDER

Loan Number: ▮▮▮▮▮▮▮

THIS SECOND HOME RIDER is made this   4th   day of        March, 2016        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to

Citizens Bank, N. A.

A National Banking Association

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

29 HOWARD ST,4D
NEW YORK, NY 10013

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE  SECOND  HOME  RIDER - Single Family - Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT
**Form 3890 1/01**                     Page 1 of 2
⟨VMP⟩-365R (0811)        VMP Mortgage Solutions, Inc. (800)521-7291



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)
Paul Manafort                                   - Borrower

_____ (Seal)
Kathleen Manafort                               - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

**MULTISTATE SECOND HOME RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                    Form 3890 1/01
VMP®-365R (0811)                    Page 2 of 2

Stewart Title Insurance Company

Title Number:   657009(S-NY-RR-ASH)

### SCHEDULE A
### DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit') in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860.

TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration).

The Land on which the Building containing said Unit is more particularly bounded and described as follows:

Parcel 1: Lot 10

Parcel A:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows:

Northerly in front by Howard Street, 25 feet;

Easterly by Lot No. 664 on said Map, 100 feet;

Westerly by Lot No. 662 on said map, and being 25 feet in width in the rear thereof and also certain strip of land;

ALSO

Parcel B:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street;

RUNNING THENCE southerly along the center line of said wall and the prolongation of said line to the rear of

**SCHEDULE A**
**DESCRIPTION**
(Continued)

Title Number:  657009(S-NY-RR-ASH)


said Lot 31 Howard Street;

THENCE easterly along the rear line of said Lot 31, 8 inches to the westerly line of said Lot 29, Howard Street;

THENCE northerly along said westerly line of said Lot 29 and the easterly side of said wall to the northerly lien of said Lot 29;

THENCE westerly along the northerly line of said Lot 31, 8 inches to the BEGINNING.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2016032201175004001S074D

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2016032201175004**          Document Date: 03-04-2016          Preparation Date: 03-22-2016
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT          2

**SECTION 255 AFFIDAVIT**

STATE OF Florida            )
                           )ss.:
COUNTY OF  Palm Beach      )

Paul Manafort and Kathleen Manafort ,  being duly sworn, depose and say:

1.      That (he, she, they) (is/are) the mortgagor(s) ([collectively,] the "Mortgagor") under the mortgage(s) ([collectively,] the "Mortgage") set forth on Rider A attached to, and made a part of, this Affidavit.

2.      That the Mortgage set forth in Rider A continues to secure a bona fide obligation and that any assignee thereof is not a nominee of the Mortgagor.

3.      That pursuant to a certain Consolidation, Extension and Modification Agreement (the "Agreement") of even date between the Mortgagor and MERS solely as nominee for America's Wholesale Lender, intended to be recorded simultaneously herewith, the Mortgage was consolidated, extended and modified to form a single mortgage lien in the principal sum of $2,730,000.00

4.      That no reloans or readvances have been made under, by or pursuant to the Mortgage.

5.      That the maximum amount secured, or which under any contingency may be secured, by the Mortgage is $2,730,000.00, and the Agreement does not create or secure any new or further indebtedness.

6.      Request is hereby made that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of the Tax Law.

_____
Paul Manafort

_____
Kathleen Manafort

_____

_____

Sworn to before me this
4th  day of March 2016

_____
Notary Public

Vincent DelChicco

VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

SEAL

RIDER A

(1)   The Mortgage given by Paul Manafort and Kathleen Manafort and dated March 4, 2016 in favor of Citizens Bank, N.A securing the original principal amount of $1,362,156.27.  This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and will be recorded together with this Agreement.   This Mortgage secures a Note dated March 4, 2016.

(2)   The Mortgage given by MC Soho Holdings, LLC. dated April 26, 2012 in favor of First Republic Bank, securing the original principal amount of $1,500,000.00, recorded July 10, 2012 in CRFN 2012000268595 in the County of New York, State of New York.  This Mortgage secures a Note dated April 26, 2012.

This Mortgage is assigned by First Republic Bank to Citizens Bank, N.A, by assignment dated February 8, 2016, and intended to be recorded simultaneously herewith, in the County of New York, State of New York.

At this date, the unpaid principal balance secured by this Mortgage is $1,367,843.73.

Mortgages #1 and #2 are consolidated by this agreement between Paul Manafort and Kathleen Manafort and Citizens Bank, N.A to form a single lien in the amount of $2,730,000.00.