# Exhibit G

## HOME EQUITY LINE OF CREDIT AGREEMENT

Date: __March 4, 2016__

Loan #:

Borrowers:
PAUL J MANAFORT

Property Address:
29 HOWARD ST, 4D, NEW YORK, NY
10013

KATHLEEN B MANAFORT

Lien Position: 2nd

Credit Limit: $682,500.00

This **Home Equity Line of Credit Agreement** ("Agreement") contains the terms which govern your revolving home equity line of credit ("Credit Line" or "Credit Line Account") provided by Citizens Bank, N.A., hereafter referred to as "we", "us" or "our". This Agreement sets forth the terms under which we extend credit advances against your Credit Line Account ("Credit Advances"). Each person who signs this Agreement will be bound by its terms and conditions and will be responsible for paying all amounts owed. In this Agreement, the words "you" and "your" mean each and every person who signs this Agreement, including the persons named above as borrowers. You agree to the following terms and conditions:

**1. Promise to Pay.** You promise to pay us the total of all Credit Advances made by us under the terms of this Agreement, as well as any periodic finance charges, finance charges, and other fees and charges due (including insurance premiums), together with all costs and expenses for which you are responsible under this Agreement or under the mortgage, deed of trust or other security instrument which secures this Agreement ("Mortgage"). You will pay your Credit Line according to the payment terms set forth below.

**2. Term.** The term of your Credit Line will begin as of the date of this Agreement and will continue until termination of your Credit Line Account. All indebtedness under this Agreement, if not already paid pursuant to the payment provisions contained in **Section 3**, will be due and payable upon termination. The "Draw Period" of your Credit Line will begin on a date when this Agreement is accepted by us following the expiration of your right to cancel (if any), the perfection of the Mortgage, and the meeting of all of our other conditions, or such other date that we may designate, and will continue for a period of ten (10) years, subject to the terms and conditions of this Agreement. Subject to any conditions we may impose, you may obtain Credit Advances during the Draw Period not to exceed, at any time, the credit limit of your Credit Line, which is $682,500.00 ("Credit Limit"). The terms of your Credit Limit are more fully described in **Section 5**. After the Draw Period ends, you will no longer be able to obtain Credit Advances and you must repay the outstanding balance over fifteen (15) years ("Repayment Period"). You agree that, at our sole discretion, we may renew or extend the period during which you may obtain Credit Advances or make payments.

ULOCAG01 (12/15)

LIBW/1101376.5

Initials 

Page 1 of 13



3. **Payments**

a. **Draw Period: Monthly Interest-Only Payments.** Subject to the terms of this Agreement, you can obtain Credit Advances during the ten (10) year Draw Period. During the Draw Period, your payments will be due monthly and will equal the periodic finance charges that accrued on the outstanding principal balance during the preceding billing period, plus any finance charges, other fees and charges (including insurance premiums), and any amount past due. You agree to make these payments on or before the payment due date indicated on your periodic statement ("Payment Due Date"). These payments will not reduce the principal that is outstanding on your Credit Line Account.

b. **Repayment Period.** During the Repayment Period, your regular payment will be (i) a constant, equal amount based on the amortization of your outstanding principal balance at the inception of the Repayment Period over a one hundred and eighty (180) month period or (ii) $20, whichever is greater. Your "Minimum Payment" will be the regular payment, plus any periodic finance charges, finance charges, other fees and charges (including insurance premiums), and any amount past due. In any event, if your Credit Line Account balance falls below $20, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the Payment Due Date.

c. **Partial Release.** If you obtain a Credit Advance that is used as a down payment to purchase a home or otherwise finance the purchase of a home and you exercise your right under applicable law to cancel the unadvanced portion of your Credit Line, you will no longer be able to obtain Credit Advances and the Repayment Period will begin.

d. **Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received. Payments sent to us at another address may delay our receipt of the payment. Payments sent by mail must be mailed early enough to insure receipt by us on the Payment Due Date.

4. **Application of Payments.** Unless otherwise agreed or required by applicable law, during the Draw Period, payments and other credits will be applied in the following order: to the oldest unpaid billings first, and then sequentially to any other unpaid billings from the oldest to the most current. Payments in excess of billed amounts will be credited to your Credit Line Account. During the Repayment Period, your payments will be applied in the following order, assuming that they are made by the Payment Due Date: (a) the interest portion of the unpaid Minimum Payment, and (b) any additional amount paid that exceeds interest due will next be applied to the principal portion of the unpaid Minimum Payment. If you make a payment greater than the Minimum Payment, but less than the total due shown on your periodic statement, you will still be required to make the Minimum Payments in the months that follow. We will refund to you any credit balance upon request if there is a credit balance on the date we receive the refund request.

5. **Credit Limit.** Your Credit Limit under this Agreement is $682,500.00. This is the maximum credit that is to be extended to you. If your Credit Limit is exceeded, you will be in default of a material obligation under this Agreement and the provisions of **Sections 7 and 22** will apply. During the Draw Period, you may borrow against your Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of your Credit Limit. You agree not to attempt, request, or obtain a Credit Advance that will make your Credit Line Account balance exceed your Credit Limit. We are not liable if we pay a check resulting in your Credit Limit being exceeded. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you for exceeding your Credit Limit.

ULOCAG02 (12/15)

LIBW/1101376.5

Page 2 of 13

Initials 



**6.  How to Use Your Credit Line.** You may obtain Credit Advances by writing a preprinted "check" that we will supply to you. Credit Line checks are specially designated checks which can be completed just like any other check. Each check written and negotiated will create a Credit Advance. Checks drawn on your Credit Line Account on forms other than those forms supplied by us for that purpose will not be honored. Each check you write will be paid with a Credit Advance from your Credit Line Account unless: (a) an event or condition described in **Sections 22 or 23** has occurred, or (b) any of the circumstances described in **Section 7** have occurred. Your use of a check will be reflected on your periodic statement as a Credit Advance. Credit Line checks will not be certified by us and you agree that we may retain the actual checks written by you, and need not return the original checks to you. We may also provide additional methods of accessing your Credit Line Account from time to time.

If there is more than one person authorized to use your Credit Line Account, we may follow the instructions from any authorized person. Each of you agree not to give us conflicting instructions, such as one of you telling us not to honor Credit Advances requested by another authorized person. You agree that we are not required to follow such conflicting instructions. However, we may honor any request by one of you to cease making Credit Advances as provided in **Section 22(d)** or cancel the right to Credit Advances as provided in **Section 27**.

**7.  Limitations on Use of Checks.** We reserve the right not to honor Credit Line checks in the following circumstances:

a.  Your Credit Limit has been, or would be, exceeded by paying the check.

b.  Your check is post-dated. We are not required to honor a post-dated check. If a post-dated check is paid and as a result any other check is returned or not paid, we are not liable or responsible for such returned or unpaid checks, subject to applicable law.

c.  Your checks have been reported lost or stolen.

d.  Your check is not signed by an Authorized Signer (as defined in **Section 8**).

e.  Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the check.

f.  You are in violation of any other transaction requirement or would be if we paid the check.

If we pay any check under these circumstances, you must repay us, subject to applicable law, for the amount of the check. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor.

**8.  Authorized Signers.** The term "Authorized Signer" means and includes each person who (a) signs the application for your Credit Line, and (b) signs this Agreement.

**9.  Stop Payments.** We do not honor stop payment orders for checks drawn against your Credit Line Account. You therefore should not use your Credit Line Account if you anticipate the need to stop payment. You agree that we will have no liability to you or to any other party because we do not honor stop payment orders.

**10.  Lost Checks.** If you lose your checks or someone is using them without your permission, you agree to notify us immediately. The fastest way to notify us is by calling our servicer, at 1-800-708-6680. You also can notify our servicer at: Citizens Bank Consumer Loan Servicing, 1 Citizens Drive, Riverside, RI 02915.

ULOCAG03 (12/15)
LJBW/1101376.5

Initial

**11. Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in **Section 13**, or as described in the Mortgage. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in the Property (defined in **Section 12**). These costs or expenses include, without limitation, payments to cure defaults under any existing liens on the Property. If you do not pay your property taxes, we may pay the delinquent taxes and charge your Credit Line for the amount of such payment. Any amount so charged to your Credit Line will be a Credit Advance and will decrease the funds available, if any, under your Credit Line. However, we have no obligation to provide any of the Credit Advances referred to in this Section.

**12. Collateral.** This Agreement is secured by a Mortgage dated <u>March 4, 2016</u> to us on property located at
<u>29 HOWARD ST, 4D, NEW YORK, NY 10013</u>

("Property"). You are giving us a security interest in the Property. We have the right, but are not required, to take such action as is necessary to protect our security interest described in this Section. Any amounts we may pay in exercising our right to protect our security interest must be paid by you on demand, and will bear interest at the Annual Percentage Rate then applicable to your Credit Line Account.

**13. Insurance.** You must obtain insurance on the Property through any company of your choice that is reasonably satisfactory to us for the lesser of the replacement cost of the buildings and appurtenances on the Property or the amount of your Credit Limit plus the amount of any prior liens and security instruments on the Property. You must name Citizens Bank, N.A., its successors and/or assigns, ATIMA, as mortgagee on all required insurance policies. The insurance you maintain must provide for ten (10) days notice of cancellation to us. If the Property is located in an area identified by the Federal Emergency Management Agency as having special flood hazards under the National Flood Insurance Act of 1994, as amended, you must also maintain flood insurance on the Property. Subject to applicable law, if you fail to obtain or maintain insurance as required herein or in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

In the event you fail to obtain and maintain any insurance on the Property required by us, you understand and agree that we may, at our option (unless required to do so by applicable law), obtain and maintain the required insurance and pay the premium(s) for such insurance, and either: (a) add the cost of the insurance to the unpaid principal balance owed under this Agreement (in which case you agree to repay the cost of the insurance in accordance with the repayment terms of this Agreement), or (b) bill you separately (in which case you agree to pay the bill immediately). You agree to pay interest on any such amounts at the interest rate provided in this Agreement until such amounts are repaid in full. You understand and acknowledge that any insurance obtained and maintained by us may (i) only protect the interests of us and any other creditor with a prior mortgage on the Property, and (ii) be more expensive than insurance obtained and maintained by you.

**14. Right of Setoff.** To the maximum extent permitted by applicable law, we have the right to transfer funds held in any deposit account that any person who signs this Agreement has with any bank affiliated with us in order to pay or reduce your obligations if you are in default under this Agreement or we terminate or accelerate your Credit Line Account. You grant to us a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with any bank affiliated with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the maximum extent permitted by applicable law, to charge or set off all sums owing under this Agreement against any and all such accounts.

**15. Periodic Statements.** We will send you a periodic statement monthly. The statement will show, among other things, the following activity on your Credit Line Account during the billing cycle: your previous total balance, your new total balance, payments and credits, Credit Advances, periodic finance charges, and any other finance charges, fees and charges (including insurance premiums). Your statement also will identify the minimum payment you must make for that billing period and the Payment Due Date. All periodic statements will conclusively be considered to be correct and accepted by you unless we are notified in writing of any alleged errors within sixty (60) days after receipt.

**16. Periodic Finance Charges.** You will pay a periodic finance charge on the outstanding amount of the principal balance under your Credit Line each billing cycle during the Draw Period and the Repayment Period. The periodic finance charge will begin to accrue on the date Credit Advances are posted to your Credit Line Account. There is no "grace period" which would allow you to avoid a periodic finance charge on your Credit Advances.

**17. Other Finance Charges, Fees or Charges.** In addition to any periodic finance charge that will be charged to your Credit Line Account each billing cycle, you will pay the following fees and charges including real estate and security title fees:

    a.   **Miscellaneous FINANCE CHARGES, Fees or Charges**

        **Total**      (Lender Paid)

    b.   **Annual Fee.** There is no Annual Fee for the first year. Thereafter, a non-refundable Annual Fee of $50 will be charged to your Credit Line Account on each anniversary of your Credit Line, during the Draw Period.

ULOCAG05 (12/15)
LIBW/1101376.5

Page 5 of 13

Initials _____ _____



c. **Late Charges.** Your payment will be late if it is not received by us within fifteen (15) days of the Payment Due Date shown on your periodic statement. If your payment is late, we may charge you five percent (5%) or $20.00 whichever is less.

d. **Returned Check Fee:** We may charge and you agree to pay a fee of $25.00 for each return of a dishonored check or other payment instrument.

18. **Method Used to Determine the Balance on Which the Periodic Finance Charge Will Be Computed.** We calculate the periodic finance charge on your Credit Line Account by determining the average daily balance of your Credit Line Account and multiplying that amount by the applicable daily periodic rate, then by the number of days in the billing cycle. To get the average daily balance, we take the beginning unpaid principal balance of your Credit Line Account each day and add new Credit Advances and subtract the principal portion of any payments and credits. This gives us the daily principal balance each day. Then we add up all the daily principal balances for the billing cycle and divide the total by the number of days in the billing cycle (the number of days since your last statement). This gives us the average daily balance. The average daily balance does not include finance charges, insurance premiums, annual fees or other charges.

19. **How You May Compute the Periodic Finance Charges on Your Credit Line Account.** When the average daily balance has been computed, we multiply the average daily balance by the daily periodic rate, which is arrived at by dividing the Annual Percentage Rate by the number of days in the year. The result is multiplied by the number of days in the billing cycle. This figure is the periodic finance charge assessed for the billing cycle.

20. **Daily Periodic Rate and Corresponding Annual Percentage Rate.** We will determine the daily periodic rate and the corresponding Annual Percentage Rate as follows. We start with an independent index ("Index"). The Index is the prime rate published in *The Wall Street Journal* in its "Money Rates" table ("Prime Rate"). If more than one Prime Rate is published in *The Wall Street Journal* "Money Rates" table, we will use the highest Prime Rate. If the Index is no longer available or is not published in *The Wall Street Journal* "Money Rates" table, we may use the Prime Rate published in any other newspaper of general circulation, or we may substitute a similar Index at our sole discretion. We then add to the Index a margin equal to the number of percentage points disclosed in the next sentence ("Margin"). The Margin is 1.090%. To determine the daily periodic rate that will apply to your Credit Line Account, we add the Index and the Margin, then divide by the number of days in a year. To obtain the Annual Percentage Rate, we multiply the daily periodic rate by the number of days in a year. This result is the Annual Percentage Rate. The Annual Percentage Rate includes only interest and no other costs.

The daily periodic rate and the corresponding Annual Percentage Rate on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the daily periodic rate will take the form of higher payment amounts. Adjustments to the daily periodic rate and the corresponding Annual Percentage Rate resulting from changes in the Index will take effect on the first day of the next billing cycle. We use the Prime Rate published on the last business day of each month for any Annual Percentage Rate adjustment. The maximum **ANNUAL PERCENTAGE RATE** during the life of your Credit Line will be **21.000%.** In no event will the **ANNUAL PERCENTAGE RATE** be less than **2.500%** during the life of your Credit Line. As of the date this Agreement was printed, the Index is **3.500%** per annum. Based on that Index value, we estimate that the initial daily periodic rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line for the first billing cycle will be as follows:

| Margin Added To Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 1.090% | 4.590% | 0.0126% |

The initial daily periodic rate and corresponding Annual Percentage Rate actually in effect during the first billing cycle, which will be disclosed on your first periodic statement, may differ from these estimates if the Index changes between the date this Agreement was printed and the date the first billing cycle begins.



Initials 



**21. Conversion Option.** You can exercise the option to convert to a fixed rate only at the end of the Draw Period. Your Annual Percentage Rate may increase if you exercise this option to convert to a fixed rate.

The fixed rate will be determined as follows. The **ANNUAL PERCENTAGE RATE** will be fixed during the entire Repayment Period and will be equal to **2.500%** added to the Index which is in effect on the date that the final Draw Period payment is due, but will not be more than **21.000%.**

In no event will the finance charge exceed that allowable under applicable law. If it is determined that the finance charge would, except for this provision, exceed the maximum rate allowable, all excess payments will be considered to be payments on the principal balance due hereunder and will be applied accordingly.

**22. Suspension or Reduction**

　　a. We may take the actions listed in **Section 22(b)** during the period that any of the following events or conditions occur:

　　　　i. The value of the Property declines significantly below the Property's appraised value for purposes of your Credit Line Account. This includes, for example, a decline such that the initial difference between your Credit Limit and the available equity is reduced by fifty percent (50%) and may include a smaller decline depending on the individual circumstances;

　　　　ii. We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances;

　　　　iii. You are in default under any material obligations of your Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events and conditions described under **Section 23(a),** obligations to pay fees and charges, obligations and limitations on the receipt of Credit Advances, obligations concerning maintenance or use of the Property, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable law (such as zoning restrictions), and obligations of any comaker;

　　　　iv. Government action prevents us from imposing the Annual Percentage Rate provided for under this Agreement, or impairs our security interest such that the value of the Property is less than 120 percent (120%) of your Credit Line;

　　　　v. We have been notified by a governmental authority that continued Credit Advances may constitute an unsafe and unsound business practice; or

　　　　vi. The maximum Annual Percentage Rate or finance charge is reached.

　　b. During the period in which an event or condition described in **Section 22(a)** exists, we may refuse to make any additional Credit Advances to you or reduce your Credit Limit or do both. We will mail or deliver written notice to you after we suspend your Credit Line Account or reduce your Credit Limit, and this notice will describe the specific reasons for our action. We are obligated to reinstate your credit privileges when the condition(s) which caused the suspension or reduction has been cured or has changed and you have notified us in writing, explaining how the condition(s) has been cured or has changed, provided no new condition(s) under **Section 22(a)** exists or **Section 23(a)** has occurred.

　　c. Before reinstating your right to obtain Credit Advances, or restoring your Credit Limit, we may conduct or obtain credit reports, appraisals, lien searches and other evaluations as we consider appropriate. To the extent permitted by applicable law, you agree to reimburse us on demand for any costs we actually incur for obtaining such information.

　　d. If more than one of you sign this Agreement and any one of you requests that we cease making Credit Advances, we may comply with such a request. Each of you who has signed this Agreement must join in any request to reinstate Credit Advances for such request to be effective. If all such persons subsequently request reinstatement of Credit Advances, we must honor such a request unless a condition listed in **Section 22(a)** exists or **Section 23(a)** has occurred.



e. If an event or condition described in **Section 22(a)** occurs which is also an event or condition described in **Section 23(a)**, we have the option of exercising any or all of the remedies described in **Sections 22(b) and 23(b)**.

f. If your Credit Line is suspended, you must immediately destroy all Credit Line checks and any other access devices. Any use of checks or other access devices during suspension may be considered fraudulent. You will also remain liable for any further use of such checks or other Credit Line access devices not returned to us.

### 23.   Termination and Acceleration

a.   We may take the actions listed in **Section 23(b)** if any of the following events or conditions occur:

i.   You have at any time in connection with your Credit Line Account, including on your application for the same, committed fraud or have made, or make at anytime, any material misrepresentation. For purposes of this provision, fraud and material misrepresentation means knowingly making any false financial or other statement and/or intentionally failing to disclose information in connection with your Credit Line Account;

ii.   Failure to meet the payment terms of this Agreement, such as your failure to make any Minimum Payment on or before the Payment Due Date; or

iii.   Your action or inaction adversely affects the collateral for your Credit Line Account or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on your Credit Line Account or the death of any one of you if the collateral is adversely affected by such death, transfer of title or sale of the Property, the Property is taken through eminent domain, creation of a senior lien on the Property without our permission, foreclosure by the holder of a prior lien, use of the Property for prohibited purposes and such use subjects the Property to seizure, you move out of the Property or you break any promise made in this Agreement or in the Mortgage.

b.   If an event or condition described in **Section 23(a)** occurs, subject to any notice or other requirement or limitation imposed by applicable law, we may do any combination of the following things:

i.   We may terminate any of your rights under your Credit Line Account;
ii.   We may temporarily or permanently refuse to make any additional Credit Advances;
iii.   We may declare all sums owing under this Agreement and any other agreement you have made with us to be immediately due and payable;
iv.   We may foreclose the Mortgage;
v.   We may reduce your Credit Limit; and
vi.   We may take any other action permitted by this Agreement, by law or in equity.

c.   If your Credit Line is terminated, you must immediately destroy all Credit Line checks and any other access devices. Any use of checks or other access devices following termination may be considered fraudulent. You will also remain liable for any further use of such checks or other Credit Line access devices not returned to us.

**24.   Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems).

Page 8 of 13

Initial 



**25.   Collection Costs.** If you fail to abide by any terms of this Agreement or your Credit Line is terminated, and if we are permitted to do so by applicable law, we may hire or pay someone else to help collect your Credit Line Account. You will pay all reasonable collections costs, including reasonable attorneys' fees incurred by us in the collection of amounts due under this Agreement to the extent not prohibited by applicable law. This includes, subject to any limits under applicable law, our legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay of injunction), appeals, and any anticipated post judgment collection services.

**26.   Delay in Enforcement.** Failure at any time by us to exercise any of our rights hereunder does not constitute a waiver of our right to exercise the same at a later time.

**27.   Cancellation by You.** If you cancel your right to Credit Advances under this Agreement, you must notify us in writing at the address indicated in **Section 10** and destroy all Credit Line checks and any other Credit Line Account access devices. If two or more persons are obligated under this Agreement, any one of them may provide us with a written request to cancel the Credit Line Account. If such cancellation occurs, all persons obligated under this Agreement must provide us with a written request to reinstate draw privileges. We are under no obligation to reinstate draw privileges once this Agreement is cancelled. Your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement regardless of (a) any actions we may take pursuant to **Sections 22(b) and 23(b)**, (b) any request that we cease Credit Advances pursuant to **Section 22(d)**, or (c) your cancellation under this Section.

**28.   Prepayment:** If you pay off and close your line of credit account within three (3) years after the date of the Agreement, we may charge you, and you agree to pay us a fee of $350

**29.   Notices.** All notices will be sent to your address as shown in this Agreement unless you notify us in writing of any change in your address or name within thirty (30) days of the change. On joint Credit Line Accounts, notices sent to one of you will be considered notice sent to all.

**30.   Information About You.** You authorize us to obtain financial information about you from time to time while your Credit Line is outstanding from third parties, including, but not limited to, credit bureaus, your employer, or other financial institutions. You also authorize us to disclose information about your creditworthiness and your Credit Line Account to consumer reporting agencies. In addition, you authorize us to disclose information about you to other third parties in accordance with our privacy policy: *Citizens' Pledge Regarding the Responsible Use and Protection of Customer Information.* We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense, except you must reimburse us for any costs we actually incur in obtaining an appraisal in connection with reinstating your right to obtain Credit Advances or restoring your Credit Limit as provided in **Section 22(c)**.

**31.   Documentation.** You agree to execute or re-execute any document that we request in order to correct any error or omission in the original Agreement, the Mortgage, or other Credit Line Account related documents, including, but not limited to, confirmatory or corrective security instruments.

**32.   Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**33.   Tax Deductibility.** You understand that we make no representation or warranty whatsoever concerning the tax consequences of your Credit Line Account, including the deductibility of interest, and that you should consult with your own tax advisor for guidance on this subject. You also agree that we will not be liable in any manner whatsoever should the interest paid on your Credit Line Account not be deductible.

ULOCAG09 (12/15)
LIBW/1101376.5                                    Page 9 of 13                            Initials 



**34. Governing Law.** This Agreement is governed by federal law and, to the extent not preempted by federal law, by the laws of the state of Rhode Island. If any provision of this Agreement conflicts with any existing or future law, it will be deemed modified to the extent necessary to comply with such law and the validity of the remaining provisions will not be affected.

**35. Interpretation.** The names given to paragraphs or sections in this Agreement are for reference purposes only. They are not to be used to interpret or define any provision of this Agreement. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreement with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, optical image or other electronic medium will have the same validity as the original. You agree that, except to the extent you can show there is a billing error as provided in this Agreement, your most current periodic statement is the best evidence of your obligation to pay.

**36.   Authorization of Payments to Third Parties**

| $682,500.00 | Credit Limit | | |
|---|---|---|---|
| Amount paid to others on my behalf: | 682,500.00 | | |
| - | Borrower | Paid to | 682,500.00 |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ 0.00 |
| - | Misc Lender Credits | Paid to | $ 13,350.13 |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ 0.00 |
| - | | Paid to | $ |
| - | | Paid to | $ |
| - | | Paid to | $ |
| - | | Paid to | $ |
| - | | Paid to | $ |
| - | | Paid to | $ |



| | | | |
|---|---|---|---|
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| . | | Paid to | $ |
| | | | |
| + | | Amount received from borrower | |
| + | | Undisbursed Funds | |

You understand that no loan proceeds will be disbursed until any applicable notice of the right to cancel time period that has been disclosed to you has expired. You authorize disbursements listed above and acknowledge receipt of a filled-in copy of this itemization of amount financed.

**37.  FAIR AND ACCURATE CREDIT TRANSACTION ACT OF 2003 NOTICE.  WE MAY REPORT INFORMATION ABOUT YOUR CREDIT LINE ACCOUNT TO CREDIT BUREAUS.  LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR CREDIT LINE ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

**38.  Insurance Certification**

You, the undersigned, certify that you have insured the Property against loss by fire for the lesser of the replacement cost of the buildings and appurtenances on the Property or the amount of your Credit Limit plus the amount of any prior liens and security instruments on the Property, and that the policy includes extended coverage and has a standard mortgagee clause making loss payable to  and its successors in interest as mortgagee.  You agree it is your responsibility to keep the Property so insured until this Agreement is paid in full.

You understand that you may purchase any required insurance through any duly licensed insurance agent and insurance company that is reasonably acceptable to us. You are not required to deal with any of our affiliates when choosing an insurance agent or insurance company.  Your choice of a particular insurance agent or insurance company will not affect our credit decision, so long as the insurance provides adequate coverage with an insurer that meets our reasonable requirements.

All documents related to insurance for your Credit Line should be mailed to the following address:  Citizens Bank Consumer Loan Servicing, 1 Citizens Drive, Riverside, RI 02915.

ULOCAG11 (12/15)
LIBW/1101376.5                          Page 11 of 13

Initials 



**39. Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have received a copy of this Agreement, the Appraisal, including the Fair Credit Billing Notice, as well as the following home equity line of credit disclosure statements: Important Terms Disclosure, When Your Home Is on the Line: What You Should Know About Home Equity Lines of Credit, and Notice of Citizens Bank, N.A. Privacy Pledge - Our Pledge to You Regarding the Responsible Use and Protection of Your Information. You acknowledge that you have read these documents.

You acknowledge that any payoff amounts referenced in Section 36 of this Agreement were estimates based on the balances listed on your credit bureau report(s). By signing below, you authorize all handwritten changes made to the payoff figures in this Agreement, and confirm that these changes accurately reflect the payoff figures you provided at closing.

If there is more than one of you, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including Credit Advances made to any of you. Each of you authorizes any one of you, on his or her signature alone, to cancel your Credit Line, to request and receive Credit Advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain responsible.

If there is more than one signer below, it is your intention that your Credit Line Account be a joint account.

Vermont Borrowers: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

New Hampshire Borrowers: If you prevail in any action, suit or proceeding we bring or in an action or proceeding you bring in connection with this agreement, reasonable attorneys' fees shall be awarded to you. If you successfully assert a pertinent defense, set off, recoupment or counterclaim in an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the Court deems appropriate.

New York Borrowers: Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written notice specifying the circumstances and times under which you can exercise this right.

This Agreement is dated <u>March 4, 2016</u>. THIS AGREEMENT IS SIGNED UNDER SEAL.

BORROWER:

X_____
PAUL J MANAFORT

X_____
KATHLEEN B MANAFORT

X_____

X_____

Effective Disbursement Date: 03/04/16

ULOCAG12 (12/15)
LIBW/1101376.5                          Page 12 of 13                    Initials 



  
## BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and Credit Line Account number.

> The dollar amount of the suspected error.

> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

ULOCAG13 (12/15)
LIBW/1101376.5                    Page 13 of 13                    Initials

