# Exhibit H

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br><br>2016032201175005001E09F1 |
|---|---|

## RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 9

**Document ID:** 2016032201175005  **Document Date:** 03-04-2016  **Preparation Date:** 03-22-2016
**Document Type:** MORTGAGE
**Document Page Count:** 7

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD NATIONAL LAND<br>39 WEST 37TH STREET, SEVENTH FLOOR<br>HOLD FOR PICKUP / SEARCH NY TITLE NO. 657009<br>NEW YORK, NY 10018<br>212-532-8686<br>mhunker@KVNATIONAL.COM | CITIZENS BANK, N.A.<br>P.O. BOX 4060<br>GLEN ALLEN, VA 23058 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 209 | 1104 Entire Lot | 29-4 | 27 HOWARD STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ *or* DocumentID_____ *or* _____Year_____ Reel____ Page_____ *or* File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| PAUL MANAFORT | CITIZENS BANK, N.A.<br>ONE CITIZENS PLAZA<br>PROVIDENCE, RI 02903 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage: | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 682,500.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 682,500.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 3,412.50 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 7,678.13 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 1,706.25 | | |
| MTA: | $ | 2,017.50 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 14,814.38 | | |
| Recording Fee: | $ | 72.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed   04-19-2016 14:55
City Register File No.(CRFN):
**2016000136307**

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | <br>2016032201175005001C0B71 |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**    PAGE 2 OF 9

**Document ID:** 2016032201175005    Document Date: 03-04-2016    Preparation Date: 03-22-2016
Document Type: MORTGAGE

**PARTIES**

**MORTGAGOR/BORROWER:**
KATHLEEN MANAFORT

657009

When recorded return to:
Citizens Bank, N. A.
P.O. Box 4060
Glen Allen, VA 23058

_____ State of New York ___ _____ Space Above This Line For Recording Data ____

# CREDIT LINE MORTGAGE
(With Future Advance Clause)

This is a Credit Line Mortgage as defined in New York Real Property Law section 281. The mortgage contemplates that Lender and Mortgagor will enter into a series of advances or advances, payments and readvances. The aggregate amount at any time outstanding will be limited as specified in this Security Instrument.

**1. DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is March 4, 2016 and the parties, their addresses and tax identification numbers, if required, are as follows:
MORTGAGOR:
Paul Manafort, Husband and Kathleen Manafort, Wife;

29 HOWARD ST, 4D, NEW YORK, NY 10013

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER:

Citizens Bank, N.A.
One Citizens Plaza, Providence, RI 02903

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:

See Exhibit A attached hereto and incorporated herein by reference.

| The property is located in | NEW YORK | | at | | |
| | (County) | | | | |
| 29 HOWARD ST, 4D | , NEW YORK | | , New York | 10013 | |
| (Address) | (City) | | | (ZIP Code) | |

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed six hundred eighty-two thousand five hundred and 00/100 _____ Dollars or ($682,500.00 _____). This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
  A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and include the final maturity date of such debt(s).)*

  Pursuant to the terms of one or more of the note(s), contract(s), or guaranty(s), the parties reasonably contemplate entering into a series of advances, payments, advances, and readvances.

UCLDNYM1 (04/14)                    Page 1 of 5            NEW YORK - HOME EQUITY LINE OF CREDIT MORTGAGE

The Credit Line Agreement in the amount of $682,500.00 executed by Mortgagor/Grantor and dated the same date as this Security Instrument, which, if not paid earlier, is due and payable in full <u>300</u> months from the due date of the first payment.

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument if those advances are made within 20 years from the date of the recording of this Security Instrument. Advances made more than 20 years after this Security Instrument was recorded are also secured, but may not be secured to the same extent as advances made within 20 years of recording. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

**5. MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and may reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.



UCLDNYM2 (04/14)                                   Page 2 of 4

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**6. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**7. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**8. DEFAULT.** Mortgagor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgement is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another Lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

**9. REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

**10. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees not in excess of 15% of the unpaid debt if the loan is referred for collection to an attorney who is not a salaried employee of the Lender, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**11. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law



UCLDNYM3 (04/14)            Page 3 of 4

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.
13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.
14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.
15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.
16. **AGREEMENTS ABOUT NEW YORK LIEN LAW.** If any part of the secured debt is intended or represented to be used for improvements to the Property, Mortgagor will receive all amounts lent to Mortgagor by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.
17. **MORTGAGE TAX.**
    - [X] The Property covered by this Mortgage is or will be improved by a one or two family residence or dwelling.
    - [ ] The Property covered by this Mortgage [ ] is [ ] is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.
18. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
19. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.
20. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
    [Check all applicable boxes]
    [ ] Assignment of Leases and Rents    [ ] Other  Condominium
21. [ ] **ADDITIONAL TERMS.**

**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

SIGNATURES: By signing below under Seal, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_[Signature]_ 3-4-16         _[Signature]_ 3-4-16
(Signature)       (Date)      (Signature)      (Date)
PAUL MANAFORT                 KATHLEEN MANAFORT

SEAL

_____   _____
(Signature)       (Date)      (Signature)      (Date)

ACKNOWLEDGMENT FLORIDA
STATE OF ~~New York~~, COUNTY OF PALM BEACH } ss.
On this 3/4/2016 12:00:00 AM _____ day of 3/4/2016 12:00:00 AM _____ in the year 3/4/2016 12:00:00 AM _____
before me, the undersigned, personally appeared
PAUL J MANAFORT, KATHLEEN B MANAFORT

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires: 8-27-2017

_[Notary signature]_
Notary Public - State of ~~New York~~ FLORIDA

VINCENT DELCHICCO
Notary Public - State of Florida
My Comm. Expires Aug 27, 2017
Commission # FF 048716

UCLDNYM4 (04/14)                Page 4 of 4

## EXHIBIT A
## Legal Description of Property

See Attached Exhibit A

---

DDS-LGD 06/96



Stewart Title Insurance Company

Title Number:  657009(S-NY-RR-ASH)

## SCHEDULE A
## DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit') in the building (hereinafter referred to as the "Building") known as The 29 Howard Street Condominium and by the street number 29 Howard Street, Borough of Manhattan, County of New York and City and State of New York, said Unit being designated and described as Unit No. 4 in a certain declaration dated December 16, 2002, made by the Sponsor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the building and land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 22, 2003 as CRFN 2003000003859 as amended by the Amendment to the Declaration dated April 22, 2003 and recorded June 4, 2003 as CRFN 2003000154620, (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1104 in Block 209 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor Plans of the Building filed with said Assessment Department as Condominium Plan No. 1283 and also filed in the City Register's Office on January 22, 2003 as CRFN 2003000003860.

TOGETHER with an undivided 14.3688% interest in the Common Elements (as such term is defined in the Declaration).

The Land on which the Building containing said Unit is more particularly bounded and described as follows:

Parcel 1: Lot 10

Parcel A:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of New York, City and State of New York, distinguished on the Map of Bayards's East Farm by Lot No. 663 and known as 29 Howard Street, said lot being bounded and contained as follows:

Northerly in front by Howard Street, 25 feet;

Easterly by Lot No. 664 on said Map, 100 feet;

Westerly by Lot No. 662 on said map, and being 25 feet in width in the rear thereof and also certain strip of land;

ALSO

Parcel B:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Howard Street, at the center of a party wall standing upon Lots 29 and 31 Howard Street;

RUNNING THENCE southerly along the center line of said wall and the prolongation of said line to the rear of

SCHEDULE A
DESCRIPTION
(Continued)

Title Number: 657009(S-NY-RR-ASH)

said Lot 31 Howard Street;

THENCE easterly along the rear line of said Lot 31, 8 inches to the westerly line of said Lot 29, Howard Street;

THENCE northerly along said westerly line of said Lot 29 and the easterly side of said wall to the northerly lien of said Lot 29;

THENCE westerly along the northerly line of said Lot 31, 8 inches to the BEGINNING.

Certificate of Title                                                                                     (657009(S-NY-RR-ASH).pfd/657009(S-NY-RR-ASH)/9)