**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| v. : | |
| **PAUL J. MANAFORT, JR.,** : | |
| *Defendant* : | |
| **IN RE:** : | Case No. 1:18-mc-00167 |
| **PETITIONS FOR RELIEF CONCERNING** : | |
| **CONSENT ORDER OF FORFEITURE** : | Judge Amy B. Jackson |
| **WOODLAWN, LLC,** : | |
| *Petitioner* : | |

**WOODLAWN, LLC'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Petitioner Woodlawn, LLC, by undersigned counsel, moves this Court for summary judgment against the United States, represented by the Special Counsel's Office. In support of this motion, Woodlawn states as follows.

**Preliminary Statement**

Petitioner has a first priority security lien (the "Lien") in property known as 123 Baxter Street, #5D, New York, New York 10016 (the "Property"), which secures a loan from Woodlawn, LLC to the Manaforts (as hereinafter defined) in the principal amount of $1,025,000.00 (the "Obligation") as referenced by a Secured Promissory Note dated August 7, 2017 (the "Note")

1

executed in favor of Woodlawn by Jesand, LLC ("Jesand"), a Delaware limited liability company, through its sole and managing member, Kathleen B. Manafort ("KMB"). This Obligation was further secured by a Guaranty of Payment dated August 8, 2017 (the "Guaranty") executed by Paul J. Manafort, Jr. ("PJM").[1] True and correct copies of the Note and Guaranty are attached to the Initial Petition (Doc. 15 filed 11/30/18) and incorporated herein by reference as Exhibits 1 and 2, respectively.

      Woodlawn's first priority security lien on 123 Baxter Street #5D created a property interest superior to the Manaforts' interest in 123 Baxter Street #5D, which entitles Woodlawn to be paid the amount it is owed under the Note and Guaranty from the sale proceeds of 123 Baxter Street #5D, when it is sold by the government. Woodlawn, LLC has a vested or superior interest in the Baxter Street residence under § 853(n)(6)(A). Woodlawn's security interest "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant" (Mr. Manafort) prior to the time when the Baxter Street residence became subject to forfeiture as a substitute asset. The Special Counsel cannot reasonably dispute this. Even assuming that this claim *could* be disputed, Woodlawn *also* qualifies as a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B), and therefore its security interest must be protected in any event. Accordingly, the Court should grant this motion for summary judgment and not allow the Special Counsel's Office to run up Woodlawn's fees and costs by engaging in wasteful discovery which *cannot* lead to the discovery of any material facts that would enable the government to avoid summary judgment.

---

[1] PJM, KBM and their daughter, Andrea Manafort ("AM"), will hereafter be collectively referred to as the "Manaforts."

**I.   Facts Supporting Petitioner's Secured Interest in the Property:  Proposed Findings of Material Facts**

The following facts were alleged in the Verified Petition. They are recited below *verbatim* as they appear in the Petition. Woodlawn submits each of these factual allegations (numbered 1 to 15) as proposed findings of material facts.

1. Woodlawn was established in 2017 as an investment/lending vehicle.

2. This loan was one of the first to be considered by Woodlawn. Specifically, Woodlawn became aware that the Manaforts needed a loan to help with professional expenses (the "Loan"). The Loan was to be secured by a first priority secured lien on the Property.

3. The terms of the Loan were negotiated by and between Berglund, counsel for Woodlawn, and Bruce Baldinger ("Baldinger"), counsel for the Manaforts.

4. The Loan was evidenced by the Note which set forth the Obligation: an initial maturity date of December 31, 2017; a per annum interest rate of 7.25%; and collateral consisting of the Lien and Guaranty.

5. The Manaforts, as requested, provided Woodlawn with standard documentation consistent with a loan secured by real estate. The loan documents included, without limitation: (a) a good standing certificate for Jesand ("the Certificate"); (b) borrower's counsel opinion from Baldinger (the "Opinion"); (c) consent of Jesand ("the Jesand Consent"); (d) affidavit of title from Jesand ("the Jesand Affidavit"); and (e) affidavit from AM ("the AM Affidavit"). True and correct copies of these documents are attached to the Initial Petition and incorporated herein by reference as Exhibits 3, 4, 5, 6 and 7, respectively.

6. The primary collateral for the Note was the Lien on the pro[perty] which is memorialized by a Mortgage dated August 7, 2017, executed by Jesand and AM together with a

condominium rider pertaining to the Property (the "Mortgage"). A true and correct copy of the Mortgage is attached to the Initial Petition and incorporated herein by reference as Exhibit 8.

7.  To further secure the Mortgage, Woodlawn requested and was provided title insurance from First Nationwide Title Agency, LLC ("Nationwide") on or about August 10, 2017 (the "Title Policy"). A true and correct copy of the Title Policy is attached to the Initial Petition and incorporated herein by reference as Exhibit 9.

8.  Nationwide also agreed to act as the escrow agent for the Loan closing pursuant to a letter dated August 10, 2017 (the "Escrow Agent Letter"). A true and correct copy of the Escrow Agent Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 10.

9.  In its capacity as escrow agent, Nationwide provided Woodlawn with evidence that the Mortgage was duly recorded in accordance with the terms of the Loan, including a letter dated September 19, 2017 (the "Recording Letter"). A true and correct copy of the Recording Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 11.

10. The Loan was disbursed by Woodlawn to the Manaforts in two segments: the first wire transfer took place on August 10, 2017 in the amount of $512,500.00 from the attorney client trust account of Berglund to Nationwide; and the second wire transfer took place on August 21, 2017 in the amount of $506,841.00 (net of first month interest due under the Note and attorney fees due in respect of the closing) from the attorney client trust account of Berglund to the attorney trust account of Baldinger (the Manaforts' attorney).

11.     Thereafter, payments by the Manaforts to Woodlawn on the Note were made on a sporadic basis.[2] The monthly interest due under the Note was $6,192.70. Payments under the Note were made by KM or the Manaforts' business manager.

12.     At some point after the Loan was made, PJM was charged in a criminal complaint that resulted in the Consent Order of Forfeiture. The Manaforts, through Baldinger, formally requested an extension of the Note via letter dated February 12, 2018 (the "Extension Request"). The forbearance negotiations took place by and between Baldinger and Berglund. A true and correct copy of the Extension Request is attached to the Initial Petition and incorporated herein by reference as Exhibit 12.

13.     Woodlawn agreed to forbear from declaring the Note in default post initial maturity date and was negotiating the terms of a forbearance agreement. Unfortunately, the Manaforts further defaulted under the terms of the forbearance agreement and, via a default letter dated June 19, 2018 (the "Default Letter"), the Manaforts were given until June 29, 2018 to pay the Obligation in full. The amount due under the Note as of June 19, 2018 was $1,043,337.39 (the "Default Obligation"). A true and correct copy of the Default Letter is attached to the Initial Petition and incorporated herein by reference as Exhibit 13.

14.     Baldinger, on behalf of the Manaforts, requested a further short term extension of the Loan from Woodlawn through Berglund after receiving the Default Letter. Specifically, Baldinger indicated that the Property was going to be either sold or refinanced, as there was significant equity in the Property.

---

[2] During settlement discussions, Woodlawn offered to provide a complete list of all payments received from the Manaforts, and Woodlawn still stands ready to do so. Woodlawn will also obtain the bank checks documenting the payments and provide them to the Special Counsel.

15. During the course of the forbearance negotiations, the Consent Order of Forfeiture was entered by the Court. The amount due Woodlawn under the Note exceeds the Default Obligation, with interest and attorney's fees continuing to accrue pursuant to the terms of the Note and related Loan documents.

The government cannot raise a genuine issue of material fact with respect to any of these factual allegations—all sworn to under penalty of perjury by attorney Keith Berglund, the managing member of the LLC, in the Verified Petition and supported by the numerous documents attached to the Petition and numbered as Exhibits above. Woodlawn respectfully asks this Court to include these fifteen numbered paragraphs as findings in its Findings of Facts and Conclusions of Law.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 246 (D.D.C. 2018). The court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. If the non-movant's evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

**III.     Petitioner's Claim Under 21 U.S.C. § 853(n)(6)(A)**

Woodlawn, LLC has a vested or superior interest in the Baxter Street property under § 853(n)(6)(A). Woodlawn's interest "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant" (Mr. Manafort) prior to the time when the Baxter Street property became subject to forfeiture as a substitute asset.

According to the government's Motion for Consent Order of Forfeiture (Doc. 2, p.3), the Baxter Street residence is only subject to forfeiture as a substitute asset. Likewise, the Consent Order of Forfeiture (Doc. 3, p.3), lists the Baxter Street residence as "substitute property" under § 853(p). Unlike "tainted" property, the relation-back doctrine, codified in § 853(c), does not apply to substitute assets. *Luis v. United States*, 136 S. Ct. 1083, 1091-92 (2016) (§853 is limited to "tainted" property with the sole, limited exception of § 853(p)); *Honeycutt v. United States*, 137 S. Ct. 1626, 198 L.Ed. 2d 73, 84 (2017) (same); *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017) (*en banc*). Although the courts are still divided on *when* the government's interest in substitute property ripens or vests, there is broad agreement that the *earliest* time when the government's interest could vest in substitute property is when an indictment or information alleging forfeiture is returned. *E.g., United States v. Erpenbeck*, 682 F.3d 472, 477-78 (6th Cir. 2012) (Sutton, J.) ("The relation-back clause [of § 853(c)] extends only to tainted property— 'property described in subsection (a)." Court holds that government does not have a "ripened interest" in substitute property until "(1) after the defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason enumerated in [§ 853(p)(1)]"); *United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007) (same); *United*

7

*States v. Espada*, 128 F. Supp. 3d 555, 561-65 (E.D.N.Y. 2015) (same, collecting cases). Accordingly, Woodlawn's secured interest in the Baxter Street residence was not only superior to any right of the defendant at the time of the Note agreement but *also* superior to any later-ripening forfeiture interest of the government in the same substitute property. *See United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) ("a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the government's interest vested.").

"[I]n criminal forfeiture proceedings conducted pursuant to 21 U.S.C. § 853(n), the Government 'stands in the defendant's shoes,' and a petitioner who establishes a legal interest in property superior to the defendant is entitled to recovery of its property. *United States v. Nektalov*, 440 F. Supp. 2d 287, 294-95 (S.D.N.Y. 2006), *aff'd*, *E.J.D. Diamond Manu. v. United States*, 273 Fed. App'x 65 (2d Cir. 2008)." *United States v. Egan*, 2011 U.S. Dist. LEXIS 84892, *18-19 (S.D.N.Y. Aug. 2, 2011).

## IV.    Petitioner's Claim Under 21 U.S.C. § 853(n)(6)(B)

The uncontroverted record *also* supports Woodlawn's alternative claim that it was a bona fide purchaser for value reasonably without cause to know that the Baxter Street residence, a substitute asset, was subject to forfeiture at the time it concluded its loan agreement with Manafort. (The Court need not reach this second claim if it grants summary judgment on Woodlawn's first claim under § 853(n)(6)(A).)

Woodlawn, LLC has submitted a sworn petition by its managing member, California attorney Keith Berglund, who negotiated the loan agreement, precisely laying out the circumstances under which it obtained its mortgage security interest in the Baxter Street property. Woodlawn incorporates that sworn petition by reference along with all of the documentary exhibits

previously submitted to the Court with the earlier version of the Petition. Without dispute, there was no criminal charge of any kind against Manafort at the time of the loan (or for several months thereafter). The loan talks began in March 2017. The loan terms were agreed to in July 2017. The mortgage lien was executed on August 7, 2017. The loan amount was disbursed to the Manaforts in two wires on August 10 and 21, 2017. Even after Manafort was arrested, on October 30, 2017, the Baxter Street substitute property did not become a part of the forfeiture proceedings for *another whole year*. After learning about the *search* of the Manaforts' home in Alexandria, Virginia, months before his arrest, Woodlawn decided to go ahead with the loan because Woodlawn's investors were worried that the Manaforts could sue them for breach of contract if they decided not to perform on the loan contract that had already been executed by the parties.

This was an arms-length loan at a market rate of interest by a legitimate lender, not a sham.[3] On the uncontested record, the LLC meets the statutory standard and could not possibly foresee that (1) Manafort would be indicted by the Special Counsel; (2) Manafort would be convicted of crimes triggering forfeiture penalties; (3) Manafort would incur a huge money judgment against him; and (4) the Special Counsel would later seek to forfeit the untainted residence on Baxter Street as a substitute asset. *See, e.g., Reckmeyer*, 836 F.2d at 204-05 (third party petitioner, defendant's father, qualified as a BFP even though he was aware that his son was under criminal investigation before the sale transaction; a reasonable person with this knowledge "would not necessarily conclude that all property owned by [his son] was forfeitable," and the events were "susceptible to a number of interpretations"); *United States v. Cox*, 2006 WL 1431694 at *9 (W.D.N.C. 2006) (third party petitioner met BFP test despite her general awareness of criminal

---

[3] The Special Counsel wants to know *who* provided the loan money. Woodlawn offered to provide that information so long as the SCO agreed to keep the individual's name confidential. In the end, the SCO refused that reasonable request, thereby terminating the parties' settlement discussions.

investigation of defendant, her ex-husband; petitioner did not know the investigation involved bank fraud, and up until time of defendant's guilty plea, he maintained his innocence to petitioner).

As the Fourth Circuit observed in *Reckmeyer*, 836 F.2d at 208, "Congress' primary concern in adopting the relation-back provision [which provision is not even *applicable* to substitute property such as the Baxter Street residence] was to make it possible for courts to void sham or fraudulent transfers that were aimed at avoiding the consequences of forfeiture. Congress did not intend to permit courts to void "arms-length transactions.'"

Petitioner was "reasonably without cause" to believe that the Baxter Street residence was subject to forfeiture at the time it entered into the Note on August 7, 2017 and thereafter. At no relevant time had the Baxter Street property been seized; nor had Mr. Manafort been charged with any offense. How was Petitioner supposed to know that the Special Counsel would, much later, seek to forfeit that untainted property as a substitute asset? *See United States v. Kramer*, 2006 U.S. Dist. LEXIS 89034, at *26-29 (E.D.N.Y. Dec. 8, 2006) (application of the relation back doctrine to substitute property "would burden those whom the law presumes to be innocent by casting a cloud upon their title to property, which in the case of substitute assets, is not alleged to be involved in any way, shape, or form with the crimes alleged.").

The Note (Exh. 1 to the Petition), in ¶5, states that the Note "shall be governed and enforced in accordance with the laws of the State of New York…" The cases hold that whether a person is a bona fide purchaser is determined by state law. *Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004); *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001); *United States v. Suarez*, 716 Fed. Appx. 937, 938 (11th Cir. Mar. 30, 2018). Under New York state law, Petitioner is a bona fide purchaser for value. *See United States v. Rodriguez-Perez*, 2019 U.S. Dist. LEXIS 6413, *17-18 (S.D.N.Y. Jan. 11, 2019); *United States v. Dreier*, 952 F.Supp. 2d 582, 590 (S.D.N.Y. 2013).

"The whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property without notice of the government's superior interest—acquired through the operation of the relation-back doctrine—in the forfeited property." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012). Thus, assuming that the Court somehow concludes that Woodlawn does not prevail under § 853(n)(6)(A), Woodlawn's interest would still be protected from forfeiture because Woodlawn easily qualifies as a BFP for value.

The statutory language imposes no duty on the purchaser to investigate. "[A]fter all, the principal function of the bona-fide-purchaser doctrine is to protect buyers that did *not* investigate, and reading § 853(n)(6)(B) to require investigation as a condition of being an innocent purchaser would all but vitiate the statute's goal of protecting persons who meet state-law definitions of bona fide purchasers for value." *United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004). *Accord United States v. Lavin*, 942 F.2d 177, 186 (3d Cir. 1991); *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, at *21 (D. Minn. 2013).

"The bona fide purchaser defense turns on knowledge that *specified property* is subject to forfeiture; generalized knowledge of fraud is not enough." *Petters*, *supra*, at *18. *Accord United States v. Reckmeyer*, 836 F.2d 200, 204-05 (4th Cir. 1987); *United States v. 392 Lexington Parkway S.*, 386 F. Supp. 2d 1062, 1065 (D. Minn. 2005) (bank qualified as innocent owner despite fact that the defendant executed mortgage on property *after being indicted for drug trafficking*; his home had been searched by police for illegal narcotics, and drugs had been found there). In this case, the property at issue is clean, untainted, *substitute property*. Mr. Manafort had not been arrested or charged with any crime. There was no notice of pendency (lis pendens notice) filed on the Baxter Street residence. *Compare United States v. Rodriguez-Perez*, 2019 U.S. Dist. LEXIS 6413, *17-18 (S.D.N.Y. Jan. 11, 2019) (notice of pendency filed by the government gave petitioners notice

11

of the government's forfeiture claim almost a year *before* they acquired their mortgage interest by assignment, so they could not qualify as BFPs). A claim by the Special Counsel that Woodlawn should have known that the residence would be forfeited at the time it acquired its secured interest in the residence (August 7, 2017) would be utterly frivolous. *Contrast* the facts in Christopher Doyle's petition. *See* Doc. 34-1 (SCO's Memorandum in Support of Motion to Dismiss) at 11-12.

## V.     A Request by the Special Counsel for Rule 56(d) Discovery Should be Denied.

Woodlawn expects, based on extensive communications with opposing counsel, that the Special Counsel will move under Rule 56(d) to take discovery before being required to file an opposition to this motion. The Court should deny such a motion as meritless. In order to obtain such discovery, the Special Counsel would have to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d). Such an affidavit or declaration must state "'with sufficient particularity why additional discovery is necessary.'" *Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 255 (D.D.C. 2018) (quoting *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014)).

> Specifically, the non-movant's affidavit must: (1) "outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation," (2) "explain why the non-movant could not produce the facts in opposition to the motion for summary judgment," and (3) "show the information is in fact discoverable."

*Trudel*, 288 F. Supp. 3d at 255 (quoting *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014)). The Special Counsel cannot make such a showing to the Court. *See also United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1295 (7th Cir. 1990) ("Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.").

**Conclusion**

For the reasons stated above, Woodlawn requests that the Court grant this motion for summary judgment, and amend its preliminary order of forfeiture dated October 10, 2018 to fully recognize Woodlawn's interest in the Baxter Street residence, as set forth in Woodlawn's Second Amended Petition (Corrected) (Doc. 21). A proposed order is attached to this motion.

Dated February 25, 2019                                    Respectfully submitted,

                                                                           */s/ David B. Smith*
                                                                           David B. Smith
                                                                           D.C. Bar No. 403068
                                                                           David B. Smith, PLLC
                                                                           108 North Alfred Street, 1st Floor
                                                                           Alexandria, Virginia 22314
                                                                           (703) 548-8911
                                                                           Facsimile (703) 548-8935
                                                                           dbs@davidbsmithpllc.com
                                                                           *Counsel for Woodlawn, LLC*

**Certificate of Service**

I hereby certify that on the 25th day of February, 2019, I electronically filed the foregoing motion and proposed order with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Andrew Weissmann
>U.S. Department of Justice
>Special Counsel's Office
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 20530
>aaw@usdoj.gov
>
>Daniel H. Claman
>U.S. Department of Justice, Criminal Division
>Money Laundering and Asset Recovery Section
>1400 New York Avenue, N.W.
>Suite 10200
>Washington, D.C. 20530
>daniel.claman@usdoj.gov

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>*/s/ David B. Smith*
>David B. Smith
>D.C. Bar No. 403068
>David B. Smith, PLLC
>108 North Alfred Street, 1st Floor
>Alexandria, Virginia 22314
>(703) 548-8911
>Facsimile (703) 548-8935
>dbs@davidbsmithpllc.com
>*Counsel for Woodlawn, LLC*