**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> PAUL J. MANAFORT, JR., ) <br> ) <br> Defendant. ) <br>_____) <br> ) <br> IN RE: PETITIONS FOR RELIEF ) <br> CONCERNING CONSENT ORDER OF ) <br> FORFEITURE ) <br>_____) <br> ) <br> CHRISTOPHER DOYLE, ) <br> ) <br> Petitioner. ) <br>_____) | Case No. 1:18-mc-00167-ABJ |

**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PETITION OF CHRISTOPHER DOYLE ASSERTING AN
INTEREST IN 377 UNION STREET, BROOKLYN, NY 11231**

The United States of America, by and through its undersigned counsel, respectfully submits this reply memorandum in support of its motion to dismiss the petition filed by Christopher Doyle ("Doyle" or "Petitioner") for failure to state a claim upon which relief may be granted and for lack of statutory standing. On March 8, 2019, Petitioner filed two memoranda in opposition to the government's motion to dismiss: an opposition filed *pro se* (Dkt. No. 51) ("*Pro Se* Memorandum") and an additional memorandum filed by an attorney who has not yet filed a Notice of Appearance in this matter (Dkt No. 48) ("Counsel's Memorandum"). Together, these memoranda contend that Doyle has stated a sufficient claim upon which relief can be granted because Petitioner was not specifically aware that 377 Union Street, Brooklyn, New York (the "Union Street Property") was subject to forfeiture, that he properly recorded a valid mechanic's

lien on October 16, 2018, and that the United States interest in the property is subordinate to the mechanic's lien under New York law. Petitioner further contends that his petition meets the statutory standing requirements for participation in ancillary proceedings pursuant to 21 U.S.C. § 853(n). These arguments are insufficient to set forth a plausible claim for relief or to satisfy the requirements Section 853(n)(3) for participation in this action.

I. **Doyle's Petition Fails to Meet the Pleading Requirements of the Forfeiture Statute and Should Be Dismissed**

Citing no facts alleged in Doyle's Petition, Counsel's Memorandum incorrectly states that pleading enough facts to state a claim for relief that is plausible on its face is sufficient to meet the pleading requirements of Section 853(n)(3). Counsel's Memorandum at 4. However, failure to meet the pleading requirements of Section 853(n)(2) serve as an additional basis for dismissal of an ancillary petition under Fed. R. Crim. P. 32.2(c)(1)(A). As set forth in 21 U.S.C. § 853(n)(3): "[t]he petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." "If a third party fails to allege in its petition all elements necessary for recovery, including those related to standing, the court may dismiss the petition without providing a hearing." *United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012); *See also*, *United States v. BCCI Holdings (Luxembourg), S.A.*, 919 F. Supp. 31, 36 (D.D.C. 1996) (same).

Doyle's *Pro Se* Memorandum recognizes his obligation to meet the pleading requirements of 21 U.S.C. § 853(n)(3) and contends that the requirements have been met because he has alleged a mechanics lien under New York Law, the time the lien was recorded and the

date materials were provided, an amount of the lien as $585,991.85, and that he seeks relief under the statute. However, while Petitioner seeks to recast his equivocal petition as stating an unambiguous statement of a basis for relief, examination of the petition reveals it is insufficient and inconsistent with his lien. Doyle does not contest that his Petition and Lien (Notice Under Mechanic's Lien Law, Dkt. No. 14-1; hereinafter the "Lien") are replete with inconsistencies. Instead he attempts to minimize the effect of his inconsistent statements as to the "time and circumstances" he acquired an interest and the "nature and extent" of that interest by calling them typographical errors and stating that regardless of the typographical errors, that his petition and Lien contained an adequate description of the basis of the claim. *Pro Se* Memorandum at 3. The Lien states that "The amount unpaid to the lienor(s) for said labor performed and said materials furnished is $100,000.00. The total amount claimed for which this lien is filed is $585,991.85." Petitioner provides no basis to determine why, if the amount due for labor and materials is $100,000, Doyle's purported lien and petition is for $585,991.85. This inconsistency makes the nature, extent and circumstances of the Petitioner's interest undecipherable from the face of the petition. Similarly, the Lien states that the work was done between "September August 1, 2017" and September 20, 2018. From the Petition and Lien it is impossible to determine the actual time the Petitioner worked on the property. These are essential pleading requirements of 21 U.S.C. § 853(n)(3) and inherently unclear, contradictory, inconsistent with the requirement to specify the nature, extent and time of accrual of his claimed interest. While Petitioner attempts to correct these errors in his Opposition Memoranda, he has failed to seek amendment of the Petition, and as discussed below, such an amendment would not cure the related defects in the Lien.

**II.      Petitioner's Lien is Invalid on its Face**

In response to the government's motion to dismiss, Petitioner asserts that his Petition is premised upon a uncontested valid lien under New York Law.  Contrary to Petitioner's assertions, the United States does not concede the validity of his lien.  In fact, many of the defects that make the Petition insufficient under federal law make the lien facially invalid under state law.  If the lien is invalid, the Petition is likewise insufficient as Petitioner cannot allege a recognizable legal interest in the property.  According to the D.C. Circuit, unsecured creditors do not have a specific legal interest in property sufficient to make a claim in ancillary proceedings. *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1191 (D.C. Cir. 1995) ("[B]ank depositors, as general creditors, have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited, as required under both prongs of § 1963(l)(6), unless they have already secured a judgment against the debtor and perfected a lien against a particular item.").

While New York law only requires substantial compliance with lien requirements (Lien Law § 23), pervasive and material defects in the lien can render a lien invalid under New York Law.  New York Lien Law § 19 outlines the defects that can result in a summary discharge of a lien:

> Where it appears from the face of the notice of lien that the claimant has no valid lien by reason of the character of the labor or materials furnished and for which a lien is claimed, or where for any other reason the notice of lien is invalid by reason of failure to comply with the provisions of section nine of this article, or where it appears from the public records that such notice has not been filed in accordance with the provisions of section ten of this article.

N.Y. Lien Law § 19.  New York Lien Law § 9 requires that the Notice of a Lien state, *inter alia*: (1) "The name of the owner of the real property against whose interest therein a lien is claimed, and the interest of the owner as far as known to the lienor"; (2) "The amount unpaid to the lienor for such labor or materials;" (3) "The time when the first and last items of work were performed and materials were furnished."  N.Y. Lien Law § 9.  Additionally, New York Lien Law requires that the owner of the property be served by the lienor with notice of the lien by particular methods of service, and states: "failure to file proof of such a service with the county clerk within thirty-five days after the notice of lien is filed shall terminate the notice as a lien."  N.Y. Lien Law § 11.

Pervasive defects can make a lien substantially uncompliant with lien law and render a lien fatally invalid.  A lien may be amended to correct some defects, but a lien that is so defective that it does not substantially comply with the requirements of the lien law is fatally invalid and cannot be amended.  *Application of Long Beach Terrace, Inc.,* 41 Misc. 2d 915, 916, 247 N.Y.S.2d 76, 78 (Sup. Ct. 1964) ("Although the provisions of the Lien Law must be liberally construed (Lien Law, § 23), the power of the court to amend a notice of lien nunc pro tunc under section 12–a is limited, and presupposes the existence of a valid lien. Since the rights of a lienor are wholly derived from statute, the court, under the guise of amendment or construction, cannot create a valid lien out of a notice that does not substantially comply with the statutory provision authorizing its existence.").  Petitioner's Lien is not substantially compliant with the provisions of New York Lien Law §§ 9 and 10 as is required by New York Lien Law §§ 19 and 23.  To the contrary, there appear to be such pervasive defects that the Lien is fatally invalid.

The Lien leaves the date the work was started uncertain and apparently dramatically understates the amount unpaid for labor and materials, both factors which are required to be

correctly alleged under New York Lien Law § 9. A New York court has held that when a lien dramatically misstated the agreed upon price and value of the materials and the amount unpaid, the lien, even under a liberal construction could not be deemed to be in compliance with the requirements of the law. *Mitchell v. Dunmore Realty Co.*, 126 A.D. 829, 833–34, 111 N.Y.S. 322, 326 (App. Div. 1908) ("This plainly requires that the notice shall state the whole value of the labor and materials, as well as the amount remaining unpaid, and one requirement is as imperative as the other."). While according to the *Pro Se* Memorandum, (at 2-4), Doyle meant to write in the Lien that the amount unpaid for labor and materials was $585,992.85, he in fact wrote $100,000. Lien at 4. Similarly, in the *Pro Se* Memorandum, (at 2-4), Doyle suggests that the work was started in August 1, 2017, the Lien says "September August 1, 2017." *Id*. These errors may have been inadvertent, however that does not diminish their detrimental effect on the validity of the lien. The lien must be valid and understandable on its face. *Pascual v. Greenleaf Park Land Co.*, 245 N.Y. 294, 298, 157 N.E. 144, 145 (1927) ("Extrinsic evidence may not be received to cure the defect. A notice of lien must be sufficient in essentials in and of itself.")

Significantly, Doyle's Lien also fails to correctly identify the owner of the property, as required by New York Lien Law § 9. While New York Lien Law § 9 also states that: "[a] failure to state the name of the true owner or contractor, or a misdescription of the true owner, shall not affect the validity of the lien," when the Lien "totally misidentifi[es] the true owner (as of the date it was filed) and was, therefore, jurisdictionally defective and void" it cannot be cured through amendment and must be discharged. *In re Kleet Lumber, Co.*, 197 A.D.2d 576, 576, 602 N.Y.S.2d 663, 664 (App. Div. 1993). The Second Department further stated that the misidentification of the true owner is not excused by the fact that it "was the result of an inadvertent failure to make a thorough search of the County Clerk's records." *Id. See also,*

6

*Diamond Architecturals, Inc. v. EFCO Corp.*, 179 A.D.2d 420, 578 N.Y.S.2d 553 (App. Div. 1992) (holding that a fatal defect in a lien arose when lien named original owner-developer of condominium project, but prior to lien filing, 267 of the 411 condo units had been sold to individual purchasers and the lien also failed to properly describe the premises.); *Tech Heating and Mechanical Inc. v. First Downstream Service Corp.,* 126 Misc. 2d 85, 86, 481 N.Y.S.2d 201 (Sup 1984) (stating that it would seem appropriate to permit amendment where one of two general partners was named but the property was owned by the partnership; however, no amendment was ordered and the lien was dismissed because amendment would prejudice transferees of the property); *c.f.*, *PM Contracting Co. v. 32 AA Assocs., LLC.*, No. 604088/02, 2003 WL 21960250, at *3 (N.Y. Sup. Ct. Aug. 7, 2003), aff'd as modified sub nom. *PM Contracting Co. v. 32 AA Assocs. LLC*, 4 A.D.3d 198 (2004) ("applying the substantial compliance and liberal construction mandates of § 23, [] naming [a parent instead of a subsidiary] as the owner under the circumstances presented herein, was merely a "misdescription", and that the notice to [the parent], which had the same address and agent for receipt of process as [the subsidiary], constituted adequate notice to [the subsidiary]").

The deed of the property at issue,[1] filed in New York public records, states that MC Brooklyn Holdings, LLC,[2] the entity named in the Lien as the owner and the entity Petitioner claims to have noticed, conveyed the property to Paul Manafort and that conveyance was recorded on February 2, 2017. Deed for 377 Union Street, City Register File No.

---

[1] The United States asks the court to take judicial notice of the deed of the property filed in New York records. *See George v. Bank of America, N.A.*, 821 F. Supp. 2d 299, fn. 5 (D.C. 2011) ("[T]he court may take judicial notice of the Deed of Trust because it is a public document recorded with D.C. Land Records.").

[2] The United States notes that MC Brooklyn Holdings, LLC's records indicate it was wholly owned by members of Manafort's family and while only 25 percent of that ownership was in Paul Manafort's name, he was the "managing member" of the LLC.

2017000047513, NYC Department of Finance, Office of the City Register, February 2, 2017 (hereinafter the "Deed"). At the time the work was allegedly started and at the time the Lien was filed, the record owners of the property were Paul Manafort and Kathleen Manafort, and as of the date of the commencement of the work, he had been the owner of record for approximately six months. Accordingly, the Lien either "misdescribed" or misidentified the owner of the property and misidentification is not excused by the Petitioner's failure to do a title search.

Finally, Petitioner's Affidavit of Service states that he served notice of the lien on MC Brooklyn Holdings, LLC at 377 Union Street, which, as stated previously, was not the owner of record at the time the work was performed or when the lien was filed. Lien at 3. Petitioner alleges no further facts to suggest that he served the property owners within the statutory time period required under New York Lien Law § 11.

These material defects are so pervasive that the Lien is not in substantial compliance with the statute and is fatally invalid. The Lien has failed to correctly state three of required elements of New York Lien Law § 9 and notice may not have been adequately provided to the actual owner under New York Lien Law § 11. Even if no one defect is sufficiently egregious on its own, pervasive defects can make a lien substantially uncompliant with lien law and render a lien fatally invalid. For example, the New York Appellate Division, Second Department held: "While it might be the case that any of the defects standing alone could be amended under section 12—a of the Lien Law, at bar there is not one but several defects and we are not able to say that under these circumstances there has been substantial compliance with the Lien Law." *Empire Pile Driving Corp. v. Hylan Sanitary Serv.*, 32 A.D.2d 563, 563, 300 N.Y.S.2d 434, 435 (App. Div. 1969) (internal citations omitted). In that case, the lien failed to state clearly: (1) the

"labor performed or materials furnished;" (2) the "amount unpaid to the lienor for such labor or materials;" (3) the "Exact time when the first and last items of work were performed and materials were furnished." *Id.* (Internal quotations and citations omitted). The notice was also not verified. *Id. See also, Sullivan Contracting, Inc. v. Turner Const. Co.*, 60 A.D.3d 1315, 1316, 875 N.Y.S.2d 695, 696 (App. Div. 2009) ("Plaintiff's notice of mechanic's lien is fatally defective because it fails to set forth [t]he labor performed or materials furnished and the agreed price or value thereof, as required by Lien Law § 9(4). . . [b]y failing to include two material elements of a notice of mechanic's lien, plaintiff cannot be deemed to have substantially complied with the requirements of Lien Law § 9."); *Diamond Architecturals, Inc. v. EFCO Corp.*, 179 A.D.2d 420, 421, 578 N.Y.S.2d 553, 554 (App. Div. 1992).

### III. Petitioner Has Failed to State a Claim as a Bona Fide Purchaser for Value Reasonably Without Cause to Believe the Property was Subject to Forfeiture

Petitioner contends that he was without actual knowledge that the Union Street Property was subject to forfeiture and, therefore has alleged a plausible claim for relief under 21 U.S.C. 853(n)(6)(B). In order to state a claim for relief under 21 U.S.C. § 853(n)(6)(B), a third-party petitioner must allege a plausible claim that: "(1) he acquired the interest in question as a bona fide purchaser for value as defined by state law; (2) he possesses a legal right, title, or interest in the forfeited property; and (3) he was reasonably without cause to believe that the property was subject to forfeiture at the time the interest was acquired." *United States v. Madoff,* 2012 WL 1132292 (S.D.N.Y. 2012)(unreported). Because Petitioner's allegations meet none of these three requirements, he has failed to state a claim upon which relief can be granted and his petition should be dismissed.

First, although petitioner contends that he was the general contractor for work performed on the Union Street Property, as noted, he concedes in his Counsel's Memorandum that his claimed property interest was not perfected until his purported lien was recorded on October 16, 2018. *See* Counsel's Memorandum at 6. Similarly, although his *Pro Se* Memorandum contends that his purported lien vested not the date of the date of recordation, but on the date he provided materials or labor, he nonetheless notes that that lien was not recorded until October 16, 2018. *Pro Se* Memorandum at 4, 6. Thus, at the time the Consent Order of Forfeiture extinguished the defendant's interest in the Union Street Property, Petitioner had an unperfected right to record a lien. Petitioner's allegations are insufficient to establish that he was a bona fide purchaser for value.[3] *Tisdale Lumber Co. v. Read Realty Co.*, 154 A.D. 270, 271-72, 138 N.Y.S. 829 (App. Div. 1912) ("There is no such thing as an "inchoate" mechanic's lien. The sole right given by the statute is to create a lien which has no existence, inchoate or otherwise, until the notice is filed, and until this is done no priority among the claims of creditors is recognized. The lien and a consequent priority originates with the notice when duly filed.").

---

[3] To the extent that Petitioner' Counsel's Memorandum urges this Court to find that his interest is superior to that of the United States, he misapplies federal forfeiture law. While state law determines the nature of a Petitioner's interest, it is federal law that determines the effect of that interest on federal forfeiture proceedings. 1. "State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing." United States v. 5 S 351 Tuthill Rd., Naperville, Ill., 233 F.3d 1017, 1021 (7th Cir. 2000), amended on denial of reh'g (Mar. 21, 2001). Cf., United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d 81, 96 (D.D.C. 2013) ("[S]tate law defines a claimant's interest in specific property, federal law determines the effect of [that] ownership interest on [the claimant's] right to bring a claim."). Under 21 U.S.C. § 853(c), the United States' interest in property forfeited from the defendant "vests…upon the commission of the act giving rise to forfeiture." *Id., United States v. Emor,* 785 F.3d 671, 681 (D.C. Cir. 2015) (Under the criminal forfeiture statute's relation back provision…title to forfeited property vested in the government upon commission of the criminal act giving rise to forfeiture.) Here, one of the bases under which the property has been forfeited was as proceeds of Manafort's conspiracy to violate the Foreign Agent Registration Act. *See* Consent Order of Forfeiture, as amended and superseded by March 13, 2019, Forfeiture Order (Cr. Dkt. 549). Accordingly, the government's interest arose at the time of the conspiracy, between 2006 and 2015, long before Petitioner began work on the property.

Second, as explained *supra*, Petitioner has failed to establish that he has a facially valid lien on the Union Street Property. As a result, he has failed to allege sufficient facts to establish a plausible claim that he "possesses a legal right, title, or interest" in the Union Street Property. Without a plausible legal interest in the property, not only does Petitioner fail to meet the requirements of 21 U.S.C. § 853(n)(3), but he also fails to state a claim for relief under 21 U.S.C. § 853(n)(6). *See United States v. Emor,* 785 F.3d at 678 (noting that to plead sufficient facts, a petitioner need "plead only a 'legal interest' in the forfeited property, and then set forth the 'nature and extent' of its interest in the property, the 'time an circumstances' when petitioner acquired that interest, any supporting facts, and the requested relief.").

Finally, Petitioner's contention that lacked actual knowledge of the criminal activity of the defendant is insufficient to state a plausible claim that he was "reasonably without cause to believe that the property was subject to forfeiture at the time the interest was acquired" under Section 853(n)(6)(B). In his Counsel's Memorandum, Petitioner contends that the government's 2017 *lis pendens* was insufficient notice, as " there was no basis for Petitioner to scour the public records of Kings County to search for filings against properties at which he worked perchance their owners committed criminal acts." Counsel's Memorandum at 6. However, he concedes that he was "generally aware that there were legal matters involving Mr. Manafort…" *Pro Se* Memorandum at 5; *see also* Counsel's Memorandum at 6 (not disputing public reporting of indictment). In addition, Petitioner was well acquainted with the process of filing notices in the land records, having filed the purported lien that underlies his petition, and a prior lien in August 2018, of which he later divested himself through assignment to another party. *See* Attachments B. (August 2018 lien filed by Doyle) Under such circumstances, Petitioner cannot plausibly contend that he was reasonably without notice that the Union Street Property was subject to

forfeiture since at least November 1, 2017. *See United States v. Suarez,* 716 F.App'x 937, 938 (11th Cir. 2018)(unpublished).

Counsel's Memorandum places a lot of weight on the Petitioner's alleged lack of actual knowledge of the Defendant's criminal activity. Counsel's Memorandum at 6-9. However, under 21 U.S.C. § 853(n)(6)(B) actual knowledge is not the standard; "reasonably without cause to believe" is the standard. [4] Counsel's Memorandum also rests a lot of his argument on the fact that the owner of the property at the time the work was done and at the time the lien was filed was MC Brooklyn Holdings, LLC, not the Defendant, and that therefore the Petitioner would have no way of knowing that the property was connected to the defendant. As explained above, the Deed of the property reflects that the listed owner of the property at the time the work was done and at the time of the lien was Paul Manafort. Title records are public and accessible. Petitioner is a contractor who takes million dollar jobs, and, as evidenced by the instant Lien and his prior August 29, 2018 lien, is familiar with title records and clouding title as a means to notify the world of one's interest in a property. It would reasonably occur to a contractor in the Petitioner's position to check title records.

Petitioner appears to further suggest that because he began work in August 2017, for purposes of a Section 853(n)(6)(B), the Court should consider whether he was reasonably without cause to believe the property was subject to forfeiture at that time rather than when he

---

[4] Petitioner's Counsel's Memorandum cites to cases under the Americans with Disabilities Act (ADA) and a fraudulent inducement action for the proposition that reasonableness should not be considered on a motion to dismiss. Counsel's Memorandum at 7-8. These address the particular application of the ADA and the sufficiency of pleadings under state law concerning reasonable reliance in employment. *See Staron v. McDonald's Corp.,* 51 F. 3d 353 at 355 ("The ADA and cases interpreting it do not articulate a precise test for determining whether a particular modification is 'reasonable.'"); *Robinson v. Deutsche Bank Trust Co. Americas*, 572 F.Sup.2d 319 (S.D.N.Y. 2008) (considering reasonableness of reliance on unpled oral communications in the context of the limited scope of a particular agreement). These cases have little bearing on ancillary petitions brought under Section 853(n)(6)(B).

recorded his purported lien in October 2018, after the Consent Order of Forfeiture.  Such an approach would inappropriately reward a petitioner who continued to perform unpaid work on property despite knowledge that the property was traceable to criminal activity.  It would further risk dissipation of assets by defendants through associates and intermediaries.  Such an exception for a petitioner like Doyle who at best sat on his rights until after entry of the Consent Order of Forfeiture is inconsistent with the purposes of 21 U.S.C. § 853(n)(6)(B).  *See United States v. Emor,* 785 F. 3d at 681 ("'[T]he whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property *without notice* of the government's superior interest ... in the forfeited property.") (citation omitted but emphasis retained).[5]

IV.     **Conclusion**

For the reasons set forth herein and in its memorandum and opening memorandum in support, the United States seeks urges this Court to dismiss the Petition of Christopher Doyle.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

By: */s/ Andrew Weissmann*
Andrew Weissmann
Jeannie S. Rhee (D.D.C. Bar No. 464127)
Greg D. Andres (D.D.C. Bar No. 459221)
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW

---

[5] Counsel's Memorandum erroneously claims that the United States seeks to "victimize Petitioner" and "deny[] Petitioner his sole avenue of recourse for payment." Counsel's Memorandum at 2.  This is incorrect.  The government's motion is based upon Petitioner's failure to establish a plausible basis for relief under the applicable statue.  Moreover, to the extent that may wish to seek relief under the Department of Justice for remission regulations, 28 C.F.R. Part 9, Section 853(n)(6) is not Petitioner's exclusive avenue to seek relief.  The government expresses no view as to the merits of such a potential petition for remission.

>                        Washington, D.C. 20530
>                        Telephone: (202) 616-0800
>
> By:    */s/Daniel H. Claman*
>        Daniel H. Claman
>        Money Laundering and
>            Asset Recovery Section
>        Criminal Division
>        U.S. Department of Justice
>        1400 New York Avenue, N.W., Suite 10100
>        Washington, D.C. 20530
>        Telephone:  (202) 514-1263
>
>        Counsel for the United States of America

### **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019, I have provided notice of the forgoing through the Court's Electronic Filing System to such counsel of record or pro se litigants as have consented to accept service through such means.  I have also transmitted a copy of this filing via electronic mail to the following, who do not appear to have registered for notice through the Court's Electronic Filing System or who have not filed an appearance in this matter:

William Clayton Batchelor, Esq.
1601 18th Street, NW Suite 2
Washington, D.C. 20009
wcb@wrightandbatchelor.com

Robert T. Holland, Esq.
BELKIN BURDEN WENIG & GOLDMAN LLP
270 Madison Avenue
New York, New York  10106
RHolland@BBWG.COM
(Attorney for Petitioner the Residential Board of Trump Tower Condominium)

Christopher Doyle
48 Dougherty Drive
Middletown, NJ  07748
cdpar3@msn.com

Gayle Pollack, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, New York  10022
gpollack@morrisoncohen.com
(Attorney for 29 Howard Street Condominium)

                                          */s/ Daniel H. Claman*
                                          Daniel H. Claman
                                          Money Laundering and
                                               Asset Recovery Section