## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **PAUL J. MANAFORT, JR.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |
| ) | |
| **IN RE: PETITIONS FOR RELIEF** ) | **Case No. 1:18-mc-00167-ABJ** |
| **CONCERNING CONSENT ORDER OF** ) | |
| **FORFEITURE** ) | |
| _____) | |
| ) | |
| **WOODLAWN, LLC,** ) | |
| ) | |
| **Petitioner.** ) | |
| _____) | |

### UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY UNDER FEDERAL RULES OF CIVIL PROCEDURE 56(d) AND 32.2(c)(1)(B)

Absent discovery, Petitioner Woodlawn LLC ("Woodlawn" or "Petitioner"), the United States and this Court will not be able to determine the true nature and extent of Petitioner's purported interest in the Baxter Street Property or the sufficiency of its claims in these ancillary proceedings.  In its opposition to the government's motion for discovery, Petitioner *for the first time* reveals that the funds paid to the defendant in exchange for a loan secured by the Baxter Street Property originated from a limited liability company *other than* Petitioner Woodlawn and that the funds paid under the purported loan were turned over to that distinct company, which Petitioner describes only as "[redacted] LLC".  Petitioner also reveals that the sole purpose of its incorporation was to engage in the loan transaction, but only provides partial information regarding the purported disbursement of funds and no support for its contention that the loan is in

1

default.  Indeed, Petitioner contends that "[t]here is no need at this time to precisely calculate the amount Woodlawn is owed under its loan agreement."  Dkt No. 62 at 18.  Professing a fear of public disclosure, Petitioner refuses to provide basic information regarding the basis for its claim, but also fails to take action to seek protection from the Court.  Instead, Plaintiff asks this Court to simply assume Petitioner has a present legal interest in the Baxter Street Property and award summary judgment, without an opportunity for the Court or the government to discover Woodlawn's identity or corroborate its claims.  Rule 56(d) of the Federal Rules of Civil Procedure is designed to guard against precisely this kind of premature and prejudicial summary judgment motion.  Accordingly, the United States, by and through its undersigned counsel, respectfully urges this Court to deny Petitioner's motion for summary judgment as premature and award the requested discovery pursuant to Fed. R. Civ. P. 56(d) and Fed. R. Crm. P. 32.2(c) because it is necessary or desirable to resolve factual issues.

## ARGUMENT

To obtain relief under Rule 56(d), the moving party must submit an affidavit that (1) outlines the facts intended to be discovered and describes why those facts are necessary to the litigation, (2) explains why the facts could not be produced in opposition to the motion, and (3) shows that the information is in fact discoverable.  *Convertino v. U.S. Department of Justice,* 684 F. 3d. 93, 99-100 (D.C. Cir. 2012).  In response to Petitioner Woodlawn's motion, the United States submitted the required affidavit.  *See* Claman Decl., Dkt. No. 55-2.  In its opposition, Petitioner does not dispute that the declaration outlines the facts to be discovered, that the government could not produce the facts in opposition to the summary judgment motion, or that the information is in fact discoverable.  Instead, Petitioner Woodlawn argues only that the facts

are not necessary to the litigation.[1]  This is incorrect.  As set forth herein and in the government's

declaration and other filings, discovery is necessary to resolve facts pertinent to whether

Petitioner is a party "other than the defendant" for purposes of Section 853(n)(2), whether

Petitioner has statutory standing under Section 853(n)(2) and constitutional standing to contest

forfeiture, and whether Petitioner meets the requirements for relief under Sections 853(n)(6)(A)

or (B).  *Id.*

Contrary to Petitioner's assertions, the government and the Court need not simply accept

Petitioner's representations without question.  In an ancillary proceeding, the "petitioner carries

the burden of proof and must establish his or her legal interest in the property by a

preponderance of the evidence…"  *United States v. Armstrong,* 2007 WL 7335174 *2 (E.D.La.

2007)(unreported).  It would be inconsistent with this burden on the petitioner and unjust to

require the government to acquiesce that a petitioner is an owner and has a valid claim without

even an opportunity to validate the petitioner's representations through discovery.  *See United

States v. BCCI Holdings (Luxembourg), S.A.*, 1993 WL 760232, at *4 (D.D.C. Dec. 8, 1993) ("It

would be extraordinary, indeed, and wholly unjust to all concerned parties, to permit DPA to

make a claim for $91.5 million in forfeited assets and require the Department of Justice to accept

DPA's representations that the money rightfully belongs to it.").  Summary judgment would be

particularly inappropriate here where Petitioner seeks to preclude discovery through premature

summary judgment.  *Dinkel v. Medstar Health, Inc.,* 286 F.R.D. 28, 33 (D.D.C. 2012) ("pre-

discovery motions for summary judgment are disfavored in this Circuit.").

---

[1] Because Woodlawn does not contest the government's satisfaction of the other *Convertino* elements, this
memorandum only addresses in detail the necessity for discovery.  However, the Claman Declaration outlines the
discovery needed (*e.g.* ¶¶4-19); explains the facts cannot be presented because discovery has not yet been
authorized, petitioner has not provided the information, and the information is not otherwise available to the
government (*e.g.* ¶¶ 3-5, 12, 21, 25); and that the facts sought are discoverable (*e.g.* ¶¶ 4, 22, 23).

1.   **Discovery Is Necessary to Determine Whether Petitioner Meets the Standing Requirements of Article III and Section 853(n)(2) and (n)(3)**

Standing is a threshold issue on which the third party petitioner bears the burden of proof in every civil or criminal forfeiture case. *See United States v. BBCI Holdings (Luxembourg) S.A.*, 833 F. Supp. 9, 13 (D.D.C. 1993), *aff'd*, 46 F.3d 1185 (D.C. Cir. 1995); *United States v. Cambio Excato, S.A.*, 166 F.3d 522, 523 (2d Cir. 1999) (holding that claimants demonstrated both statutory and constitutional standing). A third party seeking to establish its interest in specific property must establish statutory standing and Article III standing. *See United States v. Davenport*, 668 F.3d 1316, 1319-1320 (11th Cir. 2012) (citations omitted) ("Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies'; finding that petitioner lacked statutory standing because of an untimely petition).  Here, where Petitioner Woodlawn seeks summary adjudication of its claims, Woodlawn's failure to identify its beneficial ownership, provide information establishing the extent and circumstances of its purported loan, or disclose the relationship between the various entities and persons involved in the mortgage negotiations, this Court should permit the government an opportunity to test the sufficiency of Woodlawn's statutory and Article III standing to contest forfeiture.

In its opposition memorandum and supporting materials, the government demonstrated that Petitioner's refusal to provide information regarding its beneficial owners prevents the government and this Court from determining whether Petitioner Woodlawn is entitled to participate in these ancillary proceedings as someone other than the defendant, under 18 U.S.C. § 853(n)(2) and (n)(3).  *See e.g.* Claman Decl. at ¶4; *United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of Foreign Branches)*, 48 F.3d 551, 553-55 (D.C. Cir. 1995) (denying petitions by branches of defendant bank based on "lack [of] standing to file petitions" because the branches were considered the "defendant"); *United States v. Pelullo*, 178 F.3d 196,

202 (3d Cir. 1999) (holding that defendant has no standing to file a claim in the ancillary proceeding because the defendant's interest in property was resolved upon the Court's entry of a preliminary order of forfeiture).  As described in more detail below, Petitioner's opposition memorandum casts further doubt as to the ownership of Woodlawn, revealing for the first time that disbursements and payments under the purported loan were made by another *unidentified* limited liability company. *See infra* 9-10*, Dkt. No. 62 at 6-7.

Similarly, notwithstanding its belated inclusion of heavily redacted and handwritten materials along with its opposition memorandum, Woodlawn still refuses to meet the basic statutory requirement to identify the extent of its interest in the Baxter Street Property.  Indeed, Petitioner erroneously appears to believe it need not identify the extent of its purported interest in the forfeited property.  *See* Dkt. No. 62 at 18 ("There is no need at this time to precisely calculate the amount Woodlawn is owed under its loan agreement.").  Contrary to Petitioner's assertion, identifying the nature and extent of its interest is a requirement for standing to contest forfeiture. 21 U.S.C. § 853(n)(3) ("The petition shall . . . set forth the nature and extent of the petitioner's right, title, or interest in the property . . ."); *See also*, *E.g. United States v. BCCI Holdings (Luxembourg), S.A.*, 919 F. Supp. 31, 36 (D.D.C. 1996) ("if a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing").  "These are not simply technical requirements, but are construed strictly to discourage false or frivolous claims." *United States v. Preston*, 123 F.Supp.3d 108, 113 (D.D.C. 2015) (internal quotations omitted). "In interpreting the time and circumstances requirement, courts have held that a petition must do more than state [the] interest in a conclusory fashion." *Id*.

While Petitioner appears to have provided some additional information regarding the loan and payments of interest, the records remain incomplete.  For example, even accepting at face

value Petitioner's belated submission of a portion of its attorney's IOLTA account records,

Petitioner still has not established that the initial disbursement of $512,500 was ever made to the

defendant out of escrow.  *See* Dkt. No. 62-1 at 2 ("Funds will not be released absent written

approval from me. Funds returned in 10 days to this sending account…").   Similarly,

Petitioner's late-submitted payment records show only a few of the purported eleven payments

and rely on the statements of Petitioner's own counsel.[2]  *See* Dkt. No. 62-3.  *United States v.*

*Hailey,* 924 F.Supp.2d 648, 658-659 (D.Md. 2013) ("Conclusory allegation of ownership and

purchase with funds from employment is insufficient under § 853(n)(3)…").  Moreover,

according to Petitioner's opposition, disbursements and repayments under the purported loan

were made by and to another *unidentified* limited liability company – not Woodlawn.  *See infra*

at 9-10 and Dkt. No. 62 at 6-7.  Petitioner further contends that this additional "[redacted] LLC"

is itself a structure between the loan and "the individual who provided the loan money…"  Dkt.

No. 62 at 7.  Given the series of at least two nested structures, whether Petitioner Woodlawn is a

mere nominee or has the requisite Article III standing to maintain a petition in these ancillary

proceedings party with an interest in the Baxter Street Property is far from clear.

Ultimately, Petitioner's refusal to provide discovery regarding its identity, the identity of

its beneficial owners, the disbursement of funds, payments received under the loan, the default

and forbearance negotiations, and whether any portion of the loan has been forgiven, undermines

the government's and the Court's ability to validate the extent of Petitioner's purported interest

in the forfeited property.  *See* Claman Decl. at ¶¶ 6-17.  Where, as here, a petition lacks

sufficiency, permitting discovery is an appropriate course of action.  *United States v. Vithidkul,*

---

[2] The financial records submitted by Petitioner Woodlawn do not appear to comply with the redaction requirements of the Federal Rules or this Court's Local Rules.  *See* Fed. R. Crim. P. 49.1, Fed. R. Civ. P. 5.2, LCvR. 5.4(f).

2014 WL 1515130 *3 (D.Md. 2014)(finding factual issues to be resolved, *inter alia,* source of funds and ownership of claimed assets, and granting government's motion for discovery).

**2. Discovery is needed to Determine Whether Petitioner Meets the Requirements of 21 U.S.C. § 853(n)(6)(A)**

Petitioner Woodlawn's primary argument in opposition to discovery is that Petitioner has alleged that its interest arose prior to the indictment of the defendant and, therefore, its claim under 21 U.S.C. § 853(n)(6)(A) is dispositive. The Court should reject Petitioner's contention because factual issues remain as to whether Woodlawn has a valid "legal right, title or interest" in the property as required under Section 853(n)(6)(A), and because, in any event, Petitioner's asserted interest was not vested or superior to the defendant's rights prior "to the acts which gave rise to the forfeiture of the property."

To prevail under 21 U.S.C. § 853(n)(6)(A), a petitioner must establish by a preponderance of the evidence that "the petitioner has a legal right, title, or interest in the property, and "the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A). While a plausible allegation of a legal interest may be enough for a petitioner to survive a motion to dismiss for lack of standing, a petitioner must meet its affirmative burden with respect to each of the elements of the Section 853(n)(6)(A) in order to prevail on summary judgment and establish that there is no factual issue in dispute.

As an initial matter, Petitioner must establish a legal interest in the property not only for purposes of establishing statutory and constitutional standing, but also an express requirement of Section 853(n)(6)(A). Under 21 U.S.C. § 853(n)(6)(A), the petitioner cannot be a nominee for the defendant, the lien must be a valid lien, the amount demanded must be the amount due, and

the entire transaction needs to not be a sham. *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319–1321 (M.D. Fla. 2001) (a nominee cannot recover under§ 853(n)(6)(A); nor can a person who acquired the property as a result of a sham transaction); *United States v. Coffman*, 574 F. App'x. 541, 562–63 (6th Cir. 2014) ("Coffman has not cited a single case to support the assertion that courts may not void fraudulent transfers as part of ancillary forfeiture proceedings"); *Hunter v. United States*, 2014 WL 4385852, *5 (W.D. Tenn. Sept. 4, 2014) (because claimant alleged facts that, if true, would establish a legal interest in the forfeited asset, government's motion to dismiss must be denied; but in the evidentiary hearing, claimant will have the burden of proving he is not merely a nominee by a preponderance of the evidence); *United States v. Szaflarski*, 614 F. App'x. 836 (7th Cir. 2015) (defendant's sister did not have a valid third-party claim of ownership because transfer of title was taken for purpose of thwarting forfeiture and sister was a mere nominee).

Petitioner's limited self-serving statement as to its ownership interest is insufficient to enable the United States or this Court to determine even such elemental issues as whether the purported mortgage interest was obtained through a valid transaction for consideration among separate parties, who the parties in interest to that transaction were, what funds were finally disbursed, or the extent to which the purported lien has been discharged in whole or part. *See* Claman Decl. at ¶ 6 (discovery needed to determine if Woodlawn is a nominee or in relationship with defendant), ¶ 7 (explaining defendant's use of corporate shell companies and nominees), ¶¶ 8-11 (lack of ownership information regarding Woodlawn), ¶¶ 12-14 lack of information regarding disbursement of monies, collateral for purported loan, and payments under loan), and ¶¶ 15-17 (discovery needed to determine if loan a sham).

Apparently acknowledging its failure to establish a legal interest in the Baxter Street Property, Petitioner Woodlawn submits two exhibits it claims "satisfies the only legitimate request for evidence the Special Counsel makes." Dkt. No. 62 at 2. However, the representations in Petitioner's opposition raise more questions regarding the validity of the loan and the extent of Petitioner's purported interest. First, Petitioner reveals that it did not actually provide the funds underlying the purported loan agreement, some other unidentified limited liability company did. Dkt. 62 at 6, and n3. According to Petitioner, statements of attorney Berglund's IOLTA account show "an incoming wire from [redacted], LLC in Santa Monica for $512,500…" and "three days later…an outgoing wire in the same amount…" that references 123 Baxter St. *Id.* (brackets in original). Petitioner highlights a second transaction involving funds from "[redacted], LLC" as further evidence of the payment of the funds. *Id.* Yet, Petitioner provides no information regarding any agreement between Petitioner Woodlawn and the so-named "[redacted], LLC" or any payment of funds from Petitioner as consideration for the loan.

Next, in its opposition brief, Petitioner asserts that the initial interest payment under the loan was made not to Petitioner Woodlawn, but was "turned over" to another LLC in California. *Id.* at 7. Similarly, Petitioner attaches a declaration from Keith Berglund, with a partially chronological handwritten list of eleven payments, two checks, and an online banking payment receipt. Dkt. Nos. 62-1, 62-2, 62-3. This subset of payments does not indicate any payments to Woodlawn, nor do the loan documents submitted with Woodlawn's original petition identify any payment instructions. Petitioner does not even posit that Woodlawn had any financial accounts or conducted any business activity itself. Instead, Mr. Berglund asserts that "Woodlawn was incorporated solely to engage discretely in this loan transaction (five days before the loan

agreement was executed) and it has had no other activities."[3]  Dkt. No. 62-2 at ¶ 9.  Thus, as set forth in the government's discovery motion and its attachments, discovery is necessary to reveal and verify whether Petitioner maintains a legal interest in the Baxter Street Property sufficient to meet its burden under Section 853(n)(6)(A) and when it may have received that interest.

Petitioner baldly assumes a legal interest and asserts that its interest in the forfeited asset was vested in the Petitioner or was superior to that of the defendant "prior to the time when the Baxter Street property became subject to forfeiture as a substitute asset." Dkt. No. 62 at 8.  In doing so, Petitioner asks this Court to rely on Petitioner's policy arguments and hypothetical extremes, and to ignore the statutory language of Sections 853(n)(6)(A) and 853(p) analyzed by Judge Contreras in *United States v. Preston,* 123 F.Supp. 3d 117 (D.D.C. 2015) and the Second Circuit in *United States v. Daugerdas,* 892 F.3d 545 (2nd Cir. 2018).

In *Daugerdas*, the Second Circuit examined the specific statutory language of Section 853(n)(6)(A) in the context of a petitioner's claim to forfeited substitute assets.  *Id.*  Considering and rejecting the notion that the government's interest is identical to the defendant's interest in the context of substitute assets, the court explained that "§ 853(n)(6)(A) discusses the rights of a third party vis-à-vis the *defendant*, and makes no mention of the government."  *Id.* at 555.  As the *Daugerdas* court reasoned, "applying standard tools of statutory interpretation to the plain text of the statute provides ample support for our conclusion that, in either the context of offense proceeds or substitute property, the relevant "act" under § 853(n)(6)(A) is the underlying criminal conduct that triggers the forfeiture obligation."  *Id.* at 556. As a result, the court

---

[3] In contrast to this latest representation regarding the purpose and activities of Woodlawn, in Petitioner's numerous verified statements, Mr. Rappa and then Mr. Berglund repeatedly represented that "Woodlawn was established…as an investment vehicle" and that "[t]he Loan was *one of the first clients* to be considered by Woodlawn." Dkt. Nos. 15, 17, 20, 21 at ¶¶ 1, 2 (emphasis added).  Now, Woodlawn contends it did not have multiple clients or purposes beyond the particular loan.  These differing statements underscore the need for discovery to clarify the legal interest claimed and whether Woodlawn is a mere nominee without a legal interest in the property.

concluded that "even if it is unclear when, exactly, the government's interest in substitute property vests, § 853(n)(6)(A) permits a third-party claim against a defendant's untainted property (out of which an *in personam*-like forfeiture claim might be satisfied) only if that interest arose before the offense took place." *Id.* at 556-557.

Similarly, in considering a petition asserting an interest in forfeited substitute property under Section 853(n)(6)(A) in *Preston*, Judge Contreras of this Court, focused on the statutory language of Sections 853 rather than when the government's interest may have vested. As the Court explained, "Under Section 853(p), property becomes subject to forfeiture as substitute property when, as a result of any act or omission of the defendant, property subject to forfeiture under Section 853(a) meets one of five conditions." *Preston*, 123 F.Supp.3d at 116. Again, examining the specific statutory language, Judge Contreras concluded that "[f]or purposes of Section 853(n)(6)(A), therefore, 'the time of the commission of the acts which gave rise to the forfeiture' of the Securities was when [the defendant] transferred the embezzled [] funds to third parties." *Id.* Because Woodlawn did not obtain its purported interest until after the defendant engaged in the criminal conspiracy giving rise to forfeiture and after he alienated the traceable property, his claim under Section 853(n)(6)(A) must fail.[4]

Dissatisfied with the implications for its interest acquired after the defendant's criminal conduct and the dissipation of traceable assets, Woodlawn urges the Court to reject the statutory analysis in *Daugerdas* and *Preston*. Instead, Petitioner first opines that Congress should have amended Section 853(n) when it enacted the substitute assets provisions of Section 853(p), and

---

[4] Petitioner dismisses the Declaration of Sherine D. Ebadi as "puzzling". Dkt. 62 at 5. However, as set forth in the government's opening memorandum, Special Agent Ebadi's declaration provides uncontroverted evidence about the dissipation of property identified traceable to the criminal conspiracy of conviction. Petitioner does not offer counter evidence and, consistent with *Preston*, this Court can appropriately find that Petitioner's claim under Section 853(n)(6)(A) fails as having accrued after the acts giving rise to forfeiture.

suggests that the Court should, therefore, give the statute a different reading from its plain statutory meaning.  Dkt. No. 62 at 10-11.  However, as the *Daugerdas* and *Preston* courts concluded, the temporal limitations of Section 853(n)(6)(A) are clearly limited by the "acts which gave rise to the forfeiture" not the vesting of the government's interest.  Although *Daugerdas* and *Preston* differ on whether those acts are a defendant's original criminal conduct or a defendant's dissipation of traceable assets, the statutory focus is clearly on the defendant's conduct underlying the forfeiture.  There is no basis for the court to fashion a remedy Petitioner believed Congress should have enacted.  *See, e.g.*, *Banhart v. Sigmon Coal Col, Inc.* 534 U.S. 438 (2002)("As in all statutory construction cases, we begin with the language of the statute…The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.")(citations and quotations omitted); *cf. United States v. BCCI Holdings(Luxembourg), S.A.*, 46 F.3d 1185, 1191 (not open to a court to fashion another remedy inconsistent with the statutory remedial scheme Congress devised).

Second, Petitioner argues against a plain reading of Section 853(n)(6)(A) in the context of substitute assets on the grounds that it would negate the Section 853(p)(2)'s limitation restricting substitute asset forfeitures to the property of the defendant.  Dkt. No. 62 at 10.  However, once again, Petitioner's construction disregards the express statutory structure.  Under Section 853(n)(6)(A), the interest Congress chose to protect were vested and superior interests in property "at the time of the commission of the acts which gave rise to the forfeiture…"  Section 853(p)(2) does not delineate the acts that give rise to forfeiture.  As the Court explained in *Preston,* those acts are set forth in Section 853(p)(1), or, under *Daugerdas* are the criminal acts giving rise to forfeiture of the traceable property.

Third, Petitioner complains that this kind of statutory analysis would lead to an "absurd and unjust result". Dkt. No. 62 at 10-12. This argument is also unavailing. Contrary to Petitioner's assertion, failure to recognize a truly innocent petitioner's claim based upon the temporal requirements of Section 853(n)(6)(A) would not produce an unjust result. Instead, for a petitioner who acquired an interest in a substitute asset after the acts giving rise to the forfeiture (either the criminal conduct or the dissipation of the traceable assets), the petitioner would still be able to file a petition under Section 853(n)(6)(B) seeking recognition as a bona fide purchaser for value without cause to believe the property was subject to forfeiture. Thus, Petitioner's complaint that application of the statutory framework observed in *Daugerdas* and *Preston* would be "grossly unfair to innocent third parties by creating a lead to the creation of a hidden government forfeiture lien" is unfounded. Dkt. No. 12. Under the plain statutory language, an innocent petitioner that obtained an interest in substitute assets after the dissipation of traceable assets would be in a similar posture as an innocent petitioner seeking recognition of an interest in traceable property that was subject to the relation-back provision of Section 853(c). *Cf. United States v. McHan*, 345 F3d 262, 272 (4th Cir. 2003) (innocent transferee who does not have superior interest under Section 853(n)(6)(A) can seek recovery under Section 853(n)(6)(B)); *see also Preston*, 123 F.Supp.3d at 112 ("Congress did not intend section 853(n) to serve as a vehicle by which *all* innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief.") (quoting *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir.1991)).

In an effort to avoid basic discovery, Petitioner suggests that the plain reading analysis of *Daugerdas* and *Preston* are outliers. However, the cases Petitioner relies upon relate not to the acts that undergird a claim under Section 853(n)(6)(A), but primarily focus on issues of pretrial restraint or constitutional right to counsel. For example, *Luis v. United States*, 136 S. Ct. 1083

(2016), involved the pretrial restraint of untainted funds that a defendant sought to use to hire counsel.  In *Honeycutt v. United States,* the Supreme Court did not address third-party petitions at all, but in considering whether a co-conspirator could be held jointly liable for a money judgment, noted that the relation-back provision of Section 853(c) does not apply to substitute assets.  In *United States v. Erpenbeck*, 682 F.3d 472, 478 (6th Cir. 2012) and *United States v. Jarvis,* 499 F.3d 1196, 1204 (10th Cir. 2007), the courts did not address a petitioner's claim under Section 853(n)(6)(A).  In *Erpenbeck,* the court addressed when a potential claim was sufficiently plausible to require direct notice, while in *Jarvis,* the court found that the government could not place a *lis pendens* on substitute assets prior to conviction and a finding of alienation under Section 853(p).  *Id.* [5]

Notwithstanding its effort to thwart discovery through premature summary judgment, Petitioner itself contends that the inquiry under Section 853(n)(6)(A) is a factual inquiry.  Dkt. No. 11-12.  Noting the Fourth Circuit's ruling in *United States v. Oregon*, 671 F.3d 484 (4th Cir. 2012), Petitioner argues that "whether a third party's interest was superior to that of the defendant 'involves equitable considerations and is necessarily fact bound and value-laden.'"  *Id.* As such, Petitioner suggests that whether a third party's interest vested at the time of the illegal acts is just one factor for the court to consider.  *Id.*  Thus, it appears that even Petitioner concedes

---

[5] Petitioner also cites to three opinions in the Second Circuit for the proposition that in a Section 853(n) proceeding the government stands in the shoes of the defendant.  Dkt. 62 at 9.  Not only is such a rationale inconsistent with the subsequent *Daugerdas* opinion, but in 2015, in a case that Petitioner cites, the Second Circuit already rejected this reasoning, finding that "the government's right to forfeited property does not arise because the government 'inherits' the defendant's interests through the forfeiture order; it arises because the government has an independent interest in that property that is *superior* to the defendant's own claims."  *United States v. Watts,* 786 F.3d 152, 164 (2nd Cir. 2015).  Indeed, in considering Section 853(c), the *Watts* court recognized that the governmental interest was independent from the defendant's interest.  Similarly, the government's interest in substitute assets arises under the statutory provisions of Section 853(p)(1) because of the acts of the defendant to alienate or otherwise dissipate property traceable to the offense.

that discovery is necessary to determine the priority, extent and nature of Woodlawn's claimed

legal interest in the Baxter Street Property.

### 3. Discovery is needed to Determine Whether Petitioner Meets the Requirements of 21 U.S.C. § 853(n)(6)(B)

Woodlawn next contends that discovery is also unnecessary with respect to its claim

under 21 U.S.C. § 853(n)(6)(B) because it has "already demonstrated" that it acquired an interest

in the Baxter Street Property through an arm's length transaction, that it did not acquire the

interest through a sham transaction, that it provided value in exchange for its interest, and that it

could not have known the property was subject to forfeiture because it was forfeited as a

substitute asset.  Dkt. No. 62 at 13.  This assertion is in stark contrast to Petitioner apparent

concession elsewhere in its opposition that discovery is appropriate with regard to Petitioner's

claim under 21 U.S.C. § 853(n)(6)(B).  *See* Dkt. No. 62 at 3 ("If and when the Court denies

summary judgment on Woodlawn's first claim…there will be ample time to consider arguments

about discovery, if any, the SCO should be allowed to pursue with respect to the second claim

under § 853(n)(6)(B).")  In any case, whether a petitioner meets the elements of a Section

853(n)(6)(B) is a fact-specific inquiry, and material facts regarding Woodlawn's claim remain in

dispute or undiscovered.  Accordingly, this Court should deny Petitioner's motion for summary

judgment on this claim as well and grant the requested discovery so that the parties can proceed

to resolution or adjudication of Petitioner Woodlawn's petition.

To prevail in an ancillary hearing under 21 U.S.C. § 853(n)(6)(B), a petitioner must

establish each of three elements: "This defense consists of the following three elements: (1) the

claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide

purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably

without cause to believe that the property was subject to forfeiture."  *United States v. Timley*, 507

F3d. 1125, 1130-1131 (8th Cir. 2007).  The petitioner bears the burden of proving its interest

under § 853(n)(6).  *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) ("the petitioner bears

the burden of proving his right, title, and interest under § 853(n)(6)"); *United States v. Porchay*, 533

F.3d 704, 709 (8th Cir. 2008) (same).  Because the Baxter Street Property is located in New York,

Woodlawn's purported interest as a bona fide purchaser for value arises under New York law,

which provides that "a person gives value for rights if the person acquires them ... in return for

any consideration sufficient to support a simple contract…" *United States v. Drier*, 952

F.Supp.2d 582 (S.D.N.Y. 2013).  Thus, determination of whether a petitioner is a bona fide

purchaser for value requires a factual examination of the parties to the transaction are and the

consideration alleged to have been provided.  Additionally, whether a petitioner was "reasonably

without cause to believe" is an objective, rather than a subjective" test.  *See United States v.*

*King*, 2012 WL 2261117 (S.D.N.Y. 2012).  This element also requires close factual

examination.  *See United States v. Parenteau* 647 Fed. Appx. 601, 604 (6th Cir. 2016) (*not*

*recommended for full-text publication*)("whether [claimant] had cause to believe that the policies

were forfeitable is predominantly a factual question in the context of this case.")

       As set forth above, Petitioner's refusal to provide complete information regarding its

identity, its relationship with the defendant and "[redacted] LLC", the funds it may have

provided to the defendant, the funds it has received in payment under the purported loan, and the

extent to which the lien may have been discharged in whole or in part during self-described

forbearance discussions for nearly a year has frustrated the government's ability to determine

whether Petitioner has a present legal interest in the Baxter Street Property.  *See supra* at 7-10.

The ambiguities in Petitioner's ownership and involvement in the provision or receipt of funds

further underscore the need for discovery to determine whether Petitioner can meet the "legal

interest" requirement of Section 853(n)(6)(B).  *Id.*

However, even if Petitioner were found to have such a legal interest, discovery would still be necessary to enable the government, and ultimately the Court, to ascertain the extent to which Petitioner Woodlawn is a *bona fide* purchaser for value. The latest revelations from that Petitioner's opposition that another limited liability company, "[redacted] LLC", provided the purported loan monies to defendant reinforce the need for discovery to determine what, if anything, Petitioner Woodlawn provided defendant or "[redacted] LLC" in exchange for its purported loan interest in the Baxter Street Property. If discovery reveals that Petitioner provided nothing of value for its purported lien, Petitioner may not be able to meet its burden to establish it is a *bona fide* purchaser for value. *E.g., United States v. Davis*, 2014 WL 7236997 (E.D.Ky. 2014)(Petitioner who has not shown by a preponderance that she paid valuable consideration failed to establish she is a bona fide purchaser under §853(n)(6)(B)); *United States v. Armstrong,* 2007 WL 7335174 (E.D.La. 2007)(unreported) *2 ("[I]f the third party acquired the property by gift or donation (in other words, no consideration was given) he or she does not qualify as a bona fide purchaser under the statute."). Similarly, since the counterparties to the purported transaction remain unknown, discovery is need to ascertain whether Petitioner acquired its alleged interest in an arm's length transaction with the defendant or "[redacted] LLC". *See United States v. Joyce,* 2011 WL 1102986 *5, 6 (E.D.P.A. 2011) (spouse who acquired interest without consideration failed to establish she was a bona fide purchaser for value). According to the declaration of Petitioner Woodlawn's manager, Woodlawn was incorporated solely to engage in this loan transaction. Berglund Decl. at ¶ 9, Dkt. No. 62-2. As set forth in the government's declaration, the use of false loans, loan fraud, and sham transactions is consistent with the defendant's conduct leading to his conviction. *See* Claman Decl., Dkt. No. 55-2 at ¶¶ 14-18.

Third, discovery is needed to determine what Petitioner reasonably knew or should have known at the time it acquired its purported interest in the Baxter Street Property.  As mentioned previously, Woodlawn apparently was incorporated solely to engage in this loan transaction with the defendant.  Berglund Decl. at ¶ 9, Dkt. No. 62-2.  Petitioner was also aware that the defendant was the subject of a criminal investigation at the time it purportedly provided the loan.  MSJ Dkt. 44 at 9 ("After learning about the *search* of the Manafort's home …Woodlawn decided to go ahead with the loan…").  Other irregularities in the loan documentation and the terms of the loan, as well as the public reporting on the extent of the criminal investigation, further support Petitioner Woodlawn's likely knowledge that the defendant was under investigation, and, therefore, his assets might be in jeopardy.  Claman Decl. at ¶ 16.  Discovery would reveal, *inter alia,* the full extent of Petitioner Woodlawn's knowledge and whether the defendant or his counsel informed Petitioner or its counsel of the extent or nature of the investigation or discussed with them that defendant's assets might be subject to forfeiture.  Such information could be highly probative of whether Petitioner can satisfy its burden to establish that it was "reasonably without knowledge." *See, e.g. United States v. Derochemont*, 2011 WL 6319293 *3 (M.D.Fl. 2011)(unreported) (petitioner could not claim to have been without reason to know after defendant previously confessed crime to her).[6]

---

[6] Petitioner appears to contend that because the Baxter Street Property was forfeited as a substitute asset, Petitioner could not possibly have known whether it was subject to forfeiture.  Dkt. No. 62 at 13 ("it is immaterial what facts 'Woodlawn and its representatives knew at the time it entered into the … loan agreement'").  Several courts have found, contrary to *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, at *21 (D. Minn. 2013), that knowledge that a defendant was under investigation was sufficient to defeat a claim under Section 853(n)(6)(B); knowledge that that the specified property owned by the defendant was somehow involved was not required.  *See Derochemont*, 2011 WL 6319293 *3 (M.D.Fl. 2011)(denying a claim under Section 853(n)(6)(B) for substitute assets based on knowledge); *United States v. Galemmo*, 661 F. App'x 294, 297–98 (6th Cir. 2016) (claimant not reasonably without cause to believe an asset was subject to forfeiture when "it was clear that [Defendant] was under investigation" and claimant was aware "of the 'red flags' around her husband's financial status.").

Misconstruing *United States v. Frykholm,* 362 F.3d 41, 416 (7th Cir. 2004), Petitioner
contends that it had no duty to investigate when it had suspicions that it was acquiring an interest
in property from an individual who may have been engaged in criminal activity.  Dkt. No. 44 at
11.  However, according to *Frykholm,* a Petitioner cannot be willfully blind and recover under
Section 853(n)(6)(B).  As the court found, "The possibility that Cotswold knew enough to permit
an ostrich inference – and thus could be found to have *actual* knowledge that Frykholm bought
the Property with the proceeds of the fraudulent scheme – prevents summary judgment in
Cotswolds' favor.  The state of Cotswold's knowledge is the subject of a material dispute."
*Frykholm*, 362 F.3d at 416 (what a claimant actually knew "would have alerted any reasonable
person to the possibility" that the property was subject to forfeiture, the claimant may not be
"reasonably without cause to believe that the property was subject to forfeiture."); *United States v.
BCCI Holdings (Luxembourg), S.A.*, 961 F. Supp. 287, 296 (D.D.C. 1997) (a bank reasonably should
have known that an entity's assets were subject to forfeiture when its misdeeds were widely reported
in prominent newspapers over an extended period of time.)  Moreover, at least one court has found
that "[i]n appropriate circumstances, this objective test requires a petitioner 'to conduct further
inquiry before seeking to obtain an interest' in property that may be subject to forfeiture." *United
States v. Drier*, 952, F.Supp.2d 582, 588 (S.D.N.Y. 2013).  Here, as in *Frykholm,* Petitioner
could not simply put its head in the sand and expect to recover under Section 853(n)(6)(B).
Petitioner admittedly knew of the criminal investigation at the time of the loan and was actively
engaged with lawyers acting on behalf of the defendant.  There are at least material facts in
dispute as to whether Petitioner knew or should have known the property was subject to
forfeiture, and the Court should grant the government's request for discovery.  *United States v.
Gallion*, 2010 WL 3620257 * 11-12 (E.D.Ky 2010) (finding, *inter alia*, that spouse who knew or
should have known about investigation did not qualify as for relief under § 853(n)(6)(A) or (B)).

**4.  The Discovery Requested is Narrowly Tailored and Proportional to the Needs of the Case**

In response to the government's detailed identification of the bases for its request for discovery and the specific types and period of discovery sought, Petitioner broadly complains that such discovery would be costly and overbroad.  Dkt. No. 62 at 3, 14-16.  However, other than generalized complaints and speculation, Petitioner fails to identify how the specific discovery is unwarranted.  Indeed, there is nothing particularly remarkable about the discovery that the government seeks – 15 Special Interrogatories, 10 additional interrogatories, up to nine depositions, and requests for production, requests for admission, and subpoena authority to third parties and banks in accordance with Fed. R. Civil P. 45 and 18 U.S.C. § 986.  Claman Decl. at ¶ 23-24.  Given the additional uncertainties exposed in Petitioner's opposition memorandum, the government's modest request for a ninety day discovery period is proportional to the needs of the case.

Petitioner's main complaint appears to be that the government seeks up to nine depositions.  However, Petitioner does not comment on the government's asserted factual basis for such depositions.  In government counsel's declaration, the United States identifies seven specific types of persons involved in or referenced in Petitioner's pleadings.  Claman Decl. at ¶ 23(c).  The anticipated depositions, could include the beneficial owners(s) and two present or former managers of Petitioner Woodlawn, Bruce Baldinger who Petitioner contends negotiated the loan agreement, a person referenced in Petitioner's own submissions as being a possible source of the loan, the escrow agent for the one of the purported disbursements that Petitioner has still not established was disbursed, and others with knowledge of the loan and purported forbearance discussions.  In light of the revelation that payments funds were not disbursed from or to Woodlawn and that another unidentified limited liability company stands between

Woodlawn and the source of funds for the purported loan, the government's inclusion of two additional potential depositions seems to have been prudent and conservative. Petitioner offers no basis to suggest that these depositions are not proportional to the needs of the case.

The government's desire for special interrogatories and ordinary interrogatories are similarly warranted in light of Petitioner's aversion to providing basic information in support of its claim. Although Petitioner complains that Special Interrogatories are a figure of civil forfeiture action, the government has requested such interrogatories precisely because they go to the "claimant's identity and relationship to the defendant property." Supp. R. G(6)(a). Because Petitioner continues to conceal its identity, its relationship to the Baxter Street Property and other legal and natural persons involved in the purported loan transaction, and the extent of its purported interest in the property, Special Interrogatories will help the government and the Court better understand Petitioner's standing and the extent and nature of its purported interest. Other interrogatories would be appropriate to discover Petitioner's factual and legal assertions under its claim. The government's requests for authorization to propound requests for production and requests for admission are not contested at all in Petitioner's opposition – except to the extent that it believes the government need take no discovery in ancillary proceedings. Accordingly, Petitioner's suggestion that the discovery sought is not proportional to the needs of the case is without merit.

5. **Petitioner's Unsupported Assertion of a Need for a Protective Order is Not Grounds to Deny Discovery**

In its Opposition, Petitioner asserts that it "does not seek to prevent the government from obtaining *any* information in discovery," (Dkt. No. 62 at 16), yet that is precisely the consequence of Petitioner's actions in this case. When the government declined to enter into an expansive confidentiality agreement without knowing who the counterparty to the agreement

was, the basis for the relief sought, or the full scope of the protection sought, Petitioner moved

for summary judgment without providing essential evidence about the purported loan, the parties

to its agreement, the amount due, the circumstances in which its interest arose or the identity of

the Petitioner.  Rather than agree to discovery and move for a protective order pursuant to Rule

26(c) of the Federal Rules of Civil Procedure, Petitioner simply refused to provide the

information to substantiate its claim asserting that any disclosure would be unnecessary and

prejudicial.

Petitioner contends that the government's request for discovery to inquire into

petitioner's standing or the relationship between Woodlawn and the defendant somehow makes it

"effectively a target of a law enforcement investigation…"  Dkt. No. 62 at 17.  Under this

tortured logic, a petitioner in an ancillary proceeding or a claimant in a civil forfeiture

proceeding becomes a criminal target any time the government merely seeks to verify a

petitioner or claimant's assertions of standing, relationship to the conduct or individuals at issue

in a forfeiture proceeding, or the validity of their claim.  This is not the law.  A bedrock principle

of U.S. jurisprudence is that litigants must have standing to bring their claims into federal court.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).  The Federal Rules further clearly authorize

the government to move to dismiss or strike petitions or claims of a claimant who lacks standing

or has failed to fulfill the requirements for participation in a criminal or civil forfeiture

proceeding.  *See* Fed. R. Crim. P. 32.2(c)(1); Rule G(8)(c) of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions.  The government's desire to inquire

into the identity of the petitioner, the nature and extent of its claimed interest, and its relationship

to the defendant is neither unusual nor unwarranted; it is essential for the disposition of justice.[7]

---

[7] Indeed, in the civil forfeiture context, the Federal Rules expressly provide for the government to obtain early
information regarding "the claimant's identity and relationship to the defendant property" by propounding Special

*See United States v. BCCI Holdings (Luxembourg), S.A.*, 1993 WL 760232, at *4 (D.D.C. Dec.

8, 1993) (government not required to accept without question the representations of petitioner).

Although Petitioner has not filed a motion for a protective order, it generally asserts, in

his opposition to the government's motion for discovery, that open participation in this action by

"Woodlawn's Principal" would cause grave damage to his business and personal relationships

due to the unpopularity of the defendant and his associates in California.  Dkt. No. 62, pg. 17.

Under Rule 26(c), A party . . . from whom discovery is sought may move for a protective order. .

." and "[t]he court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

 The burden is on the movant to show "good cause" through "a particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra*

*Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998); *see also*, *In re Roman Catholic Archbishop of*

*Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ("The party opposing disclosure has the

burden of proving good cause, which requires a showing that specific prejudice or harm will

result if the protective order is not granted.")  Petitioner's argument about the necessity of a

protective order are insufficiently particular and specific, and premature.  Unless and until

Petitioner files such a motion setting forth the "particular and specific demonstration of fact as

distinguished from stereotyped and conclusory statements" and the law that support his position,

Petitioner's vague unsubstantiated request should be denied.[8]

---

Interrogatories, which must be answered before the government need respond to a claimant's motion to dismiss.  *See* Supp. Rule G(6).

[8] Petitioner has also provided no basis for its extraordinary suggestion that the court require the government to bear Petitioner's cost of providing discovery under Rule 26(c)(1)(B) and restrict discovery under 26(b)(1).  After failing to provide the information along with its petition or through informal discovery, Petitioner Woodlawn, which may be claiming more than a million dollars in these proceedings, there is no basis for the Court to find that providing discovery in this action creates an "*undue* burden" on Petitioner.

**CONCLUSION**

Petitioner seeks the protection of the Courts through recognition of a claim that possibly exceeds a million dollars.  Rather than delay these proceedings further with premature motions and efforts to thwart legitimate discovery, Petitioner should be subject to the requested discovery.  For the reasons set forth herein, the United States respectfully urges this Court to deny Petitioner's motion for summary judgment and grant the discovery the government has requested.

Respectfully submitted,

JESSIE K. LIU
United States Attorney

By:        _____
Zia M. Faruqui, D.C. Bar 494990
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530
 (202) 252-7117 (Faruqui)
zia.faruqui@usdoj.gov

By:        */s/ Daniel H. Claman*
Daniel H. Claman
Money Laundering and
    Asset Recovery Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone:  (202) 514-1263

Counsel for the United States of America

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2019, I have provided notice of the forgoing through the

Court's Electronic Filing System to such counsel of record or pro se litigants as have consented

to accept service through such means.  I have also transmitted a copy of this filing via electronic

mail to the following, who do not appear to have registered for notice through the Court's

Electronic Filing System or who have not filed an appearance in this matter:

William Clayton Batchelor, Esq.
1601 18th Street, NW Suite 2
Washington, D.C. 20009
wcb@wrightandbatchelor.com

Robert T. Holland, Esq.
BELKIN BURDEN WENIG & GOLDMAN LLP
270 Madison Avenue
New York, New York  10106
RHolland@BBWG.COM
(Attorneys for Claimant the Residential Board of Trump Tower Condominium)

Gayle Pollack, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, New York  10022
gpollack@morrisoncohen.com
(Attorney for 29 Howard Street Condominium)

/s/ *Daniel H. Claman*
Daniel H. Claman
Money Laundering and
   Asset Recovery Section