**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| PAUL J. MANAFORT, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| IN RE: PETITIONS FOR RELIEF ) | |
| CONCERNING CONSENT ORDER OF ) | Case No. 1:18-mc-00167-ABJ |
| FORFEITURE ) | |

**JOINT STATUS REPORT OF UNITED STATES, THE FEDERAL SAVINGS BANK, NATIONAL BANCORP HOLDINGS, AND CHRISTOPHER DOYLE**

The United States of America and Petitioners The Federal Savings Bank (TFSB), National Bancorp Holdings (NBH), and Christopher Doyle, by and through their respective counsel, respectfully submit this status report in response to the Court's August 12, 2019, and September 23, 2019, Minute Orders.

**Joint Submission: The United States and Christopher Doyle:**

The United States' motion to dismiss the petition of Christopher Doyle (Dkt. No. 34) has been fully briefed. Both the United States and Petitioner Doyle recognize that determination of the TFSB and NBH Petitions or interlocutory sale of the Union Street property may affect the positions of the United States and Petitioner Doyle regarding this asset. Counsel for Petitioner Doyle advises that he will oppose the interlocutory sale of the Union Street property.

**Joint Submission: The United States and The Federal Savings Bank (TFSB)/National Bancorp Holdings (NBH)**

The United States of America and Petitioners The Federal Savings Bank (TFSB), National Bancorp Holdings (NBH) were unable to reach an agreement on a briefing schedule because they have conflicting views of how this matter should proceed. As part of this joint submission, the parties present their respective positions below, for the Court's consideration.

**Position of the United States of America:**

As advised in previous status reports, counsel for the United States and Petitioners TFSB and NBH (together "TFSB/NBH") have considered the possibility of a negotiated resolution to the TFSB/NBH petitions. As further indicated in their prior reports, during this period the parties have each sought and obtained appraisals on the relevant real properties to inform their negotiations, the case was transferred from the Special Counsel's Office to the United States Attorneys' Office for the District of Columbia, and Petitioners' counsel changed firms. (Dkt. Nos. 76, 86). On September 19, 2019, TFSB/NBH advised the Court that it believed settlement negotiations have been unsuccessful. Nonetheless, the United States has since provided TFSB/NBH with a proposed modification of a TFSB/NBH settlement proposal for TFSB's/NBH's consideration.

The parties have met and conferred as directed by the Court regarding a schedule in the event that settlement is not achieved. In its September 19, 2019, letter to the Court, TFSB/NBH indicated that it believed that there is no need for additional discovery in light of the trial record from Defendant's criminal trial in the U.S. District Court for the Eastern District of Virginia (EDVA). (Dkt. No. 90). The United States disagrees, and contends that the trial record from the Defendant's criminal case in EDVA is insufficient to enable adjudication of TFSB's/NBH's petitions in this separate action, which involved additional conduct not at issue in the EDVA

2

prosecution. Accordingly, the parties do not submit a proposed schedule for a joint submission of evidence from *United States v. Paul J. Manafort, Jr.*, No. 1:18-cr-00083-TSE-1 (E.D.Va.). The United States and TFSB/NBH also disagree regarding the scope and sequence of matters to be addressed regarding the TFSB/NBH petitions, including whether interlocutory sale may be appropriate.

The United States believes that a short period of discovery is necessary for it to assess the extent and nature of the petitions of TFSB and NBH, and to provide a sufficient record to the Court for adjudication of the petitions. Petitioners TFSB and NBH have submitted claims to recover millions of dollars through these ancillary proceedings. TFSB/NBH contend they had a superior interest to that of the Defendant in the properties at the time of the commission of the acts which gave rise to the forfeiture,[1] or that they are *bona fide* purchasers for value that, at the time they issued the loans, were reasonably without cause to believe the property was subject to forfeiture. (Dkt. No. 8 at 5; Dkt. No. 9 at 6). Among other things, TFSB and NBH disclaim possessing knowledge or reason to know, at the time they issued the loans, of the Defendant's engagement in criminal activity, including the offense conduct leading to the Defendant's guilty plea in the U.S. District Court for the District of Columbia. *Id.* As a result, the circumstances of TFSB's/NBH's acquisition of the loans and the knowledge of the bank and the holding company are central to determination of the petitions.[2] Information and discovery from TFSB and NBH as

---

[1] In pursuit of their § 853(n)(6)(A) claim, Petitioners TFSB and NBH erroneously contend that the forfeited properties at issue are substitute assets, rather than assets funded with criminal proceeds. In any event, the proper scope of ancillary proceedings is whether a petitioner can meet its burden to establish a superior interest to that of the Defendant or innocent ownership under § 853(n)(6).

[2] TFSB/NBH submits that what the bank officers and owners knew at the time they provided the loans to the Defendant about Defendant's criminal conduct is irrelevant. That is wholly inconsistent with Petitioner's § 853(n)(6)(B) claim which requires that the petitioner be

3

the petitioners, as well as additional information from its employees or others, is necessary to elucidate the basis of the Petitioners' claims and the facts surrounding the loans and the loan paperwork.  In addition, TFSB/NBH have written off the loans as a loss and have foreclosed on additional real property and cash collateral for one of the loans.  As a result, discovery will further enable the United States to determine the extent and nature of the remaining interest TFSB/NBH claims in the forfeited property.

Contrary to Petitioners' contentions, the trial record from the Defendant's prosecution and conviction in EDVA is insufficient to adjudicate these issues.  In addition to the differences in the conduct charged in EDVA from the charges in this action, evidence introduced at trial in EDVA regarding the TFSB/NBH loans primarily related to the Defendant's conduct, including his representations to TFSB, and certain financial aspects of the loans.  The EDVA trial (which ended in mistrial on the TFSB/NBH-related counts) did not focus on the Petitioners' knowledge of the forfeitability of the property or the nature, timing, and extent of the interest that the bank and holding company claim.  Thus, while the evidence presented by certain TFSB employees at trial in Virginia is relevant to aspects of the petitions of TFSB and NBH, it is insufficient for adjudication of the petitions.

The United States notes that discovery and potential hearing testimony may be further complicated by the recent indictment of Stephen M. Calk in the U.S. District Court for the Southern District of New York (SDNY).  *United States v. Stephen M. Calk,* No. 19-cr-366-LGS (S.D.N.Y.).  Calk was the chief executive officer and chairman of the board of TFSB, as well as the chief executive officer, chairman and two-thirds owner of NBH at the time of the loans.

---

reasonably without cause to believe the property was subject to forfeiture.  This disagreement further illustrates why briefing on the issue of discovery is necessary.

NBH owns all of the shares of TFSB.  On May 21, 2019, Calk was indicted in SDNY on charges of violating 18 U.S.C. § 215(a)(2) and 2, in connection with his relationship with the Defendant and the loans that form the basis of TFSB's and NBH's claims in this action.  A status conference is scheduled for January 9, 2020, at which the court has indicated it will set a firm trial date.  Obtaining evidence from TFSB, NBH, Calk or other persons who have the potential to become witnesses in the Calk prosecution may implicate rights of those parties or the interests of the United States in that action.

Nevertheless, to advance these ancillary proceedings and in keeping with the Court's September 23, 2019, Minute Order, the United States proposes that the Court set a briefing schedule limited to the parties' different views regarding the extent of, and sequence for, discovery.  In such briefing, the United States would also seek to set out in more detail the discovery it anticipates could proceed now without implications for the Calk prosecution.  The United States proposes a briefing schedule, as follows:

- Government's Motion for Discovery – on or before October 29, 2019
- Petitioners' Response – on or before November 12, 2019
- Government's Reply – on or before November 26, 2019

Thus, while the United States believes that briefing or a hearing on the merits is premature, it contends that determination of the appropriate scope and timing of discovery can help move these proceedings forward, in the event settlement is not reached.

To further advance these proceedings and preserve the value of the assets, the United States also intends shortly to move for interlocutory sale of the two properties at issue in the TFSB/NBH petitions.  Counsel for TFSB/NBH has advised that her clients oppose interlocutory

sale of the properties.  Counsel for Petitioner Doyle similarly has advised that he opposes the interlocutory sale of the Union Street property.

**Position of The Federal Savings Bank and National Bancorp Holdings, Inc.:**

Nearly a year ago, on November 9, 2018, TFSB and NBH ("Petitioners") filed third-party petitions asserting claims under 18 U.S.C. § 853(n)(6)(A) and (B), to property that the government sought to forfeit following Paul Manafort's guilty plea before this Court.  (Docs. 8, 9.)  As described in the petitions, Mr. Manafort pledged property as collateral for loans he obtained from TFSB ("Collateral Properties").[3]  TFSB became a secured lienholder on the Collateral Properties, and its holding company, NBH, also acquired an interest in the property, long before Mr. Manafort was indicted in any federal criminal case.

The government's position on TFSB's and NBH's petitions is baffling.  As the government has repeatedly acknowledged, in two different federal courts, TFSB is a victim of Mr. Manafort's fraud.  Mr. Manafort was charged, in the Eastern District of Virginia, with "fraudulently secur[ing] more than twenty million dollars in loans" from TFSB and others by making numerous false representations.  (Doc. 9 at 3, 2–22.)[4]  The government filed a factual stipulation in this Court, as part of Mr. Manafort's plea agreement, that identifies TFSB as a victim and states that Mr. Manafort made a series of false and fraudulent representations to TFSB to secure loans and pledged the property as collateral for the loans he obtained.  (Docs.

---

[3] The Collateral Properties include: (1) the real property and premises commonly known as 174 Jobs Lane, Water Mill, New York 11976, (Block 209, Lot 1104), including all appurtenances, improvements, and attachments thereon; (2) the real property and premises commonly known as 377 Union Street, Brooklyn, New York 11231 (Block 429, Lot 65), including all appurtenances, improvements, and attachments thereon; and (3) all funds held in account number XXXXXX0969 held at TFSB.

[4] Filed in *United States v. Paul J. Manafort, Jr.*, Crim. No. 1:18-cr-83 (hereafter "Eastern District of Virginia").

314-4 at 12; 314-5 at 6.)  The restitution order entered against Mr. Manafort in EDVA also identified TFSB as a victim of Mr. Manafort's fraud and ordered restitution in TFSB's favor in the amount of $15,387,903.39, which represents the money that TFSB loaned Mr. Manafort and that he failed to pay back.  (Doc. 325 at 3–4.)[5]  To date, TFSB has not been paid any restitution for its losses.  It has been nearly a year since TFSB and NBH asserted their claims to the Collateral Properties.

Although the parties tried to reach a resolution, they were unable to do so.  TFSB and NBH now wish to move forward with establishing their claims and are prepared to do so promptly.  Indeed, 18 U.S.C. § 853(n)(4) contemplates that the Court will hold an ancillary hearing within 30 days of the filing of a petition.  But the government seeks to delay this matter even further, based on its vague, purported need for discovery into matters that are wholly irrelevant to the Petitioners' claims.  As we explain below, the issue for this Court to decide – whether TFSB and NBH can establish a superior right to the Collateral Properties under 18 U.S.C. § 853(n)(6)(A) or (B) – is narrow and straightforward.  It does not require discovery, or even a hearing.[6]

To establish that property is forfeitable in a criminal case, the government must prove, by a preponderance of the evidence, that the property is the proceeds of the crimes of conviction.

---

[5] *Id.*

[6] The Court should also reject the government's attempt to delay consideration of TFSB and NBH's petitions based on the recent indictment of Stephen Calk in the Southern District of New York.  Mr. Calk was charged on May 2, 2019, approximately *seven months* after TFSB and NBH filed their petitions.  It would be grossly unfair to deny TFSB and NBH, as victims of Mr. Manafort's fraud, the opportunity to establish their claims to the Collateral Properties, simply because the government contends that it would be "complicated" because the government – not the Petitioners -- purports to need discovery on issues that are irrelevant to the petitions.  TFSB and NBH, by contrast, are prepared to move forward with briefing their claims and are not requesting any discovery from the government.

7

*See United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004).  In cases where the proceeds of the crimes of conviction have been dissipated or cannot be located due to an act of the defendant, the government can forfeit the property as a "substitute asset" under 18 U.S.C. § 853(p).

In this case, the government never even attempted to prove that Collateral Properties were the proceeds of Mr. Manafort's crimes of conviction in this Court – Foreign Agents Registration Act ("FARA") violations, money laundering, and tax fraud.  Rather, the Collateral Properties were forfeited from Mr. Manafort as a "substitute assets."[7]  In fact, at no point during Mr. Manafort's criminal case in this Court did the government offer an iota of evidence showing that the Collateral Properties were the proceeds of the FARA, tax fraud, or money laundering crimes of conviction.[8]  When Mr. Manafort pled guilty, he was not allocated on any facts that would establish that the Collateral Properties were traceable to the crimes of his conviction.  The Statement of Offense accompanying Mr. Manafort's guilty plea also fails to establish that the Collateral Properties were the proceeds of his crimes.  Mr. Manafort, like virtually all cooperating defendants, *agreed* to forfeit assets as part of his criminal plea, and based on the record, the only basis for forfeiture of the Collateral Properties was as a substitute assets of Mr. Manafort.

---

[7] In its consent forfeiture order, the government asserts that the Collateral Properties (and other assets in the forfeiture order) are forfeited as "criminal proceeds and/or substitute assets," without offering any evidence for the forfeiture beyond Mr. Manafort's agreement to forfeit the property.  (Case No. 1:17-cr-00201, Doc. 443 at 3.).

[8] Criminal forfeiture is *in personam*, and is limited to the proceeds of the crimes of conviction. *See United States v. Bajakajian*, 524 U.S. 321, 332 (1998).  The government is not authorized to forfeit property traceable to other conduct that the defendant may have committed outside the crimes of conviction.  Significantly, the government chose not to file a separate civil forfeiture complaint against Collateral Properties (or any other Manafort assets) and instead included the Collateral Properties as substitute assets in Mr. Manafort's criminal forfeiture proceeding in this Court.

Where forfeited property belongs to a third party – not the defendant – the third party petitioner can challenge a criminal forfeiture by proving that it has a superior right, title, or interest to the property under 18 U.S.C. § 853(n)(6)(A) or (B). Here, the Petitioners TFSB and NBH can establish their claims to the Collateral Properties under either of these two prongs.

Under 18 U.S.C. § 853(n)(6)(A), the Petitioners can show their interest in the Collateral is superior to that of the government because TFSB had mortgages on the Collateral Properties long before the government's interest could have vested in the property. The relation-back doctrine, which holds that the government's interest in forfeitable criminal proceeds vests at the time of the commission of the crime, does not apply to substitute assets. *United States v. Daugerdas*, 892 F.3d 545, 549 (2d Cir. 2018). Although the law varies on when, exactly, the government's interest vests, the earliest point at which the government's interest in a substitute asset could possibly vest is at the time of the indictment. *Compare United States v. Peterson*, 820 F.Supp.2d 576, 585 (S.D.N.Y. 2011) (vests upon return of grand jury indictment noticing forfeiture), *with United States v. Kramer*, No. 1:06-cr-200, 2006 WL 3545026, at *6–8 (E.D.N.Y. Dec. 8, 2006) (vests, at the earliest, when defendant is convicted), *and United States v. Jennings*, No. 5:98–cr–418, 2007 WL 1834651, at *4 (N.D.N.Y. June 25, 2007) (vests upon entry of the order granting the motion to forfeit substitute assets). Here, the Petitioners will show that TFSB obtained its mortgages on the Collateral Properties long before Mr. Manafort was indicted for FARA violations, tax fraud, and money laundering in this Court.

Petitioners can also establish their claim under 18 U.S.C. § 853(n)(6)(B), as bona fide purchasers for value, who were, at the time of purchase reasonably without cause to believe that the property was subject to forfeiture. As secured lienholders, TFSB and NBH are clearly bona fide purchasers for value, and where property was later forfeited as substitute assets – not as

9

criminal proceeds – they could not have possibly known that the property was subject to forfeiture at the time they obtained the mortgages. As substitute assets, Collateral Properties were *not* subject to forfeiture at the time TFSB obtained its mortgages and did not become subject to forfeiture until, at the earliest, Mr. Manafort's indictment in this Court.

The matters on which the government purports to need discovery are irrelevant to the whether TFSB and NBH have claims to the Collateral Properties under 18 U.S.C. § 853(n)(6)(A) or (B). The government argues that it needs discovery into TFSB and NBH's knowledge of Mr. Manafort's involvement in criminal activity at the time the loans were extended to him. But here, the Collateral Properties are only subject to forfeiture as substitute assets, not as a criminal proceeds. Under 18 U.S.C. § 845(n)(6)(B), the issue is whether the petitioner knew that the property was subject to forfeiture at the time of the purchase – not whether the petitioner knew or suspected any possible criminal activity by the defendant. In this case, the Petitioners could not possibly have known that the Collateral Properties were subject to forfeiture as substitute assets. Knowledge of Mr. Manafort's criminal activity is similarly irrelevant to the Petitioners' claim under 18 U.S.C. § 853(n)(6)(A). As noted above, the relation-back doctrine does not apply to substitute assets, so the TFSB's and NBH's interest in the Collateral Properties vested well before the government's interest, giving them a superior right, title, and interest in the property.

Inexplicably, the government also asserts that it needs discovery on TFSB's and NBH's efforts to mitigate and recoup their losses on the Mr. Manafort loans. But any documents reflecting these events—such as the FRY-9C report submitted by the NBH to the Federal Reserve Bank or documentation submitted by TFSB to the FDIC in 2017—are publicly available. And, in any case, TFSB's and NBH's efforts to mitigate and recoup their losses are irrelevant to the sole material dispute before the Court: whether TFSB and NBH can establish a

superior interest in the Collateral Properties. To the extent that the government believes it needs more background on the Petitioners' interest in the properties, it can consult the full trial record from Mr. Manafort's criminal trial in the Eastern District of Virginia, where Mr. Manafort was charged with bank fraud in connection with the TFSB loans.

The parties tried to reach a resolution in this case and were unable to do so. Petitioners are now prepared to move forward and would like to do so as expeditiously as possible. We believe the Court could decide this matter based on briefing from the parties and does not need to hold an evidentiary hearing. To the extent that the Court is inclined to hold a hearing, we suggest setting a hearing date after the parties have submitted briefing on the petitions. There is no need for the Court to order discovery in this matter because it is not necessary to resolve any factual issues to resolve in connection with the Petitioners' claims.[9]

Petitioners TFSB and NBH propose the following schedule for briefing Petitioners' claims:

>November 4 – Petitioners' brief due
>November 18 – Government's opposition brief due
>November 26 – Petitioners' reply brief due

---

[9] Under Federal Criminal Rule of Procedure 32.2(c)(B), the Court may permit discovery before an ancillary hearing "if the court determines that discovery is necessary or desirable to resolve factual issues." However, 18 U.S.C. § 853(n)(4) contemplates holding an ancillary hearing within 30 days of the filing of the petition. The ancillary hearing is not a full-blown retrial of the criminal case. Nor it is an opportunity for the government—which has vast subpoena power to investigate and try criminal cases—to search for evidence that it failed to present as part of its criminal case.

Finally, TFSB and NBH also oppose an interlocutory sale at this point and believe it is unnecessary, will increase TFSB's and NBH's losses, and will only encourage further delay by the government. The petitions have been pending for nearly a year, and TFSB and NBH want to have this Court decide their petitions.

Counsel for the United States has conferred with counsel for Petitioners TFSB, NBH and Doyle, who concur in this report and have authorized the Government counsel to file it as a Joint Status Report.

                                        Respectfully submitted,

                                        JESSIE K. LIU
                                        United States Attorney

By:    */s/ Zia M. Faruqui*
        Zia M. Faruqui, D.C. Bar 494990
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 252-7117
        zia.faruqui@usdoj.gov

By:    */s/ Daniel H. Claman*
        Daniel H. Claman
        Money Laundering and
           Asset Recovery Section
        Criminal Division
        U.S. Department of Justice
        1400 New York Avenue, N.W., Suite 10100
        Washington, D.C. 20530
        Telephone:  (202) 514-1263

        Counsel for the United States of America