**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>        Defendant.<br><br>IN RE: PETITIONS FOR RELIEF<br>CONCERNING CONSENT ORDER OF<br>FORFEITURE<br><br>THE FEDERAL SAVINGS BANK,<br><br>        Petitioner,<br><br>NATIONAL BANCORP HOLDINGS, INC.,<br><br>        Petitioner. | Case No. 1:18-mc-00167-ABJ |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 32.2(c)(1)(B) CONCERNING PETITIONS OF THE FEDERAL SAVINGS BANK AND NATIONAL BANCORP HOLDINGS, INC.**

The narrow question before the Court is whether discovery is "necessary or desirable to resolve factual issues" relevant to the Petitions of The Federal Savings Bank (TFSB) and National Bancorp Holdings, Inc. (NBH). Fed. R. Crim. P. 32.2(c)(1)(B). In their Petitions, TFSB and NBH squarely put at issue factual questions that must be resolved to adjudicate their petitions: the extent of their knowledge of the criminal conduct of the defendant and the foreitability of the properties in which they claim an interest, the circumstances and legality of their acquisition of their asserted interests, and the extent and nature of their asserted interests in

1

the Claimed Properties.[1] TFSB and NBH are not run-of-the-mill lienholders with little relationship to the Defendant or the Claimed Properties. Rather, Petitioners' majority owner and former CEO has been indicted in the Southern District of New York for bank bribery in connection with the issuance of the very loans that form the basis of their claims. In addition, internal loan memoranda reveal that Petitioners considered the possibility that the Defendant's "past lobbying efforts with foreign governments might be investigated in the future" to be a "key risk/credit issue". Yet, Petitioners turned a blind eye to these risks and the deficiencies in the Defendant's financial disclosures, choosing instead to participate in a daisy chain of loans with the forfeited assets. Specifically, in November 2016, Petitioners loaned Defendant the forfeited $2.5 million, extracting equity from the forfeited Jobs Lane Property. Seven weeks later, in January 2017, Petitioners accepted the funds from their $2.5 million loan along with the forfeited Union Street Property as collateral for additional loans to Defendant. Petitioners, their owners, and principals have provided no testimony in these proceedings regarding these dealings. That testimony and other discovery requested in the government's motion is necessary and desirable to resolve the factual issues underlying Petitioners' claims.

The Claimed Properties were forfeited as specific property, distinct from other property identified in the Court's Forfeiture Order that was only subject to forfeiture as substitute assets. Petitioner's contention that the Claimed Properties were forfeited as substitute assets and that, as

---

[1] TFSB and NBH assert an interest assert in 174 Jobs Lane, Water Mill, New York 11976 (the "Jobs Lane Property"), 377 Union Street, Brooklyn, New York 11231 (the "Union Street Property"), and all funds held in TFSB account number XXXXXX0969 ("TFSB Account 0969"). In its opening memorandum (Dkt. No. 95-1) and herein, these forfeited assets are referred to as the "Claimed Properties". In its Opposition, TFSB and NBH refer to these properties as the "Collateral Properties", which obfuscates the fact that additional properties not forfeited in this action also served as collateral for some of the loans upon which they their petitions. TFSB has foreclosed on these additional items of collateral that are not subject be treated as a mere bystanderto this Court's Forfeiture Order.

a result, the Court need not consider facts outside their Petitions, is therefore erroneous. Moreover, even if the Claimed Properties had been forfeited in whole or part as substitute assets, discovery still would be necessary to resolve the issues of the legality and extent of their interest, whether they were reasonably without knowledge of the forfeitability of the Claimed Properties, and whether they can establish that they are *bona fide* purchasers for value. Because discovery into the facts related to their Petitions is necessary and desirable for a prompt adjudication of the Petitions of TFSB and NBH, the United States, by and through its undersigned counsel, respectfully urges this Court to grant the tailored discovery that the United States has requested.

## ARGUMENT

In an ancillary proceeding, the "petitioner carries the burden of proof and must establish his or her legal interest in the property by a preponderance of the evidence…" *United States v. Armstrong,* 2007 WL 7335174 *2 (E.D.La. 2007)(unreported). It would be inconsistent with this burden on the petitioner and the lenient standard for discovery under Rule 32.2 to require the government to acquiesce in a petitioners' claim without even an opportunity to validate the petitioner's representations through discovery. *See United States v. BCCI Holdings (Luxembourg), S.A.*, 1993 WL 760232, at *4 (D.D.C. Dec. 8, 1993); *United States v. Kokko*, Case No. 06-20065-CR, 2007 WL 2209260, at *6 (S.D. Fla. July 3, 2007). Yet that is exactly what Petitioners propose here: despite petitioning to amend the Forfeiture Order under both 21 U.S.C. § 853(n)(6)(A) and (B), Petitioners contend that *no discovery* is necessary—no discovery related to the nature and extent of their alleged interest, no discovery related to the legality or *bona fides* of their acquisition of that interest, and no discovery related to their knowledge of the defendant's criminal conduct or the potential forfeitability of the properties. In other words, Petitioners would have the Court decide their Petitions without any discovery related to the

3

factual issues underlying their claims. In its briefing on this motion, the United States has amply identified factual deficiencies and inconsistencies in the record that must be resolved to adjudicate their Petitions.

Central to Petitioners' argument is their erroneous assumption that the Claimed Properties were forfeited as substitute assets, not as specific property. Proceeding from this assumption, TFSB and NBH go on to contend that their interests are superior to that of the government under 21 U.S.C. § 853(n)(6)(A) and, therefore, according to Petitioners, their knowledge of the criminal conduct and the potential forfeitability of the Claimed Properties is irrelevant. However, as noted above, this Court correctly ordered the forfeiture of the Claimed Properties as specific property. Additionally, even if the properties were substitute assets, which they were not, discovery remains necessary and desirable to resolve factual issues concerning the legality and extent of Petitioners' purported interests in the Claimed Properties and whether Petitioners meet the requirements for relief under Sections 853(n)(6)(A) or (B).

1. **The Claimed Properties Were Forfeited as Specific Property**

Contrary to Petitioners' arguments, the Claimed Properties were forfeited as specific property. This Court's preliminary orders of forfeiture made a clear distinction between seven properties, including the Claimed Properties, that it found to be subject to forfeiture as specific traceable property, and two additional properties subject to forfeiture only as substitute assets under 21 U.S.C. § 853(p). *See* Cr. Dkt. No. 443 at 2-3; Cr. Dkt. No. 549 at 2-3. Although the preliminary orders of forfeiture include substitute assets as an alternative basis of forfeiture for the seven specific properties, the identification of an alternative basis for forfeiture does not negate the finding that the Claimed Properties were forfeited as specific property. The preliminary orders are thus clear on their face that the Claimed Properties were subject to

forfeiture as specific property, in contrast to those other properties that were only forfeitable as substitute assets.

      This Court should reject Petitioners' effort to expand these ancillary proceedings beyond their statutory scope.  Pursuant to the Federal Rules, this Court correctly found that the Claimed Properties were subject to forfeiture as specific property "without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A).  As the Advisory Committee Notes explain, ancillary proceedings "do not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property." Fed. R. Crim. P. 32.2, Subdivision (b)(1), Advisory Committee Notes (2000 adoption).  Consistent with Section 853(k)'s bar on third parties seeking to intervene in the criminal proceedings themselves, this statutory framework does not undermine the rights of legitimate third parties.  "[I]f the property really belongs to the third party[,]. . . he will prevail and recover his property whether there were defects in the criminal trial or the forfeiture process or not; and if the property does not belong to the third party, such defects in the finding of forfeitability are no concern of his." *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008); s*ee also United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 690 (5th Cir. 2013) ("The Second, Eighth, Tenth and Eleventh Circuits have all agreed that a third party has no standing to challenge a preliminary order's finding of forfeitability. . . . [The defendant] is the only party that has standing to challenge the forfeitability of its assets."); *United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012) ("[T]hird parties, including former codefendants, cannot challenge or relitigate a preliminary order's finding of forfeitability."). Accordingly, this Court should reject Petitioners' contention that the record is insufficient to support forfeiture of the Claimed Properties as specific property, their complaints that they had

no opportunity to contest forfeiture, and their erroneous conclusion that the Claimed Properties must have only been forfeited as substitute assets. Opp. at 9.

In any event, there was ample basis in the record for the Court to order forfeiture of the seven specific properties, including the Claimed Properties. In determining forfeiture of specific property, a court considers whether the government "has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A); *see also United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015). The court makes this determination by a preponderance of the evidence, and may find nexus based on evidence in the record. *See United States v. Cox*, 851 F.3d 113, 129 (1st Cir. 2017) (Forfeiture "is a part of the sentence rather than the substantive offense. . . [a]s such, the preponderance of the evidence standard applies."); Fed. R. Crim. P. 32.2(b)(1)(B) ("The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable.").

Here, because the record demonstrates the requisite nexus to the criminal scheme of conviction,[2] Petitioners' challenge to the forfeiture both exceeds the scope of these ancillary proceedings and also fails as a factual matter. As set forth in the Superseding Information, and as admitted by the Defendant in his plea agreement and statement of offenses, the Claimed Properties were funded, improved by, or derived from proceeds of Defendant's crime of conviction. In ordering forfeiture here, the Court properly may rely on the admissions of the

---

[2] *See, SKL Investments, Inc. v. United States*, No. 13-MC-38, 2014 WL 4365297, at *4 (W.D. Tenn. Sept. 2, 2014) (holding "ancillary proceedings do not allow third-parties to challenge the nexus between the forfeited property and the defendant's criminal activity. [The defendant] is the only party who can challenge the nexus supporting the court's preliminary order of forfeiture—[the third party] cannot stand in his shoes and do so on his behalf.")

Defendant along with the supporting admissions of his co-conspirator, Richard Gates. Moreover, the record includes the grand jury's repeated, express finding of probable cause that each of the Claimed Properties were among the specific properties traceable to the Defendant's criminal conspiracy.  *See* Cr. Dkt. 13 at ¶¶ 52-54; Cr. Dkt. 201 at ¶¶ 46-48; Cr. Dkt. 202 at ¶¶ 48-50; Cr. Dkt. 318 at ¶¶ 52-54.  These admissions, along with the grand jury's findings are entitled to far more weight than TFSB's unsupported assertions that the three properties were substitute assets.  *See United States v. Wingerter*, 369 F. Supp. 2d 799, 807 (E.D. Va. 2005) ("a forfeiture count in an indictment reflects the jury's finding of probable cause to believe that certain property will be subject to forfeiture upon conviction.").

For example, the record supports a finding that the Defendant used multiple accounts in Cyprus and St. Vincent and the Grenadines to receive funds from Ukrainian principals for FARA prohibited activities, to launder the money, and evade taxes.  Cr. Dkt No. 318, ¶¶ 1-5; Cr. Dkt. No. 419, ¶¶ 4, 10; *See also* Gates Superseding Information, Cr. Dkt. No. 195, ¶¶ 1-2 ("In order to hide Ukraine payments from United States authorities, from approximately 2006 through at least 2016, Manafort and GATES laundered the money through scores of United States and foreign corporations, partnerships, and bank accounts.  In furtherance of the scheme, Manafort and GATES funneled millions of dollars in payments into foreign nominee companies and bank accounts, opened by them and their accomplices in nominee names and in various foreign countries, including Cyprus, Saint Vincent & the Grenadines (Grenadines), and the Seychelles.").  These accounts included among others Actinet Trading Limited, Global Highway Limited, Leviathan Advisors Limited, Yiakora Ventures Limited, Peranova Holdings Limited, Lucicle Consultants Limited, and Global Endeavour Inc.  Cr. Dkt. No. 419, ¶ 10; *see also* Cr.

Dkt. No. 318, ¶ 11; Gates Superseding Information, Cr. Dkt. No. 195, ¶ 12.[3] Defendant then used funds from those accounts to purchase the Union Street Property. Cr. Dkt. No. 419, ¶15, ¶¶ 58-60 ("After Manafort used his offshore accounts to purchase real estate in the United States, he took out mortgages on the properties thereby allowing Manafort to have the benefits of liquid income without paying taxes on it. . . . [Manafort] bought a brownstone on Union Street in the Carroll Gardens section of Brooklyn, New York. He paid approximately $3,000,000 in cash for the property. All of that money came from a Manafort entity in Cyprus."); *see also* Cr. Dkt. 318, ¶ 16; Gates Superseding Information, Cr. Dkt. 195, ¶¶ 17, 33-36. The Defendant also used those funds for improvements to the Jobs Lane Property. Cr. Dkt. No. 419, ¶¶ 13-14, *e.g.*, S.P.C. Home Improvement Inc; *see also*, Cr. Dkt. 419, ¶¶ 68, 69, and 70; Cr. Dkt. 318, ¶ 15; Gates Superseding Information, Cr. Dkt. No. 195, ¶¶ 15-16. Some of these accounts were also used to funnel funds to U.S. companies for FARA activity. Cr. No. Dkt. 419, ¶ 52; Cr. Dkt. 423, ¶¶ 10, 15, 20, 24, 37; Gates Superseding Information, Cr. Dkt. 195, ¶¶ 22-23, 26. Gates Statement of Facts, Cr. Dkt. No. 206, ¶¶ 13-14. The Defendant admitted each of these allegations, and that the Claimed Properties were among the property traceable to the conspiracy to which he pled guilty. Cr. Dkt. No. 422 at ¶¶ 12(a), 12(b). *See also* Forfeiture Order, Cr. Dkt. No. 549 at 2 (finding that the Defendant admitted the Claimed Property "constitutes or is derived from proceeds traceable to the conspiracy to violate FARA offense alleged in Count One, or is property traceable thereto.").[4] Accordingly, if Petitioners' contention that the Claimed

---

[3] *See also* Testimony of Richard Gates, EDVA Trial Transcript, *U.S. v. Manafort*, 1:18-CR-83, Vol. IX-P.M., at 1222-1224 (August 7, 2018) ("[the Cypriot entities] serve to play the role of accepting the money from the Ukrainian businessmen for the political contracts and then for Mr. Manafort to, you know, determine what would be done with that money.").

[4] Petitioners also contend that the properties must be substitute assets because they were not restrained pre-trial—however, pre-trial restraint is not required and multiple factors go into a decision to request pre-trial restraint of an asset. In any event, after the Indictment was unsealed

Properties were not forfeited as specific property were properly before the Court, which it is not, the Court could reject that contention as without merit.

### 2. Discovery is Necessary and Desirable to Determine Whether Petitioner Meets the Requirements of 21 U.S.C. § 853(n)(6)(A)

To prevail under 21 U.S.C. § 853(n)(6)(A), a petitioner must establish by a preponderance of the evidence that "the petitioner has a legal right, title, or interest in the property, and "the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A). Here, because Petitioners acquired their asserted interests after the Defendant's conspiracy period, their claims under Section 853(n)(6)(A) fail. However, Petitioners contend that the Claimed Properties constitute substitute assets. Because Petitioners must establish the legality and extent of their asserted interest regardless of whether the forfeited property is forfeited as specific property or substitute assets, discovery at this stage of the proceedings is appropriate to reveal facts about nature of Petitioners' interest and the circumstances under which it arose.

As an initial matter, Petitioners must establish a legal interest in the property not only for purposes of establishing statutory and constitutional standing, but also as an express requirement of Section 853(n)(6)(A). Under 21 U.S.C. § 853(n)(6)(A), the petitioner cannot be a nominee for the defendant, the lien must be a valid lien, the amount demanded must be the amount due, and the entire transaction needs not to be a sham. *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319–1321 (M.D. Fla. 2001) (a nominee cannot recover under § 853(n)(6)(A); nor can a person who acquired the property as a result of a sham transaction); *United States v. Coffman*, 574 F.

---

the United States promptly filed a *lis pendens* to encumber both the Jobs Lane and Union Street Properties on October 31, 2017.

App'x. 541, 562–63 (6th Cir. 2014) ("Coffman has not cited a single case to support the assertion that courts may not void fraudulent transfers as part of ancillary forfeiture proceedings").  As previously noted, the primary owner and CEO of both TFSB and NBH at the relevant time has been indicted in connection with his involvement in extending the loans at issue in these proceedings to the Defendant, who has also admitted that the loans were obtained through criminal means.  In addition, other bank officials and loan officers participated in and had ample knowledge of the risks and irregularities through which TFSB and NBH issued the loans.  Under such circumstances, Petitioners TFSB and NBH cannot credibly claim that there is no factual issue as to the legality of their asserted interest in the Claimed Properties.  Similarly, while Petitioners appear to acknowledge that they have recovered some of their loan amounts through foreclosure, they refuse to provide discovery into the extent of their recovery and the remainder of their interest.  Accordingly, even if, as Petitioners contend, the Claimed Properties were forfeited as substitute assets, factual issues remain for which discovery is necessary and desirable.

Petitioners seek to sidestep even these basic facts necessary to set out a claim under Section 853(n)(6)(A), arguing that discovery is unnecessary because the Claimed properties are substitute assets and Petitioners' interest was secured prior to the Defendant's indictment. Petitioners suggest that the Court should discount the statutory language of Section 853(n)(6)(A), and measure the Petitioner's interest not by the acts of the defendant as required by the statute, but by those of the government or the Court because the "relation back doctrine" embodied in 21 U.S.C. § 853(c) does not apply to substitute assets.  However, Petitioners' approach fails to give adequate consideration to the statutory framework of Section 853(n) or the reasoning of Judge

Contreras in *United States v. Preston,* 123 F.Supp. 3d 117 (D.D.C. 2015) and the Second Circuit's opinion in *United States v. Daugerdas,* 892 F.3d 545 (2nd Cir. 2018).

In *Preston*, the Court found that, under 21 U.S.C. § 853(p), a substitute asset becomes subject to forfeiture when, "as a result of any act or omission of the defendant, property subject to forfeiture under Section 853(a)" meets one of the five conditions outlined in 21 U.S.C. § 853(p). *Id*. at 127. Accordingly, the Court held that for substitute assets the critical point in time under 21 U.S.C. § 853(n)(6)(A), "the time of the commission of the acts which gave rise to the forfeiture," was the moment the traceable property could "not be located upon the exercise of due diligence;" was "transferred or sold to, or deposited with, a third party;" was "placed beyond the jurisdiction of the court;" was "substantially diminished in value;" or was "commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p); *Preston*, 123 F. Supp. 3d at 127-28 ("For purposes of Section 853(n)(6)(A), therefore, "the time of the commission of the acts which gave rise to the forfeiture" of the Securities was when Ms. Preston transferred the embezzled Clyde's funds to third parties.").

Similarly, in *Daugerdas*, the Second Circuit examined the specific statutory language of Section 853(n)(6)(A) in the context of a petitioner's claim to forfeited substitute assets. *United States v. Daugerdas*, 892 F.3d 545 (2nd Cir. 2018). Considering and rejecting the notion that the government's interest is identical to the defendant's interest in the context of substitute assets, the court explained that "§ 853(n)(6)(A) discusses the rights of a third party vis-à-vis the defendant, and makes no mention of the government." *Id*. at 555. As the *Daugerdas* court reasoned, "applying standard tools of statutory interpretation to the plain text of the statute provides ample support for our conclusion that, in either the context of offense proceeds or substitute property, the relevant "act" under § 853(n)(6)(A) is the underlying criminal conduct

that triggers the forfeiture obligation." *Id*. at 556. As a result, the court concluded that "even if it is unclear when, exactly, the government's interest in substitute property vests, § 853(n)(6)(A) permits a third-party claim against a defendant's untainted property (out of which an in personam-like forfeiture claim might be satisfied) only if that interest arose before the offense took place." *Id*. at 556-557.

As in *Daugerdas* and *Preston,* this Court should conclude that the temporal limitations of Section 853(n)(6)(A) in the case of substitute assets are limited by the "acts which gave rise to the forfeiture", not the vesting of the government's interest. Without addressing this statutory language, Petitioners rely on cases that focus on different issues, like the pretrial restraint of substitute assets, or cases in which the legality and extent of a petitioner's interest was not in dispute. [5] Because Petitioners did not obtain their interests until after the Defendant engaged in the criminal conspiracy giving rise to forfeiture and after he alienated traceable property, Petitioners claim under Section 853(n)(6)(A) would fail even if the Claimed Properties were

---

[5] For example, *Luis v. United States*, 136 S. Ct. 1083 (2016), involved the pretrial restraint of untainted funds that a defendant sought to use to hire counsel. In *United States v. Erpenbeck*, 682 F.3d 472, 478 (6th Cir. 2012) and *United States v. Jarvis,* 499 F.3d 1196, 1204 (10th Cir. 2007), the courts did not address a petitioner's claim under Section 853(n)(6)(A). In *Erpenbeck,* the court addressed when a potential claim was sufficiently plausible to require direct notice, while in *Jarvis,* the court found that the government could not place a *lis pendens* on substitute assets prior to conviction and a finding of alienation under Section 853(p). *Id.* In *United States v. Lee*, 232 F.3d 556, 561-63 (7th Cir. 2000) the Court actually held that the government should *not* step into the shoes of the defendant when they decided the very different equitable issue of "Florida law of tenancy by the entirety--in a substitute asset case." *Id*. In *United States v. Watts,* 786 F.3d 152, 164 (2nd Cir. 2015) the Second Circuit found that "the government's right to forfeited property does not arise because the government 'inherits' the defendant's interests through the forfeiture order; it arises because the government has an independent interest in that property that is *superior* to the defendant's own claims." Indeed, in considering Section 853(c), the *Watts* court recognized that the governmental interest was independent from the defendant's interest.

substitute assets. Accordingly, TFSB and NBH's contention that the Claimed Properties constitute substitute assets, even if true, does not present a bar to discovery.[6]

   3. **Discovery is Necessary and Desirable to Determine Whether TFSB and NBH Meet the Requirements of 21 U.S.C. § 853(n)(6)(B)**

TFSB and NBH also seek amendment of the Court's Forfeiture Order pursuant to 21 U.S.C. § 853(n)(6)(B), and, remarkably, contend discovery regarding their knowledge of the criminal conspiracy and their claim to be a *bona fide* purchaser for value are either irrelevant or unnecessary. As Petitioners acknowledge, under 21 U.S.C. § 853(n)(6)(B), a petitioner to bears the burden to establish by a preponderance of the evidence that "(1) the [petitioner] has a legal interest in the forfeited property, (2) the interest was acquired as a bona fide purchaser for value, and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." Opp. at 16-17, quoting *United States v. Timley,* 507 F.3d 1125, 1130-31. (8th Cir. 2007). Because the factual record is far from complete with respect to each of these three elements, discovery is both necessary and desirable.

As with TFSB and NBH's claims under Section 853(n)(6)(A), discovery of the facts regarding the extent of the interest that Petitioners claim and whether they obtained that interest in a lawful transaction are clearly pertinent to Petitioners' claims under Section 853(n)(6)(B). Petitioners contend that the Court should presume a legal interest in the property based upon their recorded mortgage. However, whether their mortgage interest was obtained in a lawful transaction remains unclear in light of the alleged conduct of Mr. Calk, the Defendant's admitted criminal conduct, and the actions, knowledge and involvement of other officials of Mr. Calk and

---

[6] Of course, to determine the narrow issue of discovery at issue in this motion, this Court need not decide the issue of the applicability of *Preston* and *Daugerdas* to the facts of this case. Authorizing the tailored discovery that the government requests would provide the Court with a more complete record on which to consider Petitioners' claims under Section 853(n)(6)(A).

the Defendant's schemes. Similarly, facts concerning whether that interest has diminished or changed as a result of Petitioners' foreclosure on other properties or other actions are clearly necessary to establish the extent of their alleged interest in the Claimed Properties. Petitioners' asserted legal interest in the Claimed Property are clearly discoverable, incomplete and relevant to this Court's determination of their Petitions under Section 853(n)(6)(B).

Indeed, under this prong of Section 853(n)(6), facts concerning the nature and circumstances under which Petitioners acquired their interest in the Claimed Property are also relevant to whether Petitioners can establish that they are *bona fide* purchasers for value, as required under the statute. 21 U.S.C. § 853(n)(6)(B). To be a *bona fide* purchaser for value Petitioners must have given valuable consideration for their interest in the properties in an arms-length transaction. *United States v. Huntington Nat. Bank*, 682 F.3d 429, 434 (6th Cir. 2012)("[T]he *bona fide* purchaser exception is derived essentially from hornbook commercial law and reflects the common-law rule that an innocent purchaser for valuable consideration must be protected."); *see also United States v. McHan*, 345 F.3d 262, 277 (4th Cir. 2003)(agreeing that "the petitioners were not 'bona fide purchasers for value' because the [contracts], even if authentic, were concededly not arm's-length transactions."); *United States v. Phillips*, No. 2:12CR37, 2013 WL 2156377, at *3 (E.D. Va. May 2, 2013) (unreported) ("A bona fide purchaser for value includes those 'who gave value to the defendant in an arms-length transaction with the expectation that they would receive equivalent value in return.'"). Discovery regarding the nature of the transaction through which TFSB and NBH acquired their asserted interests is therefore appropriate for adjudication of their Petitions.

Of course, to prevail under Section 853(n)(6)(B), Petitioners must also prove that they were reasonably without cause to believe the property was subject to forfeiture. Nonetheless,

TFSB and NBH contend that discovery of their knowledge is unnecessary because Petitioners had to have specific knowledge that the property at issue was bought with criminal proceeds and thus is subject to forfeiture. Dkt. No. 100, pages 17-18. Petitioners also reiterate their erroneous contention that the Claimed Properties were forfeited as substitute assets and argue that, discovery is unnecessary because what they knew about the Defendant's conduct is irrelevant to their Section 853(n)(6)(B) claim. However, Section 853(n)(6)(B) is designed to protect *innocent* third parties; it is not designed to protect petitioners who turn a blind eye to criminal conduct in assisting people to dissipate assets before seizure.

As the Seventh Circuit explained, under the objective reasonableness standard of Section 853(n)(6)(B), it nevertheless matters whether "what [Claimant] actually knew would have alerted any reasonable person to the possibility that real estate purchased by someone perpetrating a financial fraud, and unencumbered by any debt, represents funds skimmed from the venture. A person who has this much knowledge, and then averts his eyes lest he learn more, has actual knowledge via the ostrich inference often used in criminal prosecutions." *United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004). The Sixth Circuit has similarly stated that a claimant was not reasonably without cause to believe an asset was subject to forfeiture when "it was clear that [Defendant] was under investigation," there were "red flags" around Defendant's financial status, and some assets had already been seized. *United States v. Galemmo*, 661 F. App'x 294, 297–98 (6th Cir. 2016). *See also United States v. McCorkle*, 143 F. Supp. 2d 1311, 1330-01 (M.D. Fla. 2001) (rejecting a bank's 853(n)(6)(B) claim when, based on the "due diligence inquiry" performed by the bank, the bank "knew or should have known 1.) the merchant account application contained false information; 2) the promise of timely refunds was a prominent part of the [Defendants'] infomercial; 3) the [Defendants'] principal source of income

15

was the sale of the programs, and not real estate dealings as falsely represented in the infomercial; 4.) at least one other merchant banks terminated [Defendants'] account due to excessive chargebacks; 5.) [Defendant] was under investigation by the Florida and Texas state governments; and 6.) [Defendants'] tax returns and financial statements did not reflect the sales stated in the merchant account application.").

Against the weight of this authority, Petitioners' rely on the anomalous 4th Circuit case, *United States v. Reckmeyer*, 836 F.2d 200, 204-5 (4th Circuit 1987), for the proposition that a petitioner can satisfy the knowledge requirement if they lacked specific knowledge that the government would forfeit the property. Under TFSB and NBH's logic, the Court would have to grant virtually all Section 853(n)(6)(B) claims in which a petitioner did not witness the Defendant purchase the specific property and did not have specific knowledge of the underlying criminal conduct by participating in each criminal transaction. This is not the law. This Court should decline Petitioners' invitation to ignore the statutory language and expand the exception to forfeiture established in Section 853(n)(6)(B) to a subjective standard of actual knowledge. Indeed, where, as here, the Petitioners are financial institutions with statutory due diligence and anti-money laundering requirements to know their customers, such a forgiving subjective test is even more inappropriate.

Regardless, as set forth in the United States' prior briefing, what is known so far about Petitioners' knowledge of the Defendant's criminal conduct raises sufficient questions to require discovery, even if the Claimed Properties are substitute assets. In their opposition, TFSB and NBH boldly complain that "no newspaper or pubic record would have alerted (or did alert) Petitioners that the government would one day decide to forfeit the Collateral Properties as substitute assets." Opp. at 19. Yet clearly something did alert them. As noted, TFSB's loan

memoranda dated November 12, 2016, and January 5, 2017, each stated, *inter alia,* "Manafort's consulting work has come under intense scrutiny over his ties to foreign governments and indications that he might have received $12 million in undisclosed cash payments. The alleged payments, which Mr. Manafort has vehemently denied, were noted in a ledger kept by former Unkraine [sic] president Victor Yanukovych's political party." Both loan documents indicated that a "key risk/credit issue" was that "Mr. Manafort's past lobbying efforts with foreign governments might be investigated in the future."[7] These indicators of knowledge, coupled with the overwhelming press coverage at the time, could have "alerted any reasonable person to the possibility" that *any* of Manafort's property was subject to forfeiture either as traceable or substitute property. *United States v. Frykholm*, 362 F.3d at 416. In any case, they are sufficient to establish a basis for discovery to determine what TFSB and NBH did know.

### 4. The Proposed Discovery Schedule Appropriately Respects the Criminal Proceedings in *United States v. Stephen Calk*

Petitioners TFSB and NBH also object to the sequence of discovery proposed by the government, contending that if the Court were to schedule testimonial discovery to begin after the conclusion of Stephen Calk's trial in the Southern District of New York, it would cause an unfair delay in the adjudication of their petitions. First, contrary to Petitioners' contention, the United States does not request a stay of these ancillary proceedings, and has expressly requested that document discovery be authorized to commence. Dkt. No. 95-1 at 18. Second, structuring discovery to permit document discovery now and to defer testimonial discovery until after Mr. Calk's trial would be a prudent exercise of this Court's discretion to manage discovery by minimizing conflicts with the proceedings before the District Court in New York and the

---

[7] Petitioners' ancillary claims, on the other hand, mystifyingly, disclaim this knowledge.

interests of the parties to that prosecution. As in *United States v. House*, 2016 WL 4154847 * 3-4 (N.D. Cal. Aug. 5, 2016), the testimony of TFSB and NBH, Mr. Calk, and other bank officials who are potential witnesses in Mr. Calk's criminal trial is necessary to these forfeiture proceedings, and it would be prudent for this Court to avoid conflicts between the two proceedings. *See also* 18 U.S.C. § 981(g) (authorizing courts to stay or limit discovery in civil forfeiture cases if it would adversely affect a criminal investigation, prosecution, or burden the rights of a claimant.). Third, not only do Petitioners offer no authority suggesting a court should ignore such potential conflicts, but they also fail to explain how they, as institutional litigants, could comply with their obligations under Federal Rules of Civil Procedure 30(b)(6), 33, and 36 without the cooperation and involvement of Mr. Calk and potential witnesses to that criminal trial.

With no substantive response to the reasonable sequence of discovery, Petitioners TFSB and NBH raise the empty bogeyman of "indefinite delay" and an unsupported allegation that the proposed discovery schedule would result in the deterioration of the Claimed Properties. But a hearing to set the trial date is scheduled for *this Thursday*, January 9, 2020, and document discovery can proceed while the litigation is ongoing. Deferring testimonial discovery until after the trial (anticipated for this spring) makes sense both to avoid conflicts and to enable production of materials that will facilitate testimonial discovery. Similarly, if Petitioners really sought to minimize risk to the properties that secure their loans, they would consent to the interlocutory sale of the Jobs Lane and Union Street Properties, which they have so far refused to do. *See* Joint Status Report (Dkt. No. 91 at 12).

**CONCLUSION**

Again, the narrow question before the Court is whether discovery is "necessary or desirable to resolve factual issues" relevant to the Petitions. The answer to that question is yes for the foregoing reasons and for the reasons set forth in the government's initial motion and accompanying memorandum of points and authorities. Accordingly, the Court should grant the government's motion and decline Petitioners' invitations to improperly relitigate forfeitabiliyt or decide the merits now (on an inadequate factual record and through an improper procedural vehicle).

Respectfully submitted,

JESSIE K. LIU
United States Attorney

By: _____
Zia M. Faruqui, D.C. Bar 494990
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530
 (202) 252-7117 (Faruqui)
zia.faruqui@usdoj.gov

By: */s/ Daniel H. Claman*
Daniel H. Claman
Money Laundering and
    Asset Recovery Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone:  (202) 514-1263

Counsel for the United States of America