# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| v. : | |
| **PAUL J. MANAFORT, JR.,** : | |
| *Defendant* : | |
| **IN RE:** : | Case No. 1:18-mc-00167 |
| **PETITIONS FOR RELIEF CONCERNING** : | |
| **CONSENT ORDER OF FORFEITURE** : | Judge Amy B. Jackson |
| **WOODLAWN, LLC,** : | |
| *Petitioner* : | |

### PETITIONER WOODLAWN LLC'S MOTION TO AUTHORIZE DISCOVERY SERVED ON THE GOVERNMENT ON MARCH 11

Woodlawn, LLC, by counsel, moves this Court to authorize it to propound reciprocal discovery to the government under Fed. R. Crim. P. 32.2(c)((B). This Court authorized the government to propound very extensive discovery requests to Petitioner Woodlawn in its February 19, 2020 Memorandum Opinion and Order (Doc. 106). The government sent Woodlawn very extensive and burdensome discovery requests on March 4, 5 and 6.

1. On *March 11*, 2020, counsel for Petitioner Woodlawn, LLC emailed a combined set of discovery requests to government counsel. A copy of the combined discovery requests is attached as Exh. 1. This was just five days after receiving the government's last of three separate

1

discovery requests, to which Woodlawn has been diligently working on responding. Woodlawn's counsel did not hear from the government until *March 26* at 5:13 pm, when he received an email from government counsel Daniel Claman with an attached letter dated March 26 (Exh. 2). The letter informs undersigned counsel that "[b]ecause Woodlawn neither requested nor obtained a Court order pursuant to Fed. R. Crim. P. 32.2 authorizing it to propound discovery, the United States objects to and will not respond to any of your unauthorized discovery requests." The letter observes that this Court's February 19, 2020 Memorandum Opinion and Order (Doc. 106) granted the United States' motion for discovery but it "does not authorize Woodlawn to propound discovery to the United States." That is the reason cited in the government's letter for refusing to respond to any of the well-drafted discovery requests propounded on March 11 by Woodlawn. No objection was made in the letter to the content or propriety of the discovery propounded by Woodlawn on March 11 except that it had not been expressly authorized by this Court and that Woodlawn stated in Doc. 61 at 14 that it did not believe that any discovery was necessary to resolve its claim for summary judgment. But that statement merely meant that, in Woodlawn's view, there was *sufficient* evidence in the record to decide Woodlawn's motion for summary judgment. It did not mean that Woodlawn would not seek discovery even if the government's motion for extensive discovery was granted over Woodlawn's objection.

    2.    This motion was necessitated by the government's email and letter of March 26 refusing to respond to *any* reciprocal discovery propounded by Woodlawn unless and until this Court expressly authorizes Woodlawn to propound discovery to the government.

    3.    Counsel for Woodlawn emailed Mr. Claman immediately and asked why he waited 15 days before informing Woodlawn that the government wouldn't respond to any discovery prior to this Court authorizing discovery by Woodlawn. Mr. Claman had no answer to

that question except a general reference to the DoJ's measures to deal with the coronavirus. He told counsel that the government didn't need to respond *at all* to Woodlawn's unauthorized discovery requests so Woodlawn should be grateful that he informed us of why he would not respond, even if it took him 15 days to do so.

4. In a subsequent telephonic meet and confer on March 27, Mr. Claman told counsel that he would nonetheless oppose any motion by Woodlawn to obtain authorization from the Court to propound *any* discovery because, in *his* view, Woodlawn did not need any formal discovery. He offered to provide Woodlawn with informal discovery of any "relevant" information Woodlawn wanted, so long as *he* considered it reasonable and relevant. In his view, most the discovery sought by Woodlawn in its March 11 discovery package (Exh. 1) was irrelevant to Woodlawn's petition — although he did think that the Requests for Admissions were "more" relevant. Plainly, whether the discovery sought by Woodlawn seeks information that is relevant and otherwise discoverable is a separate issue than whether Woodlawn may seek any discovery at all. The government may object in the usual way to any discovery requests it considers improper.[1] It should not seek to bar Woodlawn from exercising the same discovery rights that have been asserted by the government in this matter and fully granted by the Court.[2]

---

[1] Counsel has assured the government that Woodlawn will be very flexible about reconsidering and narrowing any discovery requests the government considers unduly burdensome and/or only marginally relevant. Counsel expects the same consideration from the government. On March 30, counsel agreed to the government's request to jointly ask the Court to extend the discovery completion deadline by 45 days. He also agreed to dramatically narrow RFP #1 to seek only the agent's affidavit or declaration in support of the warrant to search Manafort's Alexandria, Virginia residence and any publicly released information about the evidence found in the residence. That was the only discovery request the government specifically asked counsel to narrow — so far.

[2] The main argument the government made in support of its request for discovery was that it needed to find out the identity of the individual who provided the funds for Woodlawn to loan to the Manaforts. On June 4, 2019, Bloomberg News revealed the identity of that individual in a splashy story by three of its reporters. *Man Who Secretly Lent Paul Manafort $1 Million Has*

5. Woodlawn demurred. It did not agree to give up its due process right to propound formal discovery requests seeking information and documents *on the very same topics* that the government is seeking discovery from Woodlawn. What is good for the goose is good for the gander. The government cannot demand burdensome and expensive discovery against an innocent private party trying to protect its property and refuse to be subject to reasonable discovery requests on the very same matters. Counsel is unaware of *any* case in which a court has adopted such a lopsidedly unfair position as the government is seeking.

---

*Finally Come Forward*. A copy of the Bloomberg article is attached as Exh. 3. After his identity was revealed by Bloomberg, Arjan "Ari" Zieger agreed to go public and tell Bloomberg the whole story, which is included in Exh. 3. Zieger's friend, Scott Adler, who was the person who originally came up with the idea of the loan, sat down in his hillside Los Angeles home with the Bloomberg reporters, joined by Zieger and attorney Keith Berglund. Adler recounted how he became acquainted with Paul Manafort and thought he was very honest. "According to Adler, Manafort told him everything that he did was legal and that allegations of his Russian ties were a 'hoax.'" Exh. 3 at 3. The Bloomberg story was widely repeated in the press. For example, it appeared on June 4, the same day, in the Manchester Union Leader.

The next day, June 5, Mr. Claman emailed counsel for Woodlawn about the Bloomberg story with a link to it. He asked counsel to "confirm whether Mr. Zieger is the person whose identity you have sought to withhold and when the interview with Bloomberg took place." Claman also requested that counsel confirm that Momentum Capital, LLC was the entity that Woodlawn referred to in Dkt. Nos. 61 and 62 as '[redacted], LLC'." Claman also requested that if Zieger is the person whose identity you sought to withhold, please provide all of Woodlawn's records by June 7, 2019." Counsel promptly complied with Claman's requests, confirming that Mr. Zieger was the man and that Momentum Capital, LLC was the entity Zieger used to provide the loan funds to Woodlawn, LLC. Counsel also emailed Mr. Claman a package of 60 documents on June 26, 2019 that Woodlawn had put together when it was trying to provide informal discovery to the government.

Unfortunately, neither the government nor Woodlawn informed the Court of these unexpected developments in June 2019, long before the Court issued its February 19, 2020 Memorandum Opinion and Order (Doc. 106) granting the government's discovery motion in full. Had the Court known about these developments it might not have granted the government's motion for discovery or it might have narrowed the scope of the discovery (including nine depositions) that the government requested. Woodlawn mentions this because it ill-behooves the government to oppose *any* discovery for Woodlawn after having received permission from the Court to conduct as much discovery as it asked for, and after having received informal discovery from Woodlawn.

6. The government should not be allowed to gain an advantage from its 15 day delay in notifying Woodlawn that it would not respond to any of its discovery requests. The Court should make it clear in its order that the government's time to respond runs from the day it received Woodlawn's discovery requests (March 11), not the day when this Court issues an order pursuant to Rule 32.2 authorizing Woodlawn to propound discovery requests to the government. Counsel notified Mr. Claman in writing on March 26 that Woodlawn would ask the Court to make this clear to the government, so that it would not let the 30 day deadline for responding to the Requests for Admission expire in the smug expectation that it would no longer apply.

7. Requests for Admission (RFAs) "are not true discovery." "Indeed, some courts have expressly held that requests for admission are *not* discovery." Thus, it is not even clear that judicial authorization is needed under Rule 32.2 in order to propound RFAs. "The principal purposes of requests to admit are to narrow the issues and to facilitate proof at trial….Similarly, issues may be limited, and problems of proof obviated, by pretrial stipulations which are a normal part of the standard pretrial order now required by most federal judges." 2 John M. Carroll, Kenneth J. Jurek & William Bruce Hoff, Jr., *Federal Litigation Guide,* ¶19.01, 19-3 (Matthew Bender 1997 ed.). If the Court reviews the RFAs in the combined discovery requests Woodlawn sent to the government on March 11 (Exh. 1) it will see at once that the RFAs are highly focused on the issues presented by Woodlawn's petition and summary judgment motion and why the government's answers to the RFAs would serve "to narrow the issues and to facilitate proof at trial" and at the summary judgment stage as well. They would conserve

Woodlawn's limited resources and those of the Court as well by identifying the factual issues that are really in dispute, if any remain after discovery is completed.[3]

Dated:  March 31, 2020                                  Respectfully submitted,

                                                         */s/ David B. Smith*
                                                        David B. Smith
                                                        D.C. Bar No. 403068
                                                        David B. Smith, PLLC
                                                        108 North Alfred Street, 1st Floor
                                                        Alexandria, Virginia 22314
                                                        (703) 548-8911
                                                        Facsimile (703) 548-8935
                                                        dbs@davidbsmithpllc.com
                                                        *Counsel for Woodlawn, LLC*

---

[3] By emphasizing the importance and utility of the RFAs, which the government appeared to concede, Woodlawn does not mean to imply that its requests for production of documents and interrogatories are unimportant. Rather they are an important part of an integrated discovery package.

**Certificate of Service**

I hereby certify that on the 31st day of March, 2020, I electronically filed the foregoing document and attached exhibits with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Daniel H. Claman   [daniel.claman@usdoj.gov]
>Kaycee Sullivan   [kaycee.sullivan@crm.usdoj.gov]
>U.S. Department of Justice, Criminal Division
>Money Laundering and Asset Recovery Section
>1400 New York Avenue, N.W.
>Suite 10200
>Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>      */s/ David B. Smith*
>David B. Smith
>D.C. Bar No. 403068
>David B. Smith, PLLC
>108 North Alfred Street, 1st Floor
>Alexandria, Virginia 22314
>(703) 548-8911
>Facsimile (703) 548-8935
>dbs@davidbsmithpllc.com
>*Counsel for Woodlawn, LLC*